UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jared Goyette,<br>On behalf of himself and other similarly situated individuals,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>City of Minneapolis; Minneapolis Chief of Police Medaria Arradondo in his individual and official capacity; Minneapolis Police Lieutenant Robert Kroll, in his individual and official capacity; Minnesota Department of Public Safety Commissioner John Harrington, in his individual and official capacity, Minnesota State Patrol Colonel Matthew Langer, in his individual and official capacity; and John Does 1-2, in their individual and official capacities.<br><br>　　　　　　　Defendants. | Ct. File No. 20-cv-01302<br>(WMW/DTS)<br><br><br>DECLARATION OF SCOTT GERLICHER |

　　　　I, Scott Gerlicher, state as follows:

1.　　I am a Commander for the Minneapolis Police Department ("MPD").

2.　　During the riots and protests occurring in the wake of the death of George Floyd, I was involved as an incident commander for the MPD's response.

3. In order to use CS Chemical munitions (AKA tear gas) or less-lethal munitions ("foam rounds" or "marking rounds"), individual officers must radio for permission from the incident commander giving details of why they are asking to use the force. Typically, this request includes specific behaviors (i.e. throwing rocks or bottles). The incident commander will then decide whether to authorize the use of the requested force in consultation with the Chief of Police. If the force is authorized, the on-scene commanders will direct its use by individual officers.

4. Consistent with all types of use of force, if there is an imminent threat to life or safety, officers have discretion to use appropriate force, which may include less-lethal munitions.

5. I did not, nor to my knowledge did any other incident commander, approve the arrest of, the threatening or intimidation of, the use of chemical irritant upon, or the use of less-lethal munitions upon members of the media specifically because the individual was a member of the media.

6. If individuals claiming to be media members were arrested in the process of controlling the crowds, once they were identified as media, the MPD was to release them.

7. The goal in using the chemical irritants and munitions in crowd control situations is to repel and disperse violent and unruly individuals.

8. The goal in using marking rounds is to immediately stop individuals who are actively engaged in violent activity and it is too dangerous for officers to approach them, and also to mark those individuals so that it is possible to identify them later for arrest purposes.

9. It is against the policy and customs of the MPD to use these tactics punitively against anyone, including members of the media.

10. It was not the intention of the MPD to use force on or to seize members of the media who were engaged in protected First Amendment activity. This was a rapidly evolving, violent, and dangerous situation. It is possible that members of the media were inadvertently affected.

11. Individual allegations of unlawful force against the media that are brought to the attention of the MPD will be investigated. If they are substantiated, disciplinary action will follow.

12. The Temporary Restraining Order proposed by the Plaintiff unduly restricts law enforcement's ability to respond to complex situations where officers need to exercise their discretion as to the appropriate amount of force necessary to respond to imminent threats to life, safety, and property. Additionally, it is impossible to control where clouds of tear gas travel, and even if it is used legitimately, it may still affect the media.

13. When law enforcement is engaged in an operation to clear an area after curfew or that has active lawless behavior, and a line of officers is advancing, it is not feasible for officers to leave behind the line anyone who declares they are members of the news media. In those moments, no individuals can be behind officers and members of news media need to clear the area along with everyone else. Once the situation is under control, identified members of the media would be released immediately.

14. According to MPD records, no tear gas nor less-lethal munitions have been used by the MPD since May 31, 2020.

I declare under penalty of perjury that everything I have stated in this document is true and correct. Signed in Hennepin County, Minnesota.


Dated: June 5, 2020                             */s/Scott Gerlicher*
                                                Cmdr. Scott Gerlicher