UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jared Goyette<br>*On behalf of himself and other similarly situated individuals*,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>City of Minneapolis; Minneapolis Chief of Police Medaria Arradondo *in his individual and official capacity*; Minneapolis Police Lieutenant Robert Kroll, *in his individual and official capacity*; Minnesota Department of Public Safety Commissioner John Harrington, *in his individual and official capacity*, Minnesota State Patrol Colonel Matthew Langer, *in his individual and official capacity*; and John Does 1-2, *in their individual and official capacities*.<br><br>　　　　　Defendants. | Court File No. 0:20-cv-01302<br>(WMW/DTS)<br><br><br>**DECLARATION OF COLONEL<br>MATTHEW LANGER** |

I, MATTHEW LANGER, being first duly sworn on oath, depose and state as follows:

1.　I am the Colonel of the Minnesota State Patrol. I have held this position since 2015. My duties include overseeing and assigning the duties of the State Patrol. The information in this affidavit is based on my personal knowledge as the chief supervisor of the State Patrol.

2. In the days of unprecedented and chaotic civil unrest following the death of George Floyd on May 25, 2020, the Minnesota State Patrol became involved in trying to maintain order on the streets of Minneapolis and St. Paul. The situation was unexpected and required a quick and ever-evolving response by the State Patrol to the chaos that occurred.

3. In the early days of unrest, the Minneapolis Police Department ("MPD"), as the local law enforcement agency with jurisdiction, provided the primary law enforcement presence with regard to the protests. The State Patrol assisted to provide a perimeter for the MPD on the evenings of May 26 and May 27 and did not deploy chemical irritants or less-lethal munitions at that time. Based upon information available to the State Patrol, the State Patrol only deployed approximately four marking rounds, which operate similar to a paintball gun, on the evening of May 27.

4. The State Patrol became more involved in trying to maintain order beginning on the evening of May 28, and the State Patrol called in additional troopers to attempt to restore order. Beginning on the evening of May 28, and continuing through the evening of May 31, the State Patrol deployed chemical irritants or less-lethal munitions to attempt to restore order to the streets of Minneapolis and St. Paul and to protect the cities and their residents. The State Patrol also gave dispersal orders, requiring everyone to vacate a particular area, in attempts to secure an area. Such dispersal orders would apply to all individuals, including the media. The State Patrol's practice is to issue dispersal orders before deploying chemical irritants or less-lethal

munitions. Numerous other law enforcement agencies and the National Guard eventually joined efforts to restore order in Minneapolis and throughout the metropolitan area.

5. The chaotic scenes of unrest that engulfed the cities of Minneapolis and St. Paul during late May largely concluded by the evening of May 31. Protests involving violent or destructive behavior, and the need for law enforcement presence to prevent rioting, violence, and property destruction, have been declining since that evening. The State Patrol anticipates that the presence of its officers present due to protests in the metropolitan area will continue to decline in the coming days. The tactics necessary to be utilized by the State Patrol have also changed as the civil unrest has calmed. The State Patrol has not used chemical irritants or less-lethal munitions to try to maintain order and safety of the city since the evening of May 31.

6. The State Patrol does not have a practice or policy of targeting or harassing members of the media. Rather, the State Patrol has a policy of respect the rights of people to peacefully assemble and works to preserve peace, protect public safety, provide traffic safety service, and prevent the destruction of property at protests and demonstrations.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT EVERYTHING I HAVE STATED IN THIS DOCUMENT IS TRUE AND CORRECT.

COLONEL MATTHEW LANGER

Dated: June 5, 2020
County of Hennepin, State of Minnesota

|#4735338-v1