IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 20-cv-01616-RBJ

AGAZI ABAY,
GABRIEL THORN,
AMY SCHNEIDER, and
MICHAEL McDANIEL

    Plaintiffs,

v.

CITY OF DENVER,

    Defendant.

**ORDER ON PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

This matter is before the court on plaintiffs Agazi Abay, Gabriel Thorn, Amy Schneider, and Michael McDaniel's request for an temporary restraining order to enjoin defendant the City and County of Denver ("Denver")—specifically the Denver Police Department and police officers from other local jurisdictions from whom Denver has requested assistance in responding to the protests that have arisen following the George Floyd incident in Minneapolis—from using chemical agents or certain physical force against individuals engaged in demonstration activities, documentation of the demonstration and police activities, or the treatment of injured demonstrators. ECF No. 10.

For the reasons stated herein, the motion is GRANTED IN PART.

**I. BACKGROUND**

On May 28, 2020 citizens of Denver, Colorado joined a nationwide expression of outrage at the death of George Floyd and other acts of violence perpetrated by police officers against the

African American community. Though much of the demonstrations have remained peaceful, violence and destruction has occurred at the hands of citizens and police officers alike.

Plaintiffs challenge the Denver Police Department ("DPD")'s use of chemical agents (including mace/oleoresin capsicum spray or mist/pepper spray/pepper gas, tear gas, skunk, inert smoke, pepper pellets, xylyl bromide) and rubber projectiles on protestors participating in these demonstrations. ECF No. 1. Plaintiffs sue on behalf of themselves and similarly situated individuals, alleging that during these demonstrations the Denver police have in some instances violated their First Amendment right to free speech and their Fourth Amendment right against excessive force by using pepper spray, pepper balls, rubber bullets, flashbang grenades, and tear gas to punish plaintiffs for demonstrating against police brutality.

The Court has reviewed video evidence of numerous incidents in which officers used pepper-spray on individual demonstrators who appeared to be standing peacefully, some of whom were speaking to or yelling at the officers, none of whom appeared to be engaging in violence or destructive behavior. *See* ECF No. 10 at 5. Plaintiffs cite video evidence of officers using projectiles on several journalists in the process of documenting the scene. *Id.* at 6–8. Plaintiffs cite video evidence in which a projectile struck and knocked out a peaceful protestor. After a "medic" protestor attempts to rescue the unconscious protestor the medic is subsequently shot with projectiles. *Id.* at 9. Plaintiffs further cite video evidence of four incidents in which police projectiles struck the eyes of peaceful demonstrators, in some cases resulting in facial fractures, in some cases resulting in permanent loss of vision. *Id.* 9–10. Finally, plaintiffs cite video evidence of three incidents in which officers threw tear gas or shot pepper balls into peaceful crowds. *Id.* at 10–11.

Plaintiffs allege that defendant's use of such force has resulted in injuries including loss

2

of vision, fractured bones requiring surgery, deep lacerations, loss of eyes, ruptured testicles. *Id.* at 2. They further allege that officers have targeted peaceful protestors, journalists, and protest "medics" and have retaliated against demonstrators for engaging in demonstrations, and sometimes for expressing anti-law enforcement. *Id.* at 2–3. Plaintiffs allege that this use of force against peaceful protestors and others is sometimes intentional and that officers target projectiles at demonstrators' heads and groins. *Id.* at 3.

### Procedural Background

Plaintiffs filed a complaint in Denver District Court on June 4, 2020. ECF No. 1-1. Defendant removed to this Court. ECF No. 1. Plaintiffs' complaint alleges two causes of action premised on 42 U.S.C. § 1983. ECF No. 1-1 at 21, 23. First, plaintiffs allege that defendant violated their Fourth Amendment right against excessive force. *Id.* ¶¶ 87–97. Second, plaintiffs allege that defendant violated their First Amendment right to free speech. *Id.* ¶¶ 98–108.

This Court heard the parties in an emergency oral argument on the motion for a TRO on June 5, 2020 at 6:00 p.m. ECF No. 13.

## II. STANDARD OF REVIEW

In determining whether to grant a TRO, the court must analyze the following factors: (1) whether the movant has a substantial likelihood of success on the merits; (2) whether irreparable harm will ensue if the request for a TRO is denied; (3) whether the threatened injury outweighs the harm that the TRO may cause the defendant; and (4) whether, if issued, the TRO will not adversely affect the public interest. *See General Motors Corp. v. Urban Gorilla, LLC,* 500 F.3d 1222, 1226 (10th Cir. 2007).

## III. ANALYSIS

### A. **Likelihood of Success on the Merits**

In cases in which the deprivation of constitutional rights is at issue, the likelihood of the success on the merits factor is determinative. *See Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013) (quoting *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012), *cert. denied*, --- U.S. ---, 133 S. Ct. 651 (2012)) ("[I]n First Amendment cases, the likelihood of success on the merits will often be the determinative factor.").

