UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| Jared Goyette, Craig Lassig, Michael Shum, Katie Nelson, Tannen Maury, Stephen Maturen, and The Communications Works of America, *On behalf of themselves and other similarly situated individuals,* | Ct. File No. 20-cv-01302 (WMW/DTS) |
| Plaintiffs, | |
| v. | **CITY DEFENDANTS' MEMORANDUM IN RESPONSE TO DEFENDANTS' MOTION TO DISMISS** |
| City of Minneapolis; Minneapolis Chief of Police Medaria Arradondo, *in his individual and official capacity*; Minneapolis Police Lieutenant Robert Kroll, *in his individual and official capacity*; Minnesota Department of Public Safety Commissioner John Harrington, *in his individual and official capacity*; Minnesota State Patrol Colonel Matthew Langer, *in his individual and official capacity*; John Does 1-10, *in their individual and official capacities;* | |
| Defendants. | |

_____

## INTRODUCTION

Plaintiffs have filed a 114-page Second Amended Complaint ("complaint") alleging a potpourri of irrelevant facts to attempt to support their claims. Defendants City of Minneapolis and Chief of Police Medaria Arradondo ("City Defendants") have, in their answer, reserved the defense that the Plaintiffs have

failed to state claims upon which relief can be granted. As the Defendants Commissioner John Harrington and Colonel Matthew Langer ("State Defendants") and Lieutenant Robert Kroll ("Kroll") have filed motions to dismiss under Fed. R. Civ. P. 12(b)(6), the City Defendants file this response in support of a contention that relates to all Defendants: Plaintiffs have failed to state a valid conspiracy claim. If the Court dismisses the Count V conspiracy claim against the State Defendants and Kroll, the claim cannot be maintained solely against the City Defendants. Needless to say, the City Defendants cannot have conspired by themselves.

## FACTS

This statement of facts will be limited to those addressed in this response.

### I. Plaintiffs' alleged conspiracy claims regarding the State Patrol and the City Defendants.

Plaintiffs have alleged several incidents occurring throughout the protests in response to the death of George Floyd where a member of the media was subjected to force by law enforcement. (*See generally* ECF Doc. 53 at ¶¶ 32-129.) These actions were allegedly taken by Minnesota State Patrol ("MSP") troopers or Minneapolis Police Department ("MPD") officers. (*See, e.g. id.* at ¶ 122 (Plaintiff Shum pushed off a wall by State Trooper), ¶ 109 (Plaintiff Goyette hit with less-lethal round by MPD).) Plaintiffs allege that in spite of Governor Walz's statements that the media must be protected, "MPD, State Patrol, and other law

2

enforcement authorities continued to target and intimidate members of the news media in a concerted effort to chill protected First Amendment activity." (*Id.* at ¶ 25.) Plaintiffs allege that Defendants "acted in communication and coordination with one another in responding to the George Floyd protests and in committing the constitutional violations described [in the complaint]." (*Id.* at ¶ 32.) Plaintiffs return frequently to this concept of "communication and coordination," alleging that command staff from MSP and MPD "were in regular communication and coordination . . . regarding crowd control techniques, use of chemical agents and less-lethal ballistics and other crowd control technologies, and tactical deployment of officers and troopers . . . ." (*Id.* at ¶ 33.) Plaintiffs allege that Defendants "coordinated activities" at the Multi-Agency Command Center ("MACC"), which they describe as "as a unified command of federal, state and local law enforcement and public safety agencies supporting the state's response to any unrest that develops" during the protests. (*Id.* at ¶ 34.)

Plaintiffs allege that senior officials from MPD were present at the MACC to facilitate coordination with the State Patrol and other agencies. (*Id.* at ¶ 35.) The complaint asserts that Commissioner Harrington and the Department of Public Safety had control of all law enforcement response to the protests "with the sole exception of the Minneapolis Police." (*Id.*) According to the complaint, the MPD was not able to dictate missions to the State Patrol, merely to make requests. (*Id.*)

3

Plaintiffs additionally allege that at the scene of protests, MPD officers and State Patrol troopers "worked literally side-by-side and in coordination in responding to the George Floyd protests." (*Id.* at ¶ 36.)

