# Exhibit 1

# Ballard Spahr
LLP

2000 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2119
TEL 612.371.3211
FAX 612.371.3207
www.ballardspahr.com

Leita Walker
Tel: 612.371.6222
Fax: 612.371.3207
walkerl@ballardspahr.com

April 17, 2021

*Via E-mail*

Governor Tim Walz

Commissioner John Harrington
Minnesota Department of Public Safety

Colonel Matt Langer, State Patrol Chief

Commissioner Paul Schnell, Minnesota
Department of Corrections

Re:   Treatment of journalists by law enforcement officers

Dear Sirs:

Thank you for meeting with me and various representatives of the media by video conference earlier this afternoon to discuss the treatment of journalists by law enforcement during the ongoing demonstrations in our State. We appreciate your time and the seriousness with which you are addressing this matter.

Although today's call included a small number of representatives, I write on behalf of nearly 30 local and national news, freedom of the press, and government transparency organizations that are following the issues we discussed closely. These organizations are deeply troubled by what has occurred over the last several days. In the interest of continuing the dialogue and ensuring that what has transpired thus far does not occur again, I write to impress upon you the gravity of the misconduct and to memorialize our conversation and the media's expectations going forward.

The First Amendment is clear: journalists have a robust right of access to gather and report the news without fear of intrusion or interference by law enforcement. *See Branzburg v. Hayes*, 408 U.S. 665, 681 (1972); *see also Tirado v. City of Minneapolis*, 2021 U.S. Dist. LEXIS 32380, at *25-26 (D. Minn. Feb. 22, 2021) (noting that the number of journalists covering the George Floyd protests who "experienced similar, seemingly unjustified incidents involving less-lethal munitions and other measures is even more troubling, as the allegations plausibly suggest an unconstitutional custom carried out by MPD officers of

DMNORTH #7551644 v1

Governor Tim Walz
Commissioner John Harrington
Colonel Matt Langer, State Patrol Chief
Commissioner Paul Schnell, Minnesota Department of Corrections
April 17, 2021
Page 2

targeting journalists for unlawful reprisals."). Further, as we discussed, on April 16, District Court Judge Wilhelmina M. Wright issued a temporary restraining order (TRO) enjoining all "agents, servants, employees, and representatives" of the Minnesota Department of Safety and the Minnesota State Patrol from committing violent and threatening acts against journalists, including:

(1) "arresting, threatening to arrest, or using physical force—including through use of flash bang grenades, non-lethal projectile, riot batons, or any other means. . .

(2) Requiring Journalists to disperse, or arresting Journalists for not dispersing;

(3) "using chemical agents" including pepper spray and tear gas; and

(4) "Seizing any photographic equipment, audio- or videorecording equipment, or press passes."

Yet as discussed on our call, reports from journalists on the ground indicate that over the last several days—and even last night after the TRO was in effect—law enforcement officers have engaged in widespread intimidation, violence, and other misconduct directed at journalists that have interfered with their ability to report on matters of intense public interest and concern. For example:

(1) New York Times Photojournalists Harassed on April 12

Two separate photojournalists on assignment for The New York Times were harassed by officers. In one instance, a Minneapolis State Patrol Captain recognized the photojournalist, rushed out of a police line, and grabbed him. The officer then pulled the journalist behind the police line where another officer held his hands behind his back and took his phone. When the journalist asked "why," the officer said: "Because that's our strategy right now."

That same night, a separate journalist was at the Brooklyn Center Police Department when an officer used a chemical irritant against a protestor next to the journalist. The officer then lunged forward and aimed the irritant directly at the journalist from a distance of approximately 4-5 feet. Fortunately the journalist was wearing a gas mask, but the irritant still burned a red ring around his face and damaged his camera.

(2) CNN Journalist Arrested on April 13

Carolyn Sung, an Asian-American CNN producer, was thrown to the ground and arrested by state troopers Tuesday night while trying to comply with a dispersal order. As Sung tried to

STATEDEF0000212

Governor Tim Walz
Commissioner John Harrington
Colonel Matt Langer, State Patrol Chief
Commissioner Paul Schnell, Minnesota Department of Corrections
April 17, 2021
Page 3

leave the area as directed, troopers grabbed Sung by her backpack and threw her to the ground, zip-tying her hands behind her back. Sung did not resist and repeatedly identified herself as a journalist working for CNN and showed her credentials. A male security agent hired by CNN to work with Sung was briefly detained, but quickly released upon showing his credentials. Despite repeatedly hearing Sung identify herself as a member of the press and tell the troopers that the zip ties were too tight on her wrists, one trooper yelled at Sung, "Do you speak English?" Sung, whose primary language is English, was placed in a prisoner-transport bus and sent to the Hennepin County Jail, where she was patted down and searched by a female officer who put her hands down Sung's pants and in her bra, fingerprinted, electronically body-scanned, and ordered to strip and put on an orange uniform before attorneys working on her behalf were able to locate her and secure her release, a process that took more than two hours.

(3) Summons Issued Against Journalist on April 13

That same night, a photojournalist in Brooklyn Center was tackled, put in restraints, and loaded into the back of a Minnesota State Police patrol vehicle. The photojournalist could hear on the car's radio an order that any journalists in custody were to be released, but the officer continued to detain him and issued a summons for an alleged "failure to obey a lawful order" pursuant to Minn. Stat. § 169.02.2, which makes it a misdemeanor to refuse to comply with a peace officer assigned to control traffic.

(4) New York Times Journalist and Others Assaulted on April 13

On April 13, while in a car with others, police officers surrounded the car, banging on the windows and doors with wooden sticks and yelling to get out. The driver of the car was dragged out and arrested; another photographer in the car was taken out and talked to. The New York Times journalist was repeatedly hit by officers while in the car, and the officers also tried to break his camera.

STATEDEF0000213

STATEDEF0000213          086342_0099

Governor Tim Walz
Commissioner John Harrington
Colonel Matt Langer, State Patrol Chief
Commissioner Paul Schnell, Minnesota Department of Corrections
April 17, 2021
Page 4

(5)  Additional use of Chemical Agents Against Journalists

As Colonel Langer noted on the call, there have been reports of chemical agents being used against journalists, including one image showing an unidentified law enforcement officer spraying chemical agents at two journalists—who are clearly identifiable as such by their clothing and equipment—at incredibly close range:



STATEDEF0000214

Governor Tim Walz
Commissioner John Harrington
Colonel Matt Langer, State Patrol Chief
Commissioner Paul Schnell, Minnesota Department of Corrections
April 17, 2021
Page 5

(6) <u>Additional use of Physical Force Against a Journalist</u>

Another local photojournalist reported being beaten by two law enforcement officers, even after he identified himself as a journalist.



(7) <u>Order to Disperse and Cataloging of Journalists on April 16</u>

Several reports from journalists on the ground in Brooklyn Center last night indicate that the activities of April 16 were particularly disturbing. According to one report, at approximately

STATEDEF0000215

STATEDEF0000215       086342_0099

Governor Tim Walz
Commissioner John Harrington
Colonel Matt Langer, State Patrol Chief
Commissioner Paul Schnell, Minnesota Department of Corrections
April 17, 2021
Page 6

9:30 p.m. officers outside the station began firing grenades with chemical gas and other projectiles and using pepper spray against protestors. Dozens of journalists were in the crowd.

At approximately 9:50 p.m., the Hennepin County Sheriff's Office reportedly ordered protestors to disperse to the North. Soon thereafter, police lines rushed from the South and West, pushing protestors North, at which point a separate line of officers approached from the North, kettling protestors and the dozens of journalists. Officers then ordered all individuals to lie on the ground, and told journalists they would be released after checking their credentials. Some journalists spent upwards of ten minutes lying face-down on the ground. As journalists were released, however, they ran into a separate line of officers just one block North. These officers ordered the journalists to line up for processing. Each journalist was then systematically told to lower their mask, present their press credentials and state identification (i.e., driver licenses), and be photographed.

You can view a video of the encounter at: https://youtu.be/PIRzKemQIc8. Here is an image captured by a Star Tribune journalist of the encounter:



STATEDEF0000216

Governor Tim Walz
Commissioner John Harrington
Colonel Matt Langer, State Patrol Chief
Commissioner Paul Schnell, Minnesota Department of Corrections
April 17, 2021
Page 7

Another journalist reported that the officers who "processed" at least some of these journalists wore no visible identifying information, aside from numbers on their helmets: 2300 and 2104, respectively. Another reported that several journalists present and detained in this manner were wearing the Minnesota Media credentials that law enforcement had asked journalists to wear to allow them to be easily identified.

The New York Times reporter who was assaulted on April 13, was again assaulted during this encounter. He was ordered to the ground, then told to stand, only to be ordered to "get back down." Another group of officers ran up on top of him and began hitting his camera. He suffered additional bruising on his legs and has lingering shoulder pain.