Before turning to these issues, however, I wish to make certain things perfectly clear, as I did during the hearing held earlier this evening. First, people have an absolute right to demonstrate and protest the actions of governmental officials, including police officers. It is one of the many freedoms on which this country was built. Second, police have a very difficult and often thankless job. They frequently are called upon to make split second decisions and to expose themselves to danger while protecting the health and safety of the rest of us. Third, some of the behaviors of what I hope and believe to be a minority of the police officers in Denver and the nation during recent days (and before), not only vis-à-vis persons of color but against peaceful protesters of all backgrounds, have been disgusting. Finally, as I emphasized during the hearing, the difficulty is in trying to draw an enforceable line that permits police officers to use appropriate means to respond to violence and destruction of property without crossing the line into the chilling free speech and abusing those who wish to exercise it.

I analyze the likelihood of success of each of plaintiffs' two claims.

   1. Plaintiffs' Fourth Amendment Claim

The Fourth Amendment guarantees the right to be free from excessive force. Excessive force claims are analyzed under the objective reasonableness standard of the Fourth Amendment. *See Graham v. Connor,* 490 U.S. 386, 395 (1989). The reasonableness of an officer's conduct must be assessed "from the perspective of a reasonable officer on the scene," recognizing the fact

that the officer may be "forced to make split-second judgments" under stressful and dangerous conditions. *Id.* at 396–97. The Fourth Amendment standard requires inquiry into the factual circumstances of every case. *See id.* at 396–97. Relevant factors include the severity of the crime, the potential threat posed by the suspect to the officer's and others' safety, and the suspect's attempts to resist or evade arrest. *See id.*

Here, plaintiffs provide video evidence of police conduct at the demonstrations. Those videos show that the officers had ample time for reflection and were not dealing with dangerous conditions. Named plaintiffs were attacked with rubber bullets, tear gas, etc, allegedly solely on the basis of their presence at the demonstrations, their viewpoint, or their attempts to render treatment to injured protestors. Additionally, plaintiffs allege that officers specifically aimed at heads and groins, causing broken facial bones and ruptured testicles. These are peaceful demonstrators, journalists, and medics who have been targeted with extreme tactics meant to suppress riots, not to suppress demonstrations.

There may later be questions of qualified immunity to grapple with, but plaintiffs have established a strong likelihood that defendant engaged in excessive force contrary to the Fourth Amendment.

    2. Plaintiffs' First Amendment Claim

The First Amendment provides that all citizens have a right to hold and express their personal political beliefs. *See Cohen v. California*, 403 U.S. 15, 24 (1971). Organized political protest is a form of "classically political speech." *Boos v. Barry*, 485 U.S. 312, 318 (1988). "[T]he First Amendment safeguards an individual's right to participate in the public debate through political expression and political association." *McCutcheon v. Fed. Election Com'n*, 572 U.S. 185, 203 (2014). This "reflects a profound national commitment to the principle that debate

on public issues should be uninhibited, robust, and wide-open," and the Supreme Court has "consistently commented on the central importance of protecting speech on public issues." *Id.* (internal citations omitted) (collecting cases). Thus courts must "scrutinize carefully any restrictions on public issue picketing." *Id.* (citations omitted).

Additionally, the Supreme Court "has repeatedly held that police may not interfere with orderly, nonviolent protests merely because they disagree with the content of the speech or because they simply fear possible disorder." *Jones v. Parmley*, 465 F.3d 46, 56 (2d Cir. 2006) (citing *Cox v. Louisiana,* 379 U.S. 536, 550 (1965)). Indeed, "it has long been clearly established that the First Amendment bars retaliation for protected speech and association." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1292 (10th Cir. 2008) (quoting *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 848 (10th Cir. 2005)).

The Tenth Circuit examines "First Amendment retaliation claims under *Worrell v. Henry*, 219 F.3d 1197 (10th Cir. 2000)," which requires inquiry into whether (1) plaintiffs were engaged in constitutionally protected activity; (2) defendants caused the plaintiffs to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) defendant's actions were motivated by plaintiffs' protected activity. *Id.*

Here, first, plaintiffs were engaged in constitutionally protected activity through organized political protest. Second, defendant's use of excessive force likely caused injury sufficient to chill a person of ordinary firmness from continuing to engage in that political protest. Officers used physical weapons and chemical agents to prevent not just peaceful demonstration, but also the media's ability to document the demonstrations and plaintiffs' and third parties' ability to offer aid to demonstrators. Peaceful demonstrators' legitimate and credible fear of police retaliation is silencing their political speech—the very speech most highly

6

valued under the First Amendment. Third, it also seems likely that defendant's actions were motivated by the content of plaintiffs' demonstrations against police violence. Citizens should never have to fear peaceful protest on the basis of police retaliation, especially not when protesting that very same police violence.

As with plaintiffs' Fourth Amendment claims, there may later be questions of qualified immunity. For now, however, I find that plaintiffs have established a strong likelihood that defendant violated plaintiffs' First Amendment right to free speech.

### B. Irreparable Harm to the Movant

"The Supreme Court has made clear that 'the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1190 (10th Cir. 2003) (quoting *Elrod v. Burns,* 427 U.S. 347, 373 (1976) (plurality)).