## II. Plaintiffs' allegations regarding Defendant Kroll and the MPD

Plaintiffs make many allegations regarding Defendant Kroll, President of the Police Officers Federation of Minneapolis and his purported "policymaking role" in the MPD. (*Id.* at ¶¶ 184-236.) While Plaintiffs allege that Kroll acts "sometimes in concert with and sometimes in contravention of City policy[,]" (*Id.* at ¶ 234) the complaint specifically alleges only a history of constant conflict with the policymakers, past and present, of the City of Minneapolis. Plaintiffs allege that Kroll has a history of fighting policy changes seeking to bring more accountability and transparency to the MPD. (*See id.* at ¶¶ 196-99.) The complaint states that during the end of 2015 "Kroll routinely gave radio interviews in which he criticized the Mayor and the Chief, lambasted the MPD command structure for what he viewed as a weak response to the [Fourth Precinct] protests, undercutting the Mayor's order that the MPD act with restraint in response to the protests, and the public statements from Chief Harteau that protesters First Amendment rights would be respected." (*Id.* at ¶ 195.) He also debated Chief Harteau on a radio show about his opposition to her policies. (*Id.* at ¶ 215.)

4

Plaintiffs also allege that Kroll has been in conflict with the current mayor, Mayor Jacob Frey, and that under Kroll's leadership, the Police Officers Federation "has resisted all the reforms [Mayor Frey] has worked to institute, and that [Mayor Frey] is 'hamstrung by the architecture of the system' of the Federation's contract with the City of Minneapolis." (*Id.* at ¶ 201.) Additionally, in 2019 when Mayor Frey banned warrior-style training, Kroll announced that the Federation would offer and pay for such training. (*Id.* at ¶ 203.)

Plaintiffs further allege that Kroll has been in conflict with Minneapolis City Council members. Plaintiffs imply that Kroll is behind a slowdown in MPD service to the wards of councilmembers who have proposed reductions to the police budget. (*Id.* at ¶ 210.) Plaintiffs also cite to a tweet from Councilmember Jeremiah Ellison to show that the councilmember is actively antagonistic to Kroll. (*Id.* at ¶ 210.)

Plaintiffs allege that Chief Arradondo and Mayor Frey have complained of the barriers that the Police Officers Federation, led by Kroll, places in the way of positive change. (*Id.* at ¶¶ 204-05.) Chief Arradondo and Mayor Frey withdrew from contract negotiations with the Federation. (*Id.* at ¶ 206.)

Plaintiffs allege that in the midst of the protests and riots following the death of George Floyd, Kroll wrote an email which "implored MPD commanders to further loosen the existing, ineffective restrictions on use of less-lethal projectiles

5

and chemical agents." (*Id.* at ¶ 188.) The email, sent on May 29, 2020, to command staff at the MPD specifically states: "The officers have lost faith in leadership that appears handcuffed by political power that despises us. That was very evident with numerous examples by several at today's press conference." (*Id.* at ¶ 189.) Plaintiffs allege that Kroll also approached Minnesota Senate Majority Leader Paul Gazelka with his plan for addressing the protests. (*Id.* at ¶ 207.) Plaintiffs also cite to a statement by Kroll sent to members of the Police Officers Federation on June 2. (*Id.* at ¶ 190.) Plaintiffs allege that this statement "seeks to drive a wedge between rank-and-file officers and MPD leadership[.]" (*Id.* at ¶ 191.)

### III. General conspiracy allegations

Plaintiffs allege that the Defendants "acted in concert and committed overt acts in furtherance of the conspiracy" by "target[ing] members of the press and us[ing] unlawful excessive force to interfere with and retaliate against the Plaintiffs' . . . exercise of their constitutional rights." (*Id.* at ¶ 326.) Additionally, Plaintiffs allege that "Defendants coordinated with one another prior to and during the George Floyd protests regarding their response to the protests and to the journalists covering the protests." (*Id.* at ¶ 327.) Finally, they assert that "Defendants engaged in overt acts in furtherance of their conspiracy to violate the constitutional rights of Plaintiffs and the Plaintiff Class, and these overt acts injured Plaintiffs and the Plaintiff Class." (*Id.* at ¶ 328.)

6

**ARGUMENT**

**I. PLAINTIFFS HAVE FAILED TO STATE A VIABLE CONSPIRACY CLAIM.**

The elements of a 42 U.S.C. § 1983 conspiracy claim are: (1) that the defendant conspired with others to deprive Plaintiffs of their constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff. *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008). A plaintiff must also prove a predicate deprivation of a constitutional right in order to prevail on a § 1983 civil conspiracy claim. *Id.* The Second Amended Complaint wholly fails to satisfy the first element of a conspiracy claim against the City Defendants – that the City Defendants conspired with others for the purpose of depriving Plaintiffs or others of their constitutional rights.

      **A.    There was no "meeting of the minds" between the City Defendants and the alleged co-conspirators.**

For a complaint to show that the defendants conspired, "the plaintiff must allege with particularity and specifically demonstrate with material facts that the defendants *reached an agreement*." *Bonenberger v. St. Louis Metropolitan Police Dept.*, 810 F.3d 1103, 1109 (8th Cir. 2016)(emphasis added); *see also Reasonover v. St. Louis Cty.*, 447 F.3d 569, 582 (8th Cir. 2006) (explaining that plaintiff must allege with particularity "facts that the defendants reached an agreement"). Put another way, a conspiracy claim "requires allegations of specific facts tending to show a

'meeting of the minds' among the alleged conspirators." *Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010). Plaintiffs "must at least allege that 'the defendants had directed themselves toward an unconstitutional action by virtue of a mutual understanding[.]'" *Deck v. Leftridge*, 771 F.2d 1168, 1170 (8th Cir. 1985).

The factual allegations in Plaintiffs' Second Amended Complaint do not directly or indirectly suggest a meeting of the minds between any of the alleged co-conspirators, let alone with the City Defendants. Plaintiffs offer the conclusory allegation that the Defendants "acted in concert". (ECF Doc. 53 at ¶ 326.) This allegation, however, amounts to no more than a recitation of an element of a conspiracy claim, and, consequently, fails to meet basic pleading requirements. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that conclusory allegations are insufficient to withstand Rule 12 motion); *Spencer v. Federal Prison Camp Duluth*, 2016 WL 4942037, at *30 (D. Minn. 2016) (citing to *Manis v. Sterling*, 862 F.2d 679, 681 (8th Cir. 1988)) ("Conclusory allegations [for a conspiracy claim] do not suffice."); *Murrin v. Fischer*, 2008 WL 540857, at *23 (D. Minn. 2008) (citing to *Snelling v. Westhoff*, 972 F.2d 199, 200-01 (8th Cir. 1992)) ("[W]here a plaintiff offers only conclusory allegations of a conspiracy against a party, the claim is adjudged to have been insufficiently pled, and is subject to dismissal.")

### 1. Complaint does not plead facts that the City Defendants reached any agreement with Kroll, on the contrary, it alleges that Kroll and the City Defendants were in constant conflict.

Here, the complaint does not contain any facts suggesting that the City Defendants reached an agreement or had a "meeting of the minds" with Kroll. At most, Plaintiffs allege that Kroll demanded that the City loosen restrictions on the use of less lethal force. But the Second Amended Complaint does not plead any facts showing that the City Defendants agreed to, complied with, acted upon, or even responded to Kroll's purported demand. (*See generally* ECF 53.) This fails to allege a "meeting of the minds."

Plaintiffs allege that violations of the rights of the media were occurring before Kroll's May 29 email, but also allege that "many of the most egregious" violations occurred on the two days after this email was sent. (*Id.* at ¶¶ 188-90.) However, the correlation hinted at in Plaintiffs' complaint is not sufficiently supported by facts to render it plausible. This type of conspiracy allegation – that the parties communicated and then something adverse happened to Plaintiff – was found insufficient in *Lawrence v. City of St. Paul*, 740 F. Supp. 2d 1026, 1050 (D. Minn. 2010). In that case, Lawrence sued her ex-boyfriend, who was a Minneapolis Police Officer, and two St. Paul Police Officers, alleging that they had conspired to retaliate against her for exercising her First Amendment rights, by towing her car and having her blood-alcohol level tested, when she accused her ex-boyfriend of

assaulting her. *Id.* at 1043-44. However, the allegation of conspiracy was found insufficient on the face of the complaint because it only alleged that: 1) the ex-boyfriend and the St. Paul Police Officer had a conversation out of Lawrence's hearing; and 2) after that conversation Lawrence's car was towed and she was brought to the hospital for a blood-alcohol test. *Id.* at 1050. The Court found this to be analogous to the situation the Supreme Court rejected in *Twombly*. *Id.* at 1050-51 (citing *Twombly*, 550 U.S. at 556-57). "[A]lleging that two people had the *opportunity* to conspire—i.e., that they could have met with each other, or called each other, or e-mailed each other—is obviously not sufficient to 'nudge[ ]' a conspiracy claim 'across the line from conceivable to plausible.'" *Id.* at 1050 (quoting *Twombly*, 550 U.S. at 570). Nor does it suffice that adverse action against Lawrence followed. "It is certainly possible that [the St. Paul officers] had Lawrence's car towed and blood tested because they had entered into a conspiracy with [the ex-boyfriend]. But it is also possible that they acted on their own to protect a fellow police officer—or that they had entirely legitimate reasons for their actions." *Id.* at 1051.

Plaintiffs' allegations in this case suffer from the same flaw. Plaintiffs ask the Court to draw the conclusion that because, after an email from Kroll, there were alleged instances of adverse action against journalists, that this shows a conspiracy. However, the content of Kroll's email mentions nothing about

10

journalists. And, Plaintiffs do not allege MPD command staff offered any response to Kroll's email. Whether there even was a "conversation" between Kroll and the command staff is not alleged and would amount to pure speculation on Plaintiffs' part. Plaintiffs ask the Court to speculate that, despite the long-standing antagonism between Kroll and the Chief of Police, command staff, and leaders at the City, the City Defendants suddenly decided to reach out to Kroll to implement his suggestions, and in that conversation they further decided that journalists should be targeted, and they then carried out this agreement. Plaintiffs' preferred gloss on the facts is no where near the "plausible" standard that must be met in pleading a conspiracy. *Id.* at 1051 (citing *Twombly*, 550 U.S. at 570.)

Looking closer at Plaintiffs' allegations reveals further flaws. The fact that Kroll's email set forth his opinion of how the situation should be handled is insufficient to show that there was an agreement. The mere offering of suggestions does not qualify as a conspiratorial "meeting of the minds." *See Shimota v. Wegner*, 2016 WL 1254240, at *10 (D. Minn. 2016) (dismissing conspiracy claim alleging that a prosecutor's "advice" led county officials to keep plaintiff detained notwithstanding a court order requiring her release because the allegations did not include "specific facts tending to show a meeting of the minds among the alleged conspirators" and, at most, suggested that the parties "acted in a manner that was consistent with the existence of a conspiracy.") Again, the complaint

does not plead any facts showing that the City Defendants agreed to, complied with, acted upon, or even responded to Kroll's purported tactical "input."

The mere allegation that Kroll holds significant power or influence over officers in the MPD is immaterial to a determination of whether the City Defendants – or even the John Does – actually agreed to conspire to deprive Plaintiffs or others of their constitutional rights during the recent George Floyd protests. *See Magee v. Trustees of the Hamline University, Minn.*, 957 F.Supp.2d 1047, 1057 (D. Minn. 2013) ("Magee alleges generally that Titus was able to influence police policy through his position as an officer and president of the [St. Paul Police Federation]. That Titus may have been able to influence policy says nothing about whether Titus did so with respect to the present allegations.")(internal citation omitted).

Plaintiffs' conspiracy claim is also erroneously premised on the notion that the City's mere awareness of Kroll's suggestions can be interpreted as having a conspiratorial meaning. In *Manis v. Sterling*, 862 F.2d 679 (8th Cir. 1988), the Eighth Circuit rejected the notion that knowledge of another's purportedly wrongful conduct gives rise to a conspiracy. There, the plaintiff alleged that his attorney conspired with state court judges to delay his post-conviction relief. *Id.* at 681. In support of that claim, the plaintiff alleged the state court judges knew his attorney was not vigorously prosecuting his post-convictions actions yet did nothing to

rectify the situation. *Id.* This failed to satisfy the requirement that conspiracy allegations "must be pled with sufficient specificity and factual support to suggest a 'meeting of the minds.'" *Id.* The Eighth Circuit held that the state court judges' purported knowledge of the attorney's dilatory efforts failed to support an inference that the state court judges "had reached any agreement to delay or hinder the adjudication of [plaintiff's] state post-conviction lawsuits." *Id.* Likewise, here, there is a gap too wide to hurdle between allegations of Kroll's one-sided demands and the speculative assumption that City Defendants then agreed to a course of action to deprive members of the press of their constitutional rights.

Additionally, Plaintiffs offer no explanation of *how* the City Defendants purportedly acted in concert with Kroll. Simply put, the complaint is devoid of any specific, material facts tending to show that the City Defendants in any manner agreed to the demands and input, let alone a more specific plan to deprive the press and protestors of their constitutional rights. Additionally, Plaintiffs' allegation that Kroll reached out to Senator Gazelka with his plan makes it less likely that he received any willing listeners at the City of Minneapolis. If the City of Minneapolis had agreed to Kroll's suggestions, it would have been positioned to enact the suggestion itself. That Kroll went outside the MPD to gain support for his purported plan confirms that he received no such support from MPD

command staff. Further showing the implausibility of Plaintiffs' conspiracy theory, Plaintiffs specifically, and extensively, plead a history of disagreement between the City Defendants and Kroll. Indeed, Plaintiffs note that Kroll caused the Police Officers Federation to offer to provide and pay for so-called warrior training to MPD officers after that same training had been banned by the City Defendants. Such discord makes any suggestion of a mutual understanding or conspiracy extremely implausible, and therefore insufficient on the face of the complaint.

> 2. *Allegations that the City and State were "coordinating" their law enforcement efforts is insufficient to support a conspiracy claim.*

Plaintiffs' claims regarding a conspiracy between the State and the City Defendants are even less supported by factual allegations. Plaintiffs merely allege that City and State Defendants were in communication and coordination. (*See* ECF 53 at ¶¶ 32-33), that they "coordinated activities" at the MACC (*Id.* at ¶¶ 34-35), and that MPD officers and State Troopers were "literally side-by-side and in coordination" responding to the protests on the street. (*Id.* at ¶ 36.) However, the mere allegation that two parties had contact, even multiple, ongoing, contacts, is insufficient to show they reached a "mutual understanding" to create a conspiracy. *Mershon v. Beasley*, 994 F.2d 449, 452 (8th Cir. 1993) ("contacts, by themselves and without more" do not allow the inference of "any mutual

understanding" in a § 1983 action). That is especially the case where the parties had a legitimate reason to be in contact. *See id.* (county prosecutor and complaining party in a criminal case had legitimate reason to be in contact, Plaintiffs' assertion that it showed a conspiracy was "mere conjecture and speculation"). Here, the two law enforcement agencies were attempting to respond to a situation of massive civil unrest which endangered lives and livelihoods.[1] Their coordination and communication were incidental to their mission to restore order and are not sufficiently indicative of any mutual understanding to violate constitutional rights, let alone to target journalists, to allow Plaintiffs' conspiracy claims to survive.

Nor would it be sufficient to support a conspiracy claim with an inference that each party knew of the others' purportedly wrongful activities simply because they were in communication with each other, and that they are therefore conspiring. In *Boone v. PCL Const. Services, Inc.*, 2005 WL 1843354 (D. Minn. Aug. 2, 2005), the Court rejected the notion that knowledge – or even approval – of another party's separate, wrongful conduct satisfies the "meeting of the minds"

---

[1] Paragraph 27, footnote 4 of the complaint cites to the Governor's Emergency Executive Order 20-65, which states, "Destructive and dangerous activity has continued. Individuals have looted businesses, destroyed residential buildings, and set a precinct police station on fire. This senseless violence tears at the fabric of our society. . . . We must restore peace and safety immediately."

pleading requirement. The plaintiff in *Boone* alleged that the City refused to enforce its affirmative action ordinance to foster the inclusion of minority-owned subcontractors on City projects by failing to hold multiple general contractors accountable under the ordinance, resulting in an unabated custom or policy permitting discrimination against minority-owned businesses. Case No. 05-CV-00024 at ECF 19, ¶¶12-13. The plaintiff pled that the City and contractors conspired to violate plaintiff's civil rights under 42 U.S.C. §§ 1983 and 1985 when they "engaged in, consented to, ratified, acquiesced in, approved, and financed racial discrimination in the terms and conditions of awarding contracts for work" on two particular City projects. *Id*. at ¶42. Dismissing the conspiracy claim on a Rule 12(b)(6) motion, Judge Davis reasoned that these allegations failed to plead a meeting of the minds to sustain a conspiracy claim:

> [E]ven under the liberal pleading standards, nothing in the Complaint could be construed as alleging a meeting of the minds. Plaintiffs have alleged a variety of acts by each of the Defendants. Then, Plaintiffs allege that the City knew of, acquiesced in, and/or approved of the Contractor defendants' discriminatory actions. There is no link between the two sets of allegations that suggest there was a meeting of the mind between either of the Defendant contractors and the City.

*Boone*, 2005 WL 1843354, *7 (internal citations omitted). Likewise, here, there is a lack of connection between allegations that State Defendants and City Defendants were in communication and knew of each other's actions, and the allegation that

16

Defendants collectively agreed upon a course of action to deprive members of the press of their constitutional rights.

Being generous, Plaintiffs merely allude to the possibility of a conspiracy. However, as this District has noted, "[m]ere allusion to such a conspiracy is insufficient; the conspiracy, or meeting of the minds, must be pleaded with specificity and factual support." *Magee v. Trustees of the Hamline University, Minn.*, 957 F.Supp.2d 1047, 1058 (D. Minn. 2013); *see also Doe v. North Homes, Inc.*, 2019 WL 3766380, at *3 (D. Minn. 2019) (explaining "it is not sufficient merely to allude to such a meeting of the minds or joint activity between the state and a private party"). The complaint fails to allege a "meeting of the minds" between the City Defendants and the State Defendants.

**B. There was no agreement between the City Defendants and the alleged co-conspirators for the purpose of depriving Plaintiffs of their constitutional rights.**

Even if the Plaintiffs sufficiently pled the existence of an agreement, the complaint is devoid of any facts showing that the agreement was designed to deprive Plaintiffs of their constitutional rights.

Plaintiffs allege that Kroll made demands to lessen restrictions on the use of less-lethal munitions or that Kroll offered input on officer responses. Plaintiffs do not plead any facts to demonstrate that Kroll's various suggestions called for officers to violate the constitutional rights of members of the press. Although

17

Plaintiffs generally contend that Kroll was antagonistic to the press, neither the demand nor input offered by Kroll specifically pertain to members of the press. Additionally, there are no material facts pled from which this Court could conclude that Kroll's unsolicited suggestions were made with the intent to infringe on journalists' constitutional rights versus an intent to improve law enforcement's capacity to respond to the looting, arson, property destruction, attacks on officers and other criminal acts that became widespread during the civil unrest. More importantly, Plaintiffs do not plead even a single fact showing that the City Defendants were intent on depriving members of the press of their constitutional rights, whether it be the right to freedom of speech, the right to be free of excessive force, or any other constitutional right. That is dispositive. Plaintiffs must show that the City Defendants conspired "*for the purpose* of depriving one of a constitutional right." *Shimota v. Wegner*, 2016 WL 1254240, at *10 (D. Minn. 2016)(emphasis in original). They have not.

The same holds true, with more force, as to the State Defendants. Amidst all the communication and coordination that occurred, there is no indication that that there was any agreement to deprive anyone of their constitutional rights. Plaintiffs cannot even point to an objectionable statement by a City Defendant or a State Defendant indicating that they were making an agreement to target journalists with excessive force or retaliation.

Plaintiffs' allegations that the Defendants "acted in concert" and "targeted members of the press" does not adequately plead a § 1983 conspiracy, i.e., an agreement to violate the constitutional rights of another. *See e.g., Palesch v. Missouri Com'n on Human Rights*, 233 F.3d 560, 570 (8th Cir. 2000) (allegation that the individual defendants were "out to get" the plaintiff failed to "support a finding of purposeful discrimination" and conspiracy); *Williamson v. Mo. Dep't of Corr.*, 740 F. App'x 513, 514 (8th Cir. 2018) (stating that conclusory allegations of "obstruction" and "cover-up" insufficient to state a conspiracy claim); *Smithson v. Aldrich*, 235 F.3d 1058, 1063 (8th Cir. 2000) (holding that an allegation of a conspiracy to provide false testimony is conclusory and therefore fails to state a claim). As other Courts have done, and this District did in *Magee* and *Shimota*, this Court should dismiss Plaintiffs' Count V conspiracy claim for failing to sufficiently plead facts demonstrating an agreement, involving the City Defendants, to deprive Plaintiffs or members of the press of their constitutional rights.

## **CONCLUSION**

For the reasons set forth above, and in the motions to dismiss by the State Defendants and Kroll, Plaintiffs' conclusory allegations have failed to plead a colorable conspiracy claim. The City Defendants respectfully request that the Court dismiss Plaintiffs' Count V in its entirety against the State Defendants, Kroll and the City Defendants.

Dated: October 15, 2020

JAMES R. ROWADER, JR.
Minneapolis City Attorney
By
*/s/ Heather P. Robertson*
Heather P. Robertson (#0390470)
Kristin R. Sarff (#388003)
Sharda Enslin (#0389370)
Assistant City Attorneys
Office of the Minneapolis City Attorney
City Hall, Room 210
350 S. Fifth Street
Minneapolis, MN 55415
Telephone: 612-673-3949
heather.robertson@minneapolismn.gov
kristin.sarff@minneapolismn.gov
sharda.enslin@minneapolismn.gov
*Attorneys for Defendants City of Minneapolis and Chief of Minneapolis Police Medaria Arradondo*