Whatever the intent behind this "cataloging" of journalist, it was deeply disturbing for those involved, and it has caused much fear regarding what use might be made of these photographs and accompanying identifying information in the future, including full names, dates of birth and home addresses. As a federal district court recently held in an analogous case where journalists' identifying information was collected by law enforcement, the gathering and retention of such records constitutes a First Amendment violation and an "injury-in-fact." *Guan v. Mayorkas*, 2021 U.S. Dist. LEXIS 61873, at *15-16 (E.D.N.Y. Mar. 30, 2021).

***

On today's call, the question was posed whether this type of tension between law enforcement and the media is commonplace these days, or whether Minnesota is a unique example. Certainly, we live in politically and socially tense times and that is true across the country. But the abuses perpetrated by law enforcement officers in the Twin Cities over the past several nights—and going back to last summer—are alarming and, yes, threaten to set this State apart. They also are clear violations of the First Amendment, and for those officers subject to the TRO, they are in direct violation of the TRO.

Pursuant to the assurances provided on today's call, we plan to instruct our journalists as follows:

(1) No journalists will be asked, or ordered, to stand for a photograph or to provide anything more than a press credential;

(2) Members of the press with press credentials who are not acting unlawfully will not be told to disperse;

STATEDEF0000217

Governor Tim Walz
Commissioner John Harrington
Colonel Matt Langer, State Patrol Chief
Commissioner Paul Schnell, Minnesota Department of Corrections
April 17, 2021
Page 8

(3) If members of the press are arrested as part of a mass arrest, they will be released as quickly as possible and allowed to continue reporting;

(4) The Minnesota State Patrol embraces the language of the TRO, and journalists can expect that those officers who are subject to the TRO to act in full compliance with the TRO; and

(5) No law enforcement officer will physically assault a member of the press, including by punching or pushing to the ground.

We appreciate your time and assistance in this matter. We want to assure you that the members of the media on the ground in Minnesota take their role in reporting on the events unfolding seriously. They understand the challenges you face in keeping the peace and they do not want to make your job harder. They are professionals who have no interest in "being a part of the story" themselves. All we ask is that law enforcement also act reasonably and in a manner consistent with the U.S. Constitution and judicial orders.

We look forward to working with you over the coming days and months to ensure that both law enforcement officers and the press are able to do their jobs effectively and that these abuses are not repeated.

DMNORTH #7551644 v1

STATEDEF0000218

Governor Tim Walz
Commissioner John Harrington
Colonel Matt Langer, State Patrol Chief
Commissioner Paul Schnell, Minnesota Department of Corrections
April 17, 2021
Page 9


Sincerely,

*s/Leita Walker*

Leita Walker, writing on behalf of:

| | |
|---|---|
| American Public Media Group (which owns Minnesota Public Radio); | Minnesota Coalition on Government Information; |
| The Associated Press; | National Press Photographers Association; |
| BuzzFeed, Inc.; | NBC News |
| Cable News Network, Inc.; | The New York Times Company; |
| CBS Broadcasting Inc. (on behalf of WCCO-TV and CBS News); | The News Leaders Association; |
| Committee to Protect Journalists; | Radio Television Digital News Association |
| Court TV Media LLC; | Reporters Committee for Freedom of the Press; |
| Dow Jones & Company (which publishes *The Wall Street Journal*); | Reuters; |
| Fox/UTV Holdings, LLC (which owns KSMP-TV); | The Silha Center for the Study of Media Ethics and Law; |
| Gannett Co., Inc./USA Today Network; | Society of Professional Journalists |
| Institute for Nonprofit News; | Star Tribune Media Company LLC; |
| Media Convergence Group, Inc., d/b/a Newsy; | TEGNA Inc. (which owns KARE-TV); |
| | Twin Cities Public Television; |
| | The Washington Post |


Cc: Teddy Tschann


DMNORTH #7551644 v1

STATEDEF0000219

# Exhibit 2

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| Jared Goyette, Craig Lassig, Michael Shum, Katie Nelson, Tannen Maury, Stephen Maturen, and The Communications Workers of America, *On behalf of themselves and other similarly situated individuals*, | Court File No.  20-CV-01302 (WMW/DTS) |
| Plaintiff, | **RESPONSE TO PLAINTIFFS' EXPEDITED DISCOVERY REQUESTS TO STATE DEFENDANTS (SET 1)** |
| vs. | |
| City of Minneapolis, et al. | |
| Defendants. | |

TO:    PLAINTIFFS through their counsel Kevin C. Riach, Fredrikson & Byron, P.A., 200 South Sixth Street, Suite 4000, Minneapolis, Minnesota, 55402-1425.

Defendants Minnesota Department of Public Safety Commissioner John Harrington and Minnesota State Patrol Colonel Matthew Langer, in their official and individual capacities ("State Defendants") provide the following answers to Plaintiffs' Expedited Discovery Requests to State Defendants (Set I):

**GENERAL OBJECTIONS**

All answers are made without in any way waiving or intending to waive but, on the contrary, intending to preserve and preserving:

1.    All questions as to competency, relevance, materiality, privilege, scope, and admissibility of evidence for any purpose in any subsequent proceeding or the trial of this or any other action.

2.     The right to object to the use of any of the answers or the subject matter thereof in any subsequent proceeding or the trial of this or any other action on any grounds.

3.     The right to supplement and/or amend these answers as State Defendants' investigation, discovery and preparation for trial continues.

4.     State Defendants object generally to each request herein to the extent that it seeks discovery of:

a.     Information or documents that are protected by the Minnesota Government Data Practices Act, except as a suitable protective order is entered;

b.     Information or documents subject to the attorney/client privilege, the legislative privilege, the public officer privilege of Minn. Stat. Ch. 595, the inter-governmental memoranda or agency deliberative privileges developed at common law, or any other privilege;

c.     Information or documents constituting the work product of State Defendants or its attorneys;

d.     Information generated or documents prepared in anticipation of litigation or for trial by or for State Defendants or its representatives;

e.     Information or documents not in the possession or control of State Defendants or not generated or obtained by State Defendants in the regular course of business;

f.     Information or documents generated or obtained after the date on which Plaintiffs' alleged claim arose;

5.     State Defendants object to, and do not accept Plaintiffs' instructions to the extent that they seek to impose duties upon State Defendants that exceed the requirements of the Federal Rules of Civil Procedure.  State Defendants' responses assume that words used in the interrogatories have their ordinary and customary meanings without regard to any special meanings assigned to them by the Plaintiffs.

6.     State Defendants object to Plaintiffs' interrogatories to the extent that they seek to impose upon State Defendants duties not imposed by the Federal Rules of Civil Procedure.

7.     State Defendants state that they do not and will not waive any of its general or particular objections in the event it may furnish materials or information coming within the scope of any such objections.

## ANSWERS AND SPECIFIC OBJECTIONS

In addition to making the foregoing general objections, all of which are preserved, State Defendants respond particularly to Plaintiffs' First Set of Expedited Discovery Requests, as follows:

## EXPEDITED INTERROGATORIES

**INTERROGATORY NO. 1:**     Describe in detail any actions You took to apply, implement, or otherwise operationalize the TRO, including describing how and when the existence and/or terms of the TRO were communicated to Public Safety Commissioner John Harrington, Minnesota State Patrol Colonel Matthew Langer, Your command and supervisory personnel, Your officers and other employees, agents, or representatives, and to other law enforcement agencies, including but not limited to those law enforcement agencies participating in Operation Safety Net.

**ANSWER:**  State Defendants object to this Interrogatory to the extent is seeks information protected from disclosure by the work-product and attorney-client privilege doctrines.  State Defendants further object to the extent this Interrogatory assumes that State Defendants have authority over Operation Safety Net or are in any way responsible for the conduct of other law enforcement agencies.  The TRO was issued as to State Defendants only.  Subject to these objections, and pursuant to Federal Rule of Civil Procedure 33(d), State Defendants refer Plaintiffs to the documents bates labeled STATEDEF0000001-90.

In addition, State Defendants state that the TRO was filed and served on April 16, 2021, at 8:28 P.M.  State Defendants were made aware of this TRO via email sent at 9:05 P.M., and a meeting was thereafter convened at 10:30 P.M. to discuss the TRO, what it meant, and how to effectively communicate the TRO's requirements to staff.  This meeting was attended by various representatives of State Defendants, Colonel Langer, as well as

3

the attorneys for State Defendants. An email communication was thereafter crafted and circulated to Minnesota State Patrol ("MSP") lieutenants, around midnight, providing a summary and guidance on its meaning.

The following morning, April 17, 2021, email communication was provided to MSP Captains and above, alerting them of the TRO (which was attached) and providing a summary and stating that an email would be going out to all troopers later that day. In the early afternoon, an email communication was sent to all MSP Troopers, explaining the TRO and attaching a copy. Meetings were thereafter held that afternoon wherein the TRO requirements were discussed, both with MSP leadership, as well as all MSP troopers. Finally, several representatives of State Defendants worked diligently on the afternoon of April 17 to circulate the TRO to other law enforcement partners, both via telephone and email. This included contacts with the following agencies not bound by the TRO: Hennepin County, Anoka County, Ramsey County, the Department of Natural Resources, the Minnesota National Guard, the League of Minnesota Cities, the Governor's Office, the Minnesota Sheriffs' Association, and the Minnesota Chief of Police Association. State Defendants also issued a press release which addressed the TRO and the TRO's requirements.

**INTERROGATORY NO. 2:**     Identify every agency participating in Operation Safety Net.

**ANSWER:** Subject to the above general objections, and pursuant to Federal Rule of Civil Procedure 33(d), State Defendants refer Plaintiffs to the Operation Safety Net ("OSN") website, wherein detailed information is given about OSN. https://safetynet.mn.gov/Pages/default.aspx

State Defendants further state that the following agencies are formally listed a part of OSN: Hennepin County Sheriff, Metro Transit Police, Minneapolis Police, Minnesota Department of Natural Resources, Minnesota Homeland Security and Emergency Management, Minnesota National Guard, Minnesota State Patrol, Ramsey County Sheriff, and the St. Paul Police.

**INTERROGATORY NO. 3:**     Identify by first and last name the State Trooper with badge number 2300.

**ANSWER:**   Subject to above general objections, State Defendants state: Captain Casey Meagher.

**INTERROGATORY NO. 4:**     Identify by first and last name, badge number, and agency affiliation the law enforcement officers pictured in the photographs attached as Attachment 1.

4

**ANSWER:** State Defendants object to this Interrogatory as lacking foundation because the second photograph shown in Attachment 1 does not display an agent or employee of State Defendants. State Defendants therefore lack knowledge regarding who is shown in the second photograph. Subject to these objections, State Defendants state that the Minnesota State Patrol employees shown in the first photograph in Attachment 1 are Lieutenant Kelly Mager (#595) and Lieutenant Brian Buck (#13).

**INTERROGATORY NO. 5:** Describe the purpose of State Defendants' actions on April 16, 2021 and April 17, 2021 in photographing the faces and press credentials of journalists, including specifically describing how the photographs or other data collected is currently or will be maintained and used.

**ANSWER:** State Defendants object to the extent that this Interrogatory seeks active criminal investigative data, which is protected nonpublic data under the Minnesota Government Data Practices Act, Minn. Stat. § 13.82, subd. 7, or driver's license data. Minn. Stat. § 171.12; 18 C.F.R. 2721. State Defendants further object that this Interrogatory address three separate topics. State Defendants therefore construe this Interrogatory as three separate interrogatories. Subject to these objections, and pursuant to Federal Rule of Civil Procedure 33(d), State Defendants refer Plaintiffs to the documents bates labeled STATEDEF0000091-202.

State Defendants also state that MSP's Operational Reinforcement Team ("ORT") took photographs of persons claiming to be members of the media only after general dispersal orders were given by another law enforcement agency on the evening of April 16, 2021. These photographs were taken of individuals who remained in an active contained arrest area, after the dispersal orders were given, to gather information that could later be confirmed regarding the media status of these photographed individuals. These individuals were released to continue their coverage after this evidence was gathered. This procedure allowed members of the media to be detained for the shortest amount of time possible. The gathered evidence allowed subsequent confirmation of media status after release.

After receiving complaints and assurance that media would be identified with clear passes/badges/clothing, no further photographs were taken of persons claiming to be media for confirmation purposes. Any photographs taken are stored in MSP's Intrepid record keeping system. There is no current plan for this data to be used in the future.

**INTERROGATORY NO. 6:** Describe any communications between journalists covering the Derek Chauvin trial and State Defendants concerning the use of standardized press credentials, press registrations or other visible markings of media status. Your answer should include a description of any concerns raised by journalists, including

but not limited to concerns that identifying as a journalist may subject a journalist to targeting, retaliation, harassment or other abuse by State Defendants.

**ANSWER:** State Defendants object to this Interrogatory as unduly burdensome because it seeks "any communications," without any time limitation whatsoever, on an expedited basis.  Discovery is ongoing and will be supplemented as required by the Federal Rules of Civil Procedure.  State Defendants also object to this Interrogatory as it seeks information equally accessible to Plaintiffs or the yet-uncertified class members Plaintiffs claim to represent. Subject to these objections, State Defendants State Defendants have had numerous contacts with members of the media and media organization since the death of George Floyd to develop and implement and standardized credentialing process.  This process is to ensure the safety of media by making media readily identifiable.  Such contacts are described below:

- Lieutenant Gordon Shank, Public Information Officer for MSP, and Bruce Gordon, Director of Communications, participated in a conversation with representatives of the media related to covering topics at the Capitol during potential events at a currently unknown date and time.  Discovery continues.

- Mr. Gordon and DPS General Counsel Sydnee Woods met with the Star Tribune General Counsel and Managing Editor sometime in August 2020.  No further details are known at this time.  Discovery continues.

- Mr. Gordon had a meeting with the Minnesota Broadcaster and Newspaper Associations (includes Directors and Management) on January 14, 2021, at 2:00 P.M.  During this meeting, they talked about expectations and opened-up the floor for questions.  Mr. Gordon recognized the First Amendment rights of press to be in the area of protest activity but instructed that lawful dispersion orders apply to everyone (including media). Mr. Gordon also made clear that if media members are inadvertently arrested, they would be released once credentials are verified.  In order to address media safety, a credentialing plan was discussed and implemented by the Minnesota Broadcaster and Newspaper Associations, wherein a credential was designed that could be downloaded and laminated for use. During the meeting, it was discussed that perhaps a different color credential would be used every year for all events going forward to aid in media identification and protection. The Associations shared that they were telling their members <u>not</u> to openly show credentials (with credentials clearly shown via lanyard around their neck) because of a fear of violence from protestors.   The Associations shared that if arrested/detailed, they were going to hold up the credential in their right hand.

- Mr. Gordon had another meeting with the Minnesota Broadcaster and Newspaper Associations on April 8, 2021, also attended by Captain Joseph Dwyer, and

Minneapolis Police Chief Medaria Arradondo.  During this meeting, media was instructed that dispersal orders applied to everyone (including media), but that members of the media inadvertently arrested would be released once identified and their credentials confirmed.  A safe credential process was again discussed, with the safety of reporters being stressed.  The Associations may again have shared that they were telling their members <u>not</u> to openly show credentials, but if arrested/detailed, to hold up the credential in their right hand.

- Colonel Langer and Mr. Gordon met with Star Tribune General Counsel and Managing Editor (Randy Lebedoff, Suki Dardarian) on April 14, 2021, at 2:30 P.M. to discuss developing media issues in Brooklyn Center.  Questions were answered and a discussion of pertinent concerns occurred.  The issue regarding the media's hesitance to openly identify as media (because of safety threat from protestors) was again raised and discussed.

In addition, State Defendants state that OSN has held various news conferences attended by representatives of State Defendants, during which various categories of helpful information was provided to the press.  These new conferences were video recorded and are available on YouTube at https://www.youtube.com/c/MinnesotaOSN/videos (last viewed Apr. 19, 2021).  State Defendants are also aware of other meetings, at which State Defendants were not present, between the press and other members of OSN, addressing issues pertaining to the media.

**INTERROGATORY NO. 7:**   Identify and describe in detail all complaints between May 1, 2020 and the present regarding interactions with journalists. Details should include the factual basis for the complaint (including identifying personnel involved), the date of alleged incident, whether the complaint was sustained, whether the complaint resulted in coaching or discipline, and a description of the coaching or discipline if any.

**ANSWER:**   State Defendants object to this Interrogatory because the term "complaints" is vague.   State Defendants construe this Interrogatory to request information on complaints by journalists submitted to the Department of Public Safety Internal Affairs Division for an investigation.  State Defendants further object to the extent this Interrogatory seeks private personnel data.  Minn. Stat. § 13.43.  Subject to these objections, State Defendants state that the following four complaints have been made as follows:

1. **IAD Complaint #20-14**.  The Complaint alleges an unlawful arrest and booking of a media crew member based on race.  This individual was not with members of the media at the time of this arrest.  This Complaint is closed with no discipline issues.

**The remainder of this Interrogatory response is also marked ATTORNEY'S EYES ONLY pursuant to the Protective Order.**

2. **IAD Complaint #20-16**.  This Complaint alleges that a member of the media was targeted by police during protests/civil unrest, shot at with rubber bullets, threaten with mace, and threatened with arrest. The investigation into this Complaint is still open. *See* Minn. Stat. § 13.39

3. **IAD Complaint #20-25**.  This Complaint alleges that projectiles and tear gas were fired at members of the press during civil unrest. The investigation into this Complaint is still open. *See* Minn. Stat. § 13.39

4. A new Complaint was filed on April 19, 2021, and is not yet assigned a Complaint number.  The Complaint claims the wrongful arrest of a journalist.  The investigation into this Complaint is still open. *See* Minn. Stat. § 13.39

## EXPEDITED REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:** Any and all training materials, policies and procedures, instructions, or similar documents used between May 1, 2020 and the present concerning interactions with journalists, compliance with the First Amendment, or any similar topic.

**RESPONSE:**     State Defendants object to this Document Request as vague and as seeking attorney work-product and attorney-client privileged communications. Subject to these objections, *see* documents bates labeled STATEDEF0000204-208. Discovery continues.

**REQUEST NO. 1:** Any and all documents relating to or referenced in your answers to the Expedited Interrogatories.

**RESPONSE:**     State Defendants object to this Request to the extent it seeks active criminal or civil investigative data, which is protected nonpublic data under the Minnesota Government Data Practices Act, Minn. Stat. § 13.39, subd. 2; Minn. Stat. § 13.82, subd. 7.  Such documents (*i.e.*, active complaint files) are being withheld.  State Defendants also object to this Request to the extent it seeks private personnel data, Minn. Stat. § 13.43, private/non-public security information, Minn. Stat. § 13.37, subd. 1(a), or driver's license data, Minn. Stat. § 171.12, subd. 7, 18 U.S.C. § 2721, which will be marked as **CONFIDENTIAL** pursuant to the Court's Protective Order.  Subject to these objections, *see* documents bates labeled STATEDEF0000001- STATEDEF0000208.

8

I DECLARE UNDER PENALTY OF PERJURY THAT EVERYTHING I HAVE STATED IN THIS DOCUMENT IS TRUE AND CORRECT.

DEFENDANT MINNESOTA STATE PATROL

By: _____

Rochelle Schrofer
Lieutenant Colonel

Dated:  April 22, 2021

County of Ramsey, State of Minnesota

I DECLARE UNDER PENALTY OF PERJURY THAT EVERYTHING I HAVE STATED IN THIS DOCUMENT IS TRUE AND CORRECT.

DEFENDANT MINNESOTA DEPARTMENT OF PUBLIC SAFETY

_____

By:_____
John M. Harrington
Commissioner

Dated:  April 22, 2021

County of Ramsey, State of Minnesota

AS TO OBJECTIONS ONLY:

Dated:  April 22, 2021_____KEITH ELLISON
Attorney General
State of Minnesota

s/Kathryn Iverson Landrum
KATHRYN IVERSON LANDRUM
Assistant Attorney General
Atty. Reg. No. 0389424

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 757-1189 (Voice)
kathryn.landrum@ag.state.mn.us

ATTORNEY FOR DEFENDANTS MINNESOTA DEPARTMENT OF PUBLIC SAFETY COMMISSIONER JOHN HARRINGTON AND MINNESOTA STATE PATROL COLONEL MATTHEW LANGER, *IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES*

10

I DECLARE UNDER PENALTY OF PERJURY THAT EVERYTHING I HAVE STATED IN THIS DOCUMENT IS TRUE AND CORRECT.

DEFENDANT MINNESOTA DEPARTMENT OF PUBLIC SAFETY

By:_____
[Name]
[Title]

Dated:  April 22, 2021

County of Ramsey, State of Minnesota

AS TO OBJECTIONS ONLY:

Dated:  April 22, 2021

KEITH ELLISON
Attorney General
State of Minnesota

s/Kathryn Iverson Landrum_____
KATHRYN IVERSON LANDRUM
Assistant Attorney General
Atty. Reg. No. 0389424

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 757-1189 (Voice)
kathryn.landrum@ag.state.mn.us

ATTORNEY FOR DEFENDANTS MINNESOTA DEPARTMENT OF PUBLIC SAFETY COMMISSIONER JOHN HARRINGTON AND MINNESOTA STATE PATROL COLONEL MATTHEW LANGER, *IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES*

|#4950701-v2

# Exhibit 3

# GENERAL ORDER

| Effective: | March 9, 2021 | | Number: 21-10-013 HRLFNDT |
|---|---|---|---|
| Subject: | **FIRST AMENDMENT ASSEMBLIES; STRIKES AND INDUSTRIAL/LABOR DISPUTES; SIGNS AND BANNERS ON HIGHWAY** | | |
| Reference: | GO 25-014; Minn. Stat. secs. 160.2715; 179.01, subd. 7; 179.121; 299D.03, subd. 1(8); 609.74 | | |
| Special Instructions: | Rescinds GO 19-10-013 | | Distribution: A,B,C, N |

## I. PURPOSE

The purpose of this General Order is to provide guidance to members regarding protests, demonstrations, rallies, hereafter referred to as "First Amendment assemblies," and strikes and/or industrial/labor disputes.

## II. GUIDING PRINCIPLES

A. The Minnesota State Patrol (MSP) respects the rights of people to peacefully assemble and express their ideas and will not unreasonably interfere with those engaged in the lawful exercise of their First Amendment rights.

B. MSP respects the rights of the media to cover First Amendment activity and shall never intentionally target them for dispersal or enforcement action based on their media status.

C. Behavior during a demonstration or assembly can be dynamic and vary from lawful actions to criminal behavior. As such, MSP responses shall be measured and appropriate for the situation.

D. The purpose of MSP presence at any First Amendment assembly is to preserve peace, protect public safety, provide traffic safety service, and prevent the destruction of property.

E. Arrests should be made only when necessary, after considering a totality of the circumstances, respecting the First Amendment rights of an individual, and to protect life/property.

F. First Amendment assemblies closing controlled access road systems present inherent danger to those illegally on the roadway, the motoring public who are required to react to the abrupt and unplanned closure, and our members who need to respond to safely handle any event and reopen the roadway.

G. MSP operates within the statutory jurisdiction established by Minn. Stat. Sec. 299D.03.

   1. Minn. Stat. sec. 299D.03, Subd. 1(8), states that while MSP is authorized to cooperate with local law enforcement, it "..shall have no power or authority in connection with strikes or industrial disputes." MSP not only cannot be involved, but has no power to assist local enforcement off a trunk highway for these purposes.

   2. MSP retains the power and responsibility to enforce laws and direct and control traffic on any highway in the event a strike takes place on any trunk highway or within the normal jurisdiction of the State Patrol. MSP will enforce laws protecting the public, and proactively work to keep trunk highways open to traffic, to the best of our abilities.

## III. DEFINITIONS

A. **MSP Statutory Jurisdiction**

   For purposes of this General Order, MSP statutory jurisdiction means the power and authority vested in members pursuant to Minn. Stat. sec. 299D.03, which includes, but is not limited to, enforcing provisions of the law relating to the protection and use of trunk highways, and as peace officers to provide security and protection to the governor and other state employees, state buildings, and for certain state property. Minn. Stat. 299D.03 specifically states that members do not have any power or authority in connection with strikes or industrial disputes.

B. **Industrial Dispute**

   For purposes of this General Order, "industrial dispute" under Minn. Stat. sec. 299D.03, subd. 1(b)(8) means "labor dispute" as defined in Minn. Stat. sec. 179.01, subd. 7. It is defined as any controversy concerning employment, tenure, or conditions or terms of employment or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms, tenure, or other conditions of employment, regardless of whether or not the relationship of employer and employee exists as to the disputants.

STATEDEF0000204

STATEDEF0000204        086342_0099

C.   Strike
  The temporary stoppage of work by the concerted action of two or more employees as a result of an industrial/labor dispute. Minn. Stat. 179.01, subd. 8.

D.   Clear Notice
  Clear notice that an industrial/labor dispute is in progress would exist where an "on strike" sign is exhibited in a manner which permits drivers of vehicles entering the establishment to see it.

E.   Mobile Response Team (MRT)
  A specialized team of troopers and supervisors organized and implemented as described on General Order 25-014.

## IV. FIRST AMENDMENT ASSEMBLIES

A.   For preplanned events under MSP statutory jurisdiction, the District/Section Commander or designee shall develop an operational plan based on information obtained in a transparent and lawful manner. The plan should be communicated to and followed by involved members, and include consultation with the MRT Commander if the MRT is involved. The plan, at a minimum, should include:

   a.   General Information such as: Information about the event and groups involved, date, time, location, weather, agency contact information and assignments, allied agency contact information, etc.

   b.   Operational Information such as: Briefings, roles and responsibilities, equipment, uniforms, staging, radio communications, resource deployment plan, dispersal order information with consideration to the applicable laws/elements, etc.

B.   If the event is unplanned, the first responding trooper or security officer should conduct an assessment of conditions and communicate them to dispatch for assignment of a supervisor and to facilitate MSP response. The assessment should include, but is not limited to, the following:

   • Location of the event
   • Number of participants
   • Purpose of the event
   • Event leadership (whether apparent/effective), and any communication with leaders regarding intent/plans
   • Any indicators of unlawful activity or impact on lawful use of walkways, roadways, or public buildings
   • Any predicted ability/need to continue monitoring

C.   Communications and coordination with allied agencies should be established and mutual support arranged for when practicable.

D.   Requests for additional resources shall be made through chain of command. Consideration should be given toward activation of the MRT, pursuant to General Order 25-014.

E.   A command structure should be implemented, consistent with training and the operational plan developed for each event.

F.   Assisting Other Agencies

   1.   First Amendment assemblies occurring outside of the MSP's statutory jurisdiction are to be addressed primarily by local law enforcement. Involvement of the MSP may only occur if the local agency has requested its assistance, when local efforts are insufficient to control the situation, or immediately in the event another peace officer's life or safety is in jeopardy.

   2.   Any pre-planned request for MSP resources to assist with First Amendment assemblies outside MSP statutory jurisdiction shall be vetted through chain of command to the district/section commander. District/section commanders shall coordinate effectively with the lead local agency and communicate any MSP involvement to the appropriate regional major.

   3.   Prior to a formal request for help, district/section commanders may assign a limited number of troopers to be inconspicuously available in the general vicinity of an anticipated disturbance or foreseeable trouble. These troopers are not to be involved in the disturbance without authorization from the district/section commander or supervisor, except as necessary to prevent death or injury to another peace officer.

## V.  LABOR STRIKES AND INDUSTRIAL DISPUTES

A.  Minn. Stat. sec. 299D.03, subd. 1(8), grants MSP the power and authority "to cooperate, under instructions and regulations of the Commissioner of the Department of Public Safety, with all sheriffs and other police officers anywhere in the state, provided that said employees shall have no power or authority in connection with strikes or industrial disputes."

B.  When a member of the MSP is made aware of a strike or industrial/labor dispute in their work area, they shall immediately notify their district/section commander of the dispute/strike. The district/section commander shall contact the sheriff or chief of police and advise them of the MSP's abilities and legal limitations restricting the involvement of troopers in any strike or industrial/labor dispute.

C.  Jurisdiction may be established when a person or persons involved in an industrial/labor dispute imminently threaten the safety of persons or traffic. In such cases, such information shall be communicated through the chain of command and a plan developed, including dispersal orders when appropriate.

D.  Minn. Stat. sec. 179.121 states that any person who operates a motor vehicle which is entering or leaving a place of business or employment where there is a clear notice that an industrial/labor dispute is in progress, and who fails to fully stop at the entrance or exit, or who fails to exercise caution in entering or leaving that place, is guilty of a misdemeanor. For purposes of this statute, if not otherwise marked, the point of entrance or exit should be regarded as the general area where the private property abuts the right-of-way. Further, no enforcement action should be taken if there is clear notice, but there are no persons on foot in the immediate area.

E.  MSP will not attempt to prohibit picketing or peaceful demonstrations unless a court order is violated.

F.  Regardless of clear notice, all drivers must still exercise reasonable caution in the presence of pickets or other persons at any location in the general area, whether they are on public property or private property.

G.  In those instances where other related offenses are committed which endanger persons or property, the offender is to be cited or arrested for the appropriate charge. Consideration shall be given to MSP's area of statutory jurisdiction with the arrest being turned over to the local agency with primary jurisdiction.

H.  Local law enforcement agencies may request our help in handling local police service so that their officers can handle the strike situation. Troopers must have the ready ability to communicate by radio with the requesting agency's dispatch center.

  1.  Requests of this type should be routed from the chief local enforcement officer through the district/section commander to the Chief of MSP. If the request is granted, troopers may respond to calls for service as requested by the local agency.

  2.  Extreme caution should be used in dealing with calls of a nature not normally handled by MSP.

## VI. SIGNS AND BANNERS AND HIGHWAY RIGHT OF WAY

A.  Minn. Stat. sec. 160.2715 states that, except for certain road authorities, it is unlawful to maintain, paint, print, place, or affix any advertisement or any object within the limits of any highway, and any violation of this provision constitutes a misdemeanor

B.  A person is permitted to hold a sign in a location that is legal for a pedestrian to walk or stand. A sign, however, may not be placed into the ground or onto the ground without a person holding it, nor can it be placed by or affixed/attached to a fence, post, bridge or any structure. If the person is using the fence, bridge or other structure as support for the sign, it should be considered a violation since the structure is partially holding the sign in place.

C.  The holding or waving of signs and other distracting behavior upon the highway may be considered a public nuisance crime if the behavior is substantial enough to outweigh the protection of free speech. Factors to consider include the number of people involved, the specific behaviors exhibited, the location, and the number of motor vehicle travelers on the roadway affected. The content of the signs is not relevant in this determination.

STATEDEF0000206

21-10-013
Page 4 of 4

## VI. ARRESTS

A. Troopers and supervisors should respond to unlawful behavior according to the operational plan for pre-planned events or under the direction of supervisors for unplanned events. If practicable, this would include appropriate dispersal warnings and advisements and a reasonable response to any resistance encountered before any arrest.

B. Mass arrests should only be employed when alternative strategies appear futile or are unsuccessful and resources are available to successfully accomplish them. Resources must be present to arrest, document, contain, and transport anyone taken into custody. Mass arrests shall only be undertaken upon the order of the Incident Commander or designee. There must be probable cause for each arrest, with respect to the elements of each criminal charge.

C. If employed, mass arrest procedures should integrate reasonable measures designed to keep the arrestee and Trooper safe and to make sure they occur in an efficient manner.

## VII. REPORTS

A. For any involvement under this policy, Troopers shall complete and submit a detailed field report documenting their activities. A supervisory report shall also be completed to document the event details related to time, place and manner, which led to our agency's involvement.

B. After any large scale, high profile, or complicated event covered under this policy, the Chief may call for an after-action debrief to provide a forum for discussion centered on applying any lessons learned to future similar situations.

Approved:

SIGNED 3/9/2021

_____

**Colonel Matthew Langer, Chief**
**Minnesota State Patrol**

# Exhibit 5

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| Jared Goyette, Craig Lassig, Michael Shum, Katie Nelson, Tannen Maury, Stephen Maturen, and The Communications Workers of America, *On behalf of themselves and other similarly situated individuals*, | Court File No.  20-CV-01302 (WMW/DTS) |
| Plaintiff, | **RESPONSE TO PLAINTIFFS' EXPEDITED DISCOVERY REQUESTS TO STATE DEFENDANTS (SET 2)** |
| vs. | |
| City of Minneapolis, et al. | |
| Defendants. | |

TO:    PLAINTIFFS through their counsel Kevin C. Riach, Fredrikson & Byron, P.A., 200 South Sixth Street, Suite 4000, Minneapolis, Minnesota, 55402-1425.

Defendants Minnesota Department of Public Safety Commissioner John Harrington and Minnesota State Patrol Colonel Matthew Langer, in their official and individual capacities ("State Defendants") provide the following answers to Plaintiffs' Expedited Discovery Requests to State Defendants (Set 2):

**GENERAL OBJECTIONS**

All answers are made without in any way waiving or intending to waive but, on the contrary, intending to preserve and preserving:

1.      All questions as to competency, relevance, materiality, privilege, scope, and admissibility of evidence for any purpose in any subsequent proceeding or the trial of this or any other action.

2.    The right to object to the use of any of the answers or the subject matter thereof in any subsequent proceeding or the trial of this or any other action on any grounds.

3.    The right to supplement and/or amend these answers as State Defendants' investigation, discovery and preparation for trial continues.

4.    State Defendants object generally to each request herein to the extent that it seeks discovery of:

a.    Information or documents that are protected by the Minnesota Government Data Practices Act, except as a suitable protective order is entered;

b.    Information or documents subject to the attorney/client privilege, the legislative privilege, the public officer privilege of Minn. Stat. Ch. 595, the inter-governmental memoranda or agency deliberative privileges developed at common law, or any other privilege;

c.    Information or documents constituting the work product of State Defendants or its attorneys;

d.    Information generated or documents prepared in anticipation of litigation or for trial by or for State Defendants or its representatives;

e.    Information or documents not in the possession or control of State Defendants or not generated or obtained by State Defendants in the regular course of business;

f.    Information or documents generated or obtained after the date on which Plaintiffs' alleged claim arose;

5.    State Defendants object to, and do not accept Plaintiffs' instructions to the extent that they seek to impose duties upon State Defendants that exceed the requirements of the Federal Rules of Civil Procedure.  State Defendants' responses assume that words used in the interrogatories have their ordinary and customary meanings without regard to any special meanings assigned to them by the Plaintiffs.

6.      State Defendants object to Plaintiffs' interrogatories to the extent that they seek to impose upon State Defendants duties not imposed by the Federal Rules of Civil Procedure.

7.      State Defendants state that they do not and will not waive any of its general or particular objections in the event it may furnish materials or information coming within the scope of any such objections.

## ANSWERS AND SPECIFIC OBJECTIONS

In addition to making the foregoing general objections, all of which are preserved, State Defendants respond particularly to Plaintiffs' Second Set of Expedited Discovery Requests, as follows:

## __EXPEDITED INTERROGATORIES (Set 2)__

**__INTERROGATORY NO. 1:__**      Identify all communications, whether oral or in writing, between You and any member, representative, or attorney of the Media Coalition concerning the First Amendment, journalists' role in covering protest activity, identification of journalists, alleged or actual incidents of violence, retaliation, harassment or mistreatment of journalists, law enforcement interactions with journalists, the TRO, or similar topics.

**ANSWER:**   State Defendants object to this Interrogatory as unduly burdensome because it seeks "all communications," without any time limitation whatsoever, and on an expedited basis.  Discovery is ongoing and will be supplemented as required by the Federal Rules of Civil Procedure.  State Defendants also object to this Interrogatory as it seeks information equally accessible to Plaintiffs or the yet-uncertified class members Plaintiffs claim to represent.   State Defendants also object to this Interrogatory as seeking information protected from disclosure by the work-product and attorney-client privilege doctrines.  State Defendants also object to this Interrogatory as vague, given that the Media Coalition has numerous individual members who may have spoken to representatives of State Defendants in the past on various topics.  State Defendants construe this Interrogatory to be limited to communications between the Media Coalition as represented by Leita Walker.

Subject to these Objections, and pursuant to Federal Rule of Civil Procedure 33(d), State Defendants refer Plaintiffs to documents bates labeled STATEDEF0000209-219.

State Defendants further state that on April 17, 2021, the Governor, the Commissioners of the Departments of Public Safety and Corrections, and Colonel Matthew Langer, met with Leita Walker and various representatives of the media via video conference to discuss the treatment of media by law enforcement during the unrest that erupted after the death of Daunte Wright. Since that time, additional discussions have occurred regarding a mediated process for addressing the concerns raised during this meeting and developing best practices for moving forward.

**INTERROGATORY NO. 2:**     Identify any false statement made by any person to You or any Operation Safety Net law enforcement personnel that the person was a journalist. This Interrogatory is limited to documents concerning such statements made during protests since May 26, 2020.

**ANSWER:** State Defendants object to this Interrogatory as seeking information (of which they do not have personal knowledge) from "Operation Safety Net law enforcement personnel," who are not employees or agents of State Defendants. State Defendants construe this Interrogatory as seeking information from State Defendants alone. State Defendants also object to this Interrogatory as vague regarding the limitation to "documents concerning such statements," and because false statements made by unknown and unidentified persons cannot be definitively proven true or false. State Defendants also object to this Interrogatory as unduly burdensome as the information pertaining to recent and ongoing events in Brooklyn Center cannot possibly be provided on an expedited basis. Discovery is ongoing and will be supplemented as required by the Federal Rules of Civil Procedure.

Subject to these Objections, and pursuant to Federal Rule of Civil Procedure 33(d), State Defendants refer Plaintiffs to documents bates labeled STATEDEF0000220-254. State Defendants further state that during the recent unrest that took place in Brooklyn Center, Minnesota, numerous individuals claimed to be members of the press, but lacked any obvious visual indication of press status (such as a press credential, press badge, large media equipment, or press clothing). Such unverified persons claiming media status were not typically detained or photographed, leaving no avenue for future confirmation of media status. Indeed, there is no reason for troopers to log such incidents. A few individuals, however, were documented as falsely claiming press status.

One example of an individual falsely claiming to be press occurred on April 12, 2021. A male was observed with a lanyard around his neck that had a document inside of it. The document stated "Press + Protestor." This lanyard appeared homemade. On April 16, 2021, several additional individuals with the same type of lanyard were observed.

It is important to note that the issue of persons claiming non-mainstream media status during times of unrest is not uncommon as a way to avoid criminal charges and/or

arrest.   *See*   https://abcnews.go.com/Politics/wireStory/jan-defendants-journalism-riot-defense-77147931 (last viewed Apr. 23, 2021)

## EXPEDITED REQUESTS FOR PRODUCTION OF DOCUMENTS (Set 2)

**REQUEST NO. 1:** Any and all documents, including but not limited audio or video recordings, evidencing, demonstrating or relating to any incident in which any person made a false claim to You, or any Operation Safety Net law enforcement agency personnel that the person was a journalist. This Request is limited to documents concerning such statements made during protests since May 26, 2020.

**RESPONSE:**     State Defendants object to this Document Request as seeking documents (of which they do not have custody or control) from "Operation Safety Net law enforcement agency personnel," who are not employees or agents of State Defendants. State Defendants construe this Document Request as seeking documents from State Defendants alone.  State Defendants also object to the extent that this Document Request seeks active criminal investigative data, which is protected nonpublic data under the Minnesota Government Data Practices Act, Minn. Stat. § 13.82, subd. 7.  Such documents will be marked **ATTORNEY'S EYES ONLY** pursuant to the Court's protective order. State Defendants also object to extent this Request seek driver's license data.  Minn. Stat. § 171.12; 18 C.F.R. 2721.   Such documents will be redacted and marked **CONFIDENTIAL** pursuant to the Court's protective order.

Subject to these objections, *see* documents bates labeled STATEDEF0000220-254.

**REQUEST NO. 2:** Any and all communications between You and any governmental agency, official or employee, concerning the First Amendment, journalists' role in covering protest activity, identification of journalists, alleged or actual incidents of violence, retaliation, harassment or mistreatment of journalists, law enforcement interactions with journalists, the Media Coalition, the TRO or similar topics. This request is limited to communications after May 25, 2020.

**RESPONSE:** State Defendants object to this Document Request as unduly burdensome in seeking "all communications" with "any governmental agency" on seven discrete topics.  State Defendants consider this Request to constitute seven separate document requests.  State Defendants further object to this Request as overbroad and not proportional to the needs of the case or the issues in the TRO or injunction hearing as it seeks all communications "concerning the First Amendment" regardless of whether such communication relates to issues involving journalists or the press.  State Defendants further object because this Document Request seeks documents protected from disclosure by the work-product, attorney-client, and deliberative-process privileges.  State Defendants also object to this Request to the extent it seeks active civil investigative data, which is protected nonpublic data under the Minnesota Government Data Practices Act, Minn. Stat. § 13.39,

subd. 2.  Such documents (*i.e.*, active complaint files) are being withheld, but closed complaint files will be produced and marked **CONFIDENTIAL** pursuant to the Court's protective order.  Minn. Stat. § 13.43 (private personnel data).

Subject to these objections, *see* documents bates labeled STATEDEF0000209-210, 255-56 and documents previously produced.

**REQUEST NO. 3:**  Any and all communications between You and any member, representative, or attorney of the Media Coalition concerning the First Amendment, journalists' role in covering protest activity, identification of journalists, alleged or actual incidents of violence, retaliation, harassment or mistreatment of journalists, law enforcement interactions with journalists, the TRO or similar topics. This request is limited to communications after May 25, 2020.

**RESPONSE:**      State Defendants object to this Document Request as unduly burdensome in seeking "all communications" on seven discrete topics.  State Defendants consider this Request to constitute seven separate document requests. State Defendants further object to this Request as overbroad and not proportional to the needs of the case or the issues in the TRO or injunction hearing as it seeks all communications "concerning the First Amendment" regardless of whether such communication relates to issues involving journalists or the press.   State Defendants also object to this Request to the extent it seeks active civil investigative data, which is protected nonpublic data under the Minnesota Government Data Practices Act, Minn. Stat. § 13.39, subd. 2.  Such documents (*i.e.*, active complaint files) are being withheld.

Subject to these objections, *see* documents bates labeled STATEDEF0000211-219.

I DECLARE UNDER PENALTY OF PERJURY THAT EVERYTHING I HAVE STATED IN THIS DOCUMENT IS TRUE AND CORRECT.

DEFENDANT MINNESOTA STATE PATROL

By:_____

John M. Harrington
Commissioner- Department of Public Safety

Dated:  April 26, 2021

County of Ramsey, State of Minnesota

I DECLARE UNDER PENALTY OF PERJURY THAT EVERYTHING I HAVE STATED IN THIS DOCUMENT IS TRUE AND CORRECT.

DEFENDANT MINNESOTA STATE PATROL

By:_____

Matthew Langer
Colonel

Dated:  April 26, 2021

County of Ramsey, State of Minnesota

I DECLARE UNDER PENALTY OF PERJURY THAT EVERYTHING I HAVE STATED IN THIS DOCUMENT IS TRUE AND CORRECT.

DEFENDANT MINNESOTA DEPARTMENT OF PUBLIC SAFETY


By:_____
[Name]
[Title]


Dated:  April 26, 2021

County of Ramsey, State of Minnesota




AS TO OBJECTIONS ONLY:


Dated: April 26, 2021 _____KEITH ELLISON
Attorney General
State of Minnesota


s/Kathryn Iverson Landrum_____
KATHRYN IVERSON LANDRUM
Assistant Attorney General
Atty. Reg. No. 0389424

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 757-1189 (Voice)
kathryn.landrum@ag.state.mn.us

ATTORNEY FOR DEFENDANTS MINNESOTA DEPARTMENT OF PUBLIC SAFETY COMMISSIONER JOHN HARRINGTON AND MINNESOTA STATE PATROL COLONEL MATTHEW LANGER, *IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES*

# Exhibit 6

**From:** Fischer, Luke <lfischer@lmc.org>
**Sent:** Saturday, April 17, 2021 6:19 PM
**To:** Stephanie Revering <stephanie.revering@crystalmn.gov>
**Cc:** Beety, Patricia <PBeety@lmc.org>; Greensweig, Dan <dgreensweig@lmc.org>; Erik Fadden <efadden@plymouthmn.gov>
**Subject:** FW: J. Wright's TRO --for distribution to cities who may be in Operation Safety Net
**Importance:** High

Chief Revering,

Please see the correspondence below.

The State Attorney General's Office has reached out seeking help distributing the information in this email to all law enforcement agencies involved in Operation Safety Net – and reached out to the League of Minnesota Cities for assistance identifying participating police departments. Chief Fadden from Plymouth indicated that all Hennepin County agencies are involved and, in your role as President of the Hennepin County Chiefs Association, you'd be the right person to share the information with cities engaged in OSN.

The League of Minnesota Cities is requesting your help and would ask that all chiefs that get this message share it with their City Managers and City Attorneys.

Thanks much, Chief.

Luke

**Luke Fischer** | Deputy Director
Phone: (651) 281-1279 | Mobile: (952) 292-9258
lfischer@lmc.org | Twitter: @LukeMNCities

League of Minnesota Cities | 145 University Ave. West | St. Paul, MN 55103
www.lmc.org | Facebook | Twitter | Podcast

---

**From:** Liz Kramer <Liz.Kramer@ag.state.mn.us>
**Sent:** Saturday, April 17, 2021 5:28 PM
**To:** Beety, Patricia
**Subject:** J. Wright's TRO --for distribution to cities who may be in Operation Safety Net

Ms. Beety,

I am reaching out to see if you or your team can help us distribute the email below to cities who may have law enforcement participating in Operation Safety Net (the collaboration conducting security in Brooklyn Center). Thank you in advance.  Best, Liz

---

As you likely know from the newspaper, DPS/MSP are now subject to a Temporary

Restraining Order ("TRO") pertaining to the treatment of media as they cover protest activities.  This TRO, while issued against DPS/MSP, is a declaration of what the law is in Minnesota more broadly, and therefore all OSN and law-enforcement partners must comply with it.  As such, in order to aid your team in ensuring compliance going forward, attached is a copy of the TRO for you to read and distribute, as well as a helpful summary of what the law requires.  We expect that you share this broadly with your entire staff in preparation for tonight.

**Summary of TRO**

First, please be advised that law enforcement must treat anyone wearing a press pass, badge, or other official press credential as a media member.  Additionally, law enforcement should treat anyone carrying professional recording equipment and/or wearing distinctive clothing, including but not limited to words that identify them as "press" or "media," as a member of the media.  As to these individuals, the law now requires:

1. Law enforcement is prohibited from enforcing general dispersal orders against press. Members of the press **are exempted** from general dispersal orders and they **have a right to be present to document protest and law enforcement activity**.  Members of the press must be treated as such. This is the primary change that the Judge ordered in how law enforcement have been interacting with the press.
2. Law enforcement is prohibited from arresting, threatening to arrest, or threatening/using physical force against someone they know or have reason to know is a member of the media unless they are suspected of a separate crime (not simply violating a dispersal order, which doesn't apply to them).
3. Law enforcement is prohibited from using chemical spray against someone they know or have reason to know is a member of the media.
4. Law enforcement is prohibited from seizing equipment from or ordering someone to stop recording or observing who they know or have reason to know is a member of the media.
5. Law enforcement is not prohibited from conducting a mass arrest, should that become necessary.  If press are present in an area where a mass arrest is being conducted, law enforcement may order press to leave that area and may escort them from the area without threatening/using physical force.

Please read the attached order for the full language of the TRO.  MSP expects all law enforcement staff to read the TRO and comply with it.

**Liz Kramer** (she/her/hers)
Solicitor General
OFFICE OF THE MINNESOTA ATTORNEY GENERAL
445 Minnesota Street | Suite 1100 | St. Paul, MN 55101
☎ (651) 757-1010| ✉ liz.kramer@ag.state.mn.us

Administrative Assistant – Pam Hewitt
☎ (651) 757-1445 | ✉ Pamela.Hewitt@ag.state.mn.us

STATEDEF0000004

Office of the Minnesota Attorney General Disclaimer: This e-mail is intended to be read only by the intended recipient. This e-mail may be legally privileged or protected from disclosure by law. If you are not the intended recipient, any dissemination of this e-mail or any attachments is strictly prohibited, and you should refrain from reading this e-mail or examining any attachments. If you received this e-mail in error, please notify the sender immediately and delete this e-mail and any attachments. Thank you.
**** This is an EXTERNAL email - which originated outside of the City of Crystal. Please exercise caution. DO NOT open attachments or click links from unknown senders or in unexpected email from known senders. ****

# Exhibit 7

# Work Product

**From:** Angie Lenart <hccpa.angie@gmail.com>
**Sent:** Saturday, April 17, 2021 6:49 PM
**To:** Angie Lenart <hccpa.angie@gmail.com>; Brent Johnson <bjohnson@hopkinsmn.com>; Correy Farniok <cfarniok@ci.orono.mn.us>; Cory Johnson <cpj5400@hotmail.com>; Craig Enevoldsen <craig.enevoldsen@brooklynpark.org>; Dave Nelson <dnelson@ci.edina.mn.us>; Don Davis <ddavis.60@hotmail.com>; Emily Herman <eherman@bloomingtonmn.gov>; Eric Werner <ewerner@maplegrovemn.gov>; Gary Kroells <gkroells@westhennepin.com>; Jamie Maiser <jmaiser@cityofrichfield.org>; Jason Ohotto <johotto@minneapolisparks.org>; Jason Sturgis <jsturgis@goldenvalleymn.gov>; Jay Henthorne <jhenthorne@cityofrichfield.org>; Jenna Scadden <JScadden@edenprairie.org>; Jenny Olson <jolson@maplegrovemn.gov>; Jon Mangseth <jon.mangseth@ci.saint-anthony.mn.us>; Laura Holtan <lholtan@southlakepd.com>; Lynn Gerhard <gerha004@umn.edu>; Matt Clark <mclarkpd@umn.edu>; Matt Gottschalk <mgottschalk@ci.corcoran.mn.us>; Medaria Arradondo <medaria.arradondo@minneapolismn.gov>; Michael Risvold <mrisvold@wayzata.org>; Mike Everson <michael.everson@mspmac.org>; Mike Harcey <mharcey@stlouispark.org>; Mike Meehan <mmeehan@southlakepd.com>; Natasha Hanson <natasha.hanson@minneapolismn.gov>; Nina Doree <Nina.Doree@ci.minneapolis.mn.us>; Paul Enga <penga@daytonpolice.org>; Paul Falls <pfalls@ci.minnetrista.mn.us>; Paula Steelman <Psteelman@ci.corcoran.mn.us>; Scott Boerboom <sboerboom@eminnetonka.com>; Shane Mikkelson <smikkelson@ci.osseo.mn.us>; Shannon McGoffin <mcgoffin@umn.edu>; Stephanie Revering <stephanie.revering@crystalmn.gov>; Ty Schmidt <tschmidt@ci.champlin.mn.us>; Cc: Karen Hendrickson <khendrickson@eminnetonka.com>; Jacobsen, Lynnaia (DPS) <Lynnaia.Jacobsen@state.mn.us>; Harrington, John (DPS) <John.M.Harrington@state.mn.us>; kathy.waite <kathy.waite@minneapolismn.gov>; Dan Wills <dwills@rogersmn.gov>; Frizell, Eddie <eddie.frizell@transitpd.org>; Blakey, Brooke <Brooke.Blakey@transitpd.org>; Warren, Elaine <elaine.warren@transitpd.org>; Evans, Andrew (DPS) <andrew.evans@state.mn.us>; hammes105@gmail.com; david.hutchinson <david.hutchinson@hennepin.us>; Jeffrey.Storms <Jeffrey.Storms@hennepin.us>; joe.scargill <joe.scargill@usss.dhs.gov>; Bartell, Jason (DPS) <jason.bartell@state.mn.us>; michael.freeman <michael.freeman@co.hennepin.mn.us>; paula.breuer <paula.breuer@co.hennepin.mn.us>; Tracey A Martin <tracey.martin@hennepin.us>; Adam Lindquist <alindquist@maplegrovemn.gov>; agardner <agardner@eminnetonka.com>; bwyffels <bwyffels@edenprairie.org>; Brian Hubbard <brian.hubbard@crystalmn.gov>; buck.mcalpin <buck.mcalpin@northmemorial.com>; clarrabee <clarrabee@ci.champlin.mn.us>; cwood <cwood@edenprairie.org>; miner008 <miner008@umn.edu>; ckreiling <ckreiling@hopkinsmn.com>; craig.olson <craig.olson@mspmac.org>; Dan Conboy <DConboy@edinamn.gov>; dkuhnly <dkuhnly@goldenvalleymn.gov>; dave. <dave.skinner@dhs.gov>; denise.krings <denise.krings@ic.fbi.gov>; erick.fors <erick.fors@minneapolismn.gov>; Erik Fadden <efadden@plymouthmn.gov>; Erik Husevold <ehusevold@hopkinsmn.com>; eswan <eswan@umn.edu>; gweber <gweber@edenprairie.org>;

STATEDEF0000001

henry.halvorson <henry.halvorson@minneapolismn.gov>; jelasky <jelasky@edinamn.gov>;
jeff.spiess <jeff.spiess@ci.saint-anthony.mn.us>; jgriffin <jgriffin@cityofrichfield.org>; Stahl, Julie
(DPS) <julie.stahl@state.mn.us>; kherman <kherman@ci.bloomington.mn.us>; Kevin Novotny
<kevin.novotny@northmemorial.com>; marcene.grabenbauer <marcene.grabenbauer@dhs.gov>;
marcus.erickson <marcus.erickson@brooklynpark.org>; mark.bruley
<mark.bruley@brooklynpark.org>; mstehlik <mstehlik@ci.bloomington.mn.us>; matt.christenson
<matt.christenson@mspmac.org>; Langer, Matthew (DPS) <matthew.langer@state.mn.us>;
msackett <msackett@edenprairie.org>; mflaherty <mflaherty@cityofrichfield.org>; mmurphy
<mmurphy@wayzata.org>; mjreed <mjreed@plymouthmn.gov>; Pete Johnson
<PJohnson@plymouthmn.gov>; rburns <rburns@ci.corcoran.mn.us>; scott.gerlicher
<scott.gerlicher@minneapolismn.gov>; spetersen <spetersen@eminnetonka.com>; sneururer
<sneururer@southlakepd.com>; theresa.a.willson <theresa.a.willson@usdoj.gov>; todd.milburn
<todd.milburn@brooklynpark.org>; buhta <buhta001@umn.edu>; bzavala <bzavala@fbi.gov>;
Bryan Kruelle <bkruelle@stlouispark.org>; Jason Nelson <jason.nelson@medinamn.gov>; Patrick S
King <Patrick.King@hennepin.us>; jwetternach <jwetternach@maplegrovemn.gov>; mschultz
<mschultz@wayzata.org>; Susan Setter <sue.setter@crystalmn.gov>; jfoster@rogersmn.gov; JAMES
FRANZEN <jtfranzen@msn.com>; Tim Hoyt <thoyt@newhopemn.gov>;
mhartley@bloomingtonmn.gov; Patrick Foley <pfoley@ci.robbinsdale.mn.us>; Grates, Richard
<richard.grates@transitpd.org>; Lindner, Jason <Jason.lindner@transitpd.org>;
sjohnson@goldenvalleymn.gov; BStanger@richfieldmn.gov; Brent Custard
<Brent.Custard@northmemorial.com>; Amelia.Huffman@minneapolismn.gov; Steven G Labatt
<Steven.Labatt@hennepin.us>; jirmiter@edenprairie.org; daniel.bovitz@hennepin.us;
eric.waage@hennepin.us; Anthony Ebensteiner <Anthony.Ebensteiner@northmemorial.com>;
Robert Topp <rtopp@plymouthmn.gov>; tpobuda@maplegrovemn.gov
**Subject:** URGENT - J. Wright's TRO --for distribution to cities who may be in Operation Safety Net

> **This message may be from an external email source.**
> Do not select links or open attachments unless verified. Report all suspicious emails to Minnesota IT Services Security
> Operations Center.

Hennepin Chiefs,

Please see email below from Luke Fischer, League of MN Cities.  I did send him the list of all
28 agencies involved with MFF.  His request below is to send this to your City
Managers/Administrators.

Sincerely,



**Stephanie Revering**
**Police Chief, City of Crystal**
763-531-1010 | Main: 763-531-1014 | www.crystalmn.gov
4141 Douglas Dr. N. | Crystal, MN  55422-1696

**From:** Fischer, Luke <<u>lfischer@lmc.org</u>>
**Sent:** Saturday, April 17, 2021 6:19 PM
**To:** Stephanie Revering <<u>stephanie.revering@crystalmn.gov</u>>
**Cc:** Beety, Patricia <<u>PBeety@lmc.org</u>>; Greensweig, Dan <<u>dgreensweig@lmc.org</u>>; Erik
Fadden <<u>efadden@plymouthmn.gov</u>>
**Subject:** FW: J. Wright's TRO --for distribution to cities who may be in Operation Safety Net
**Importance:** High

Chief Revering,

Please see the correspondence below.

The State Attorney General's Office has reached out seeking help distributing the information
in this email to all law enforcement agencies involved in Operation Safety Net – and reached
out to the League of Minnesota Cities for assistance identifying participating police
departments. Chief Fadden from Plymouth indicated that all Hennepin County agencies are
involved and, in your role as President of the Hennepin County Chiefs Association, you'd be
the right person to share the information with cities engaged in OSN.

The League of Minnesota Cities is requesting your help and would ask that all chiefs that get
this message share it with their City Managers and City Attorneys.

Thanks much, Chief.

Luke

**Luke Fischer** | Deputy Director
Phone: (651) 281-1279 | Mobile: (952) 292-9258
<u>lfischer@lmc.org</u> | Twitter: @LukeMNCities

League of Minnesota Cities | 145 University Ave. West | St. Paul, MN 55103
<u>www.lmc.org</u> | <u>Facebook</u> | <u>Twitter</u> | <u>Podcast</u>

---

**From:** Liz Kramer <<u>Liz.Kramer@ag.state.mn.us</u>>
**Sent:** Saturday, April 17, 2021 5:28 PM
**To:** Beety, Patricia
**Subject:** J. Wright's TRO --for distribution to cities who may be in Operation Safety Net

Ms. Beety,

I am reaching out to see if you or your team can help us distribute the email below to cities
who may have law enforcement participating in Operation Safety Net (the collaboration
conducting security in Brooklyn Center). Thank you in advance.  Best, Liz

---

As you likely know from the newspaper, DPS/MSP are now subject to a Temporary

Restraining Order ("TRO") pertaining to the treatment of media as they cover protest activities. This TRO, while issued against DPS/MSP, is a declaration of what the law is in Minnesota more broadly, and therefore all OSN and law-enforcement partners must comply with it. As such, in order to aid your team in ensuring compliance going forward, attached is a copy of the TRO for you to read and distribute, as well as a helpful summary of what the law requires. We expect that you share this broadly with your entire staff in preparation for tonight.

**Summary of TRO**

First, please be advised that law enforcement must treat anyone wearing a press pass, badge, or other official press credential as a media member. Additionally, law enforcement should treat anyone carrying professional recording equipment and/or wearing distinctive clothing, including but not limited to words that identify them as "press" or "media," as a member of the media. As to these individuals, the law now requires:

1. Law enforcement is prohibited from enforcing general dispersal orders against press. Members of the press **are exempted** from general dispersal orders and they **have a right to be present to document protest and law enforcement activity**. Members of the press must be treated as such. This is the primary change that the Judge ordered in how law enforcement have been interacting with the press.

2. Law enforcement is prohibited from arresting, threatening to arrest, or threatening/using physical force against someone they know or have reason to know is a member of the media unless they are suspected of a separate crime (not simply violating a dispersal order, which doesn't apply to them).

3. Law enforcement is prohibited from using chemical spray against someone they know or have reason to know is a member of the media.

4. Law enforcement is prohibited from seizing equipment from or ordering someone to stop recording or observing who they know or have reason to know is a member of the media.

5. Law enforcement is not prohibited from conducting a mass arrest, should that become necessary. If press are present in an area where a mass arrest is being conducted, law enforcement may order press to leave that area and may escort them from the area without threatening/using physical force.

Please read the attached order for the full language of the TRO. MSP expects all law enforcement staff to read the TRO and comply with it.

**Liz Kramer** (she/her/hers)
Solicitor General
OFFICE OF THE MINNESOTA ATTORNEY GENERAL
445 Minnesota Street | Suite 1100 | St. Paul, MN 55101
☎ (651) 757-1010| ✉ liz.kramer@ag.state.mn.us

Administrative Assistant – Pam Hewitt
☎ (651) 757-1445 | ✉ Pamela.Hewitt@ag.state.mn.us

Office of the Minnesota Attorney General Disclaimer: This e-mail is intended to be read only by the intended recipient. This e-mail may be legally privileged or protected from disclosure by law. If you are not the intended recipient, any dissemination of this e-mail or any attachments is strictly prohibited, and you should refrain from reading this e-mail or examining any attachments. If you received this e-mail in error, please notify the sender immediately and delete this e-mail and any attachments. Thank you.
**** This is an EXTERNAL email - which originated outside of the City of Crystal. Please exercise caution. DO NOT open attachments or click links from unknown senders or in unexpected email from known senders. ****

STATEDEF0000005