The demonstrations in Denver are ongoing, likely even as this opinion is written. The demonstrations will likely continue tonight and at least into the weekend. If immediate relief is not granted, plaintiffs' speech would be chilled and outright denied over the next several days or weeks of demonstrations. Indeed, irreparable harm has already occurred in the form of physical injury and the suppression of speech; there is no reason such harm would not otherwise continue if this relief were denied. Officers would continue to use force, secure in the knowledge that retrospective claims take a significant amount of time, effort, and money to pursue.

Significantly, plaintiffs also note that their "speech is deeply rooted in the [current] time and context." ECF No. 10 at 18. I recognize the importance of shielding and uplifting this ongoing, nationwide movement. As such, I find that irreparable harm would occur were I to deny this relief.

### C. Balancing Harm to the Nonmovant

Plaintiffs' motion does not discuss potential harm to the defendant. In theory, the inability to use the complained-of tactics limit the officers' ability to protect themselves against potential violence from demonstrators. Yet this is a hypothetical harm, especially given the fact that officers have access to many other types of non-lethal weapons that they use on a daily basis, including tazers. The unlikelihood of such harm to officers is outweighed by the very real harm that has already been caused to plaintiffs.

### D. Public Interest

The Tenth Circuit has recognized that "it is always in the public interest to prevent the violation of a party's constitutional rights." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013) (quoting *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012)). The Tenth Circuit has particularly recognized a "strong public interest in protecting First Amendment values." *Cate v. Oldham*, 707 F.2d 1176, 1190 (10th Cir. 1983). Even where individuals' constitutional rights come into conflict with other important values or public objectives, the Tenth Circuit has held that those other values must yield to the protection of individuals. For example, in *Awad v. Ziriax*, the Tenth Circuit noted that "[w]hile the public has an interest in the will of the voters being carried out . . . the public has a more profound and long-term interest in upholding an individual's constitutional rights." 670 F.3d at 1132.

Here, it is clearly in the public interest to protect plaintiffs' right to demonstrate, the media's ability to document that demonstration, and third parties' ability to render aid to demonstrators without threat of excessive force by police. Plaintiffs' lawsuit is itself a class action on behalf of "all similarly situated demonstrators and citizens of Denver whose

8

constitutional rights have been, and continue to be, violated by the Denver Police Department." ECF No. 10 at 2.

Plaintiffs do not expressly discuss the potential harm to the public interest. The most likely potential harm is an increase in property damage. Although I do not agree with those who have committed property damage during the protests, property damage is a small price to pay for constitutional rights—especially the constitutional right of the public to speak against widespread injustice. If a store's windows must be broken to prevent a protestor's facial bones from being broken or eye being permanently damaged, that is more than a fair trade. If a building must be graffiti-ed to prevent the suppression of free speech, that is a fair trade. The threat to physical safety and free speech outweighs the threat to property.

### E. Conclusion

In issuing this relief I do not seek to prevent officers from protecting themselves or their community. I seek to balance citizens' constitutional rights against officers' ability to do their job. However, the time is past to rely solely on the good faith and discretion of the Denver Police Department and its colleagues from other jurisdictions. I believe in everything that Commander Phelan testified during tonight's hearing about the duty of the police to protect the rights of citizens who demonstrate and protest. However, the Denver Police Depart has failed in its duty to police its own.

### ORDER

Plaintiffs' motion for a temporary restraining order, ECF No. 10, is GRANTED in PART. The Court temporarily enjoins the City and County of Denver, and specifically the Denver Police Department and officers from other jurisdictions who are assisting Denver Police Officers, from employing chemical weapons or projectiles of any kind against persons engaging

in peaceful protests or demonstrations. To be better assure that this idealistic order is carried out, the Court temporarily enjoins the Denver Police Department and officers from other jurisdictions working with Denver Police Department officers from using chemical weapons or projectiles unless an on-scene supervisor at the rank of Captain or above specifically authorizes such use of force in response to specific acts of violence or destruction of property that the command officer has personally witnessed. The Court further orders that:

1. Kinetic Impact Projectiles ("KIPs") and all other non- or less-lethal projectiles may never be discharged to target the head, pelvis, or back.

2. KIPs and all other non- or less-lethal projectiles shall not be shot indiscriminately into a crowd.

3. Non-Denver officers shall not use any demonstration of force or weapon beyond what Denver itself authorizes for its own officers. Any non-Denver officer permitted to or directed to be deployed to the demonstrations shall be considered an agent of Denver such that Denver shall ensure such officer is limiting their use of force to that authorized by the Defendant.

4. All officers deployed to the demonstrations or engaged in the demonstrations must have their body-worn cameras recording at all times, and they may not intentionally obstruct the camera or recording.

5. Chemical agents or irritants (including pepper spray and tear gas) may only be used after an order to disperse is issued.

6. Any and all orders to disperse must be followed with adequate time for the intended audience to comply, and officers must leave room for safe egress. If it appears that the

intended audience was unable to hear the order, the order must be repeated prior to the use of chemical agents or irritants.

DATED this 5th day of June, 2020, 8:39 p.m.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge