UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jared Goyette, Craig Lassig, Katie Nelson, Tannen Maury, and The Communications Workers of America, On behalf of themselves and other similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>City of Minneapolis; Minneapolis Chief of Police Medaria Arradondo in his individual and official capacity; Minneapolis Police Lieutenant Robert Kroll, in his individual and official capacity; Minnesota Department of Public Safety Commissioner John Harrington, in his individual and official capacity, Minnesota State Patrol Colonel Matthew Langer, in his individual and official capacity; and John Does 1-2, in their individual and official capacities.<br><br>Defendants. | Ct. File No. 20-cv-01302 (WMW/DTS)<br><br>**CITY DEFENDANTS' MEMORANDUM IN RESPONSE TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

## INTRODUCTION

On June 2, 2020, Plaintiffs moved for a Temporary Restraining Order against all defendants, which the Court denied. On April 14, 2021, Plaintiffs moved for a

Temporary Restraining Order against the State Defendants only, which the Court granted. Plaintiffs now move for a preliminary injunction, also only against the State Defendants.[1] Plaintiffs attempt to use Fed. R. Civ. P. 65(d)(2) to argue that the Court should make the order applicable to "all [Operation Safety Net] agencies and personnel" which would include the Minneapolis Police Department ("MPD"), a department within Defendant City of Minneapolis and led by Chief Medaria Arradondo (collectively "City Defendants"). Plaintiffs do not identify any new allegations against the MPD since their failed motion for a TRO that would now justify injunctive relief against the MPD. Plaintiffs should not be permitted to engage in back door maneuvering in an attempt to include the MPD in the preliminary injunction when they do not even attempt to argue that there are facts that would support a direct motion against the MPD for the Court to issue a preliminary injunction.

## FACTS

In their Second Amended Complaint, Plaintiffs allege that during the widespread and unprecedented civil unrest following the murder of George Floyd last spring, they and other journalists were subjected to chemical irritants, threats, and physical force during a 103-hour period, the first instance allegedly occurring

---

[1] City Defendants take no position on the merits of Plaintiffs' motion for a preliminary injunction against State Defendants.

at approximately 7:00 p.m. on May 26, 2020, and the last occurring at approximately 2:00 a.m. on May 31, 2020. (ECF Doc. 53 at ¶¶ 46, 54 & n.2.) Since then, Plaintiffs allege there were 13 protests in June, July, and August, in addition to many protests in the fall and winter, including protests related to a fatal shooting involving the MPD, and further protests in early 2021 relating to the trial of Derek Chauvin. (ECF Doc. 120 at 18-19 & n.60.) Most of these protests took place in Minneapolis within the jurisdiction of the MPD. (*Id.*) However, Plaintiffs do not allege that the MPD committed any acts of unlawful force or First Amendment retaliation against journalists since 2:00 a.m. on May 31, 2020. (*See* ECF Doc. 120.)

In order to avert the catastrophic destruction of property and serious risks to safety that occurred during the protests in May of 2020, the Minnesota State Patrol along with several other law enforcement agencies, collaborated on Operation Safety Net ("OSN") to "[p]reserve and protect lawful First Amendment non-violent protests and demonstrations" and "[p]revent large scale violent civil disturbances, assaultive actions, property damage, fires, and looting to government buildings, businesses, and critical infrastructure."[2] (ECF Doc. 104 ("Schrofer Dec.") ¶ 3.) The MPD is one of the Operation Safety Net Partners.[3]

---

[2] *About*, Operation Safety Net, https://safetynet.mn.gov/Pages/about.aspx (last visited May 25, 2021).

[3] *Id.*

3

Operation Safety Net is designed to operate under unified command to coordinate services and resources.[4] A "unified command" means "multiple voices from involved agencies contribute to the operational decisions."[5] However, each agency is responsible for training their own officers on their own policies (which vary from agency to agency), and disciplining their own officers for violating those policies.[6] Plaintiffs have developed no further information during discovery regarding the command structure of Operation Safety Net.

Plaintiffs' allegations supporting the instant motion for a Preliminary Injunction focus solely on the activities of the State Defendants and unnamed other jurisdiction officers that responded to the protests at the Brooklyn Center Police Department following the tragic shooting of Daunte Wright by a Brooklyn Center Police Officer. (*See* ECF Doc. 120 at 6.) Plaintiffs do not allege that any MPD officers have been the subject of complaints by journalists since 2:00 a.m. on May 31, 2020. (*See* ECF Doc. 120.)

---

[4] *FAQs about Operation Safety Net*, Operation Safety Net, https://safetynet.mn.gov/Pages/frequently-asked-questions.aspx (last visited May 25, 2021).

[5] *Id.*

[6] *Accountability FAQs*, Operation Safety Net, https://safetynet.mn.gov/Pages/faq-accountability.aspx (last visited May 25, 2021).

4

## ARGUMENT

Plaintiffs have moved to convert the Temporary Restraining Order entered by the Court into a preliminary injunction and that the Order "specifically state that it applies to all OSN agencies and personnel and any others who are in active concert or participation with the State Defendants in accordance with Rule 65." If the preliminary injunction were so worded, it would mean that the injunction would apply to the MPD, in addition to all the other law enforcement agencies that are part of OSN, without Plaintiffs needing to establish that they are entitled to a preliminary injunction against any of these agencies.  Plaintiffs cannot secure the extreme remedy of an injunction against the MPD when Plaintiffs cannot produce any evidence to show that the situation regarding the MPD has changed since this Court denied the TRO in June of 2020.

**I.     The Court's Analysis Denying the TRO Against the City Defendants Weighs *More* Strongly Against Issuing Any Injunctive Relief Today Than it Did Last June.**

Injunctive relief is an "extraordinary remedy never awarded as a matter of right."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  A preliminary injunction may be granted only if the moving party can demonstrate: (1) the moving party's probability of success on the merits; (2) the threat of irreparable harm to the moving party; (3) the balance between this harm and the injury that granting the injunction will inflict on other interested parties; and (4) the public

5

interest in the issuance of the injunction. *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). Plaintiffs have the "complete burden" of proving all the factors. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

In its Order of June 9, 2020, this Court found that "[i]t is [Plaintiffs'] burden to establish the threat of irreparable harm . . . [but Plaintiffs have] not established that harm is certain and of such imminence that there is a clear and present need for equitable relief." (ECF Doc. 35 at 8.) As part of the analysis as to why Plaintiffs had not established the necessity for the "extraordinary" relief of a temporary restraining order, the Court recognized that the City of Minneapolis had entered, voluntarily, into a stipulation for a preliminary injunction with the Minnesota Department of Human Rights which addressed the authorization for crowd-control weapons during protests. (*Id.* at 10.)

The City Defendants have continued to work to address the issues that have been raised by the public, including by Plaintiffs, since last year. The stipulation for a preliminary injunction entered between the City of Minneapolis and the Minnesota Department of Human Rights was adopted and ordered by the Hennepin County District Court and is still in effect.[7] Additionally, the policy

---

[7] *See State of Minn. by Rebecca Lucero, Comm'r of the Minn. Dep. of Human Rights v. City of Mpls Police Dept, City of The City of Minneapolis, County of Hennepin, State of Minnesota*, Henn. Co. Dist. Court File 27-CV-20-8182, Order Granting preliminary injunctive relief, June 8, 2020 (Doc. Index #9).

6

changes required by the preliminary injunction have been adopted by the MPD.[8] (Robertson Decl. Ex. A.) Also, the Department of Justice opened a pattern and practice investigation into the MPD and, if problems are identified, the DOJ will seek a consent decree.[9] Minneapolis Mayor Jacob Frey is supportive of the investigation by the DOJ and of making changes to the MPD.[10] Since the Court denied the TRO against the City of Minneapolis in June 2020, there have been no further incidents involving members of the press and members of the MPD. In contrast, in deciding to grant the TRO against the State Defendants in April, this Court reasoned that, "Several factors demonstrate the clear and present need for equitable relief: (1) the State Defendants' repeated conduct in contravention of Plaintiffs' constitutional rights; (2) the ongoing protests in connection with the Derek Chauvin trial and the recent death of Daunte Wright; and (3) Plaintiffs' intention to continue its press coverage of the protests." (ECF Doc. 105 at 15.)

---

[8] *See* Minneapolis Police Department Policy and Procedure Manual §§ 5-100, 5-300, 5-311, 5-312, 5-313, 7-805, *available at* https://www.minneapolismn.gov/government/departments/police/mpd-policy-procedure-manual/policy-manual/

[9] *DOJ to Investigate Minneapolis Police Over Possible Patterns of Excessive Force*, NPR, April 21, 2021, *available at* https://www.npr.org/sections/trial-over-killing-of-george-floyd/2021/04/21/989446758/doj-to-investigate-minneapolis-police-for-possible-patterns-of-excessive-force

[10] *Minneapolis Mayor Says He Welcomes Justice Department Policing Investigation*, NPR, April 21, 2021, *available at* https://www.npr.org/sections/trial-over-killing-of-george-floyd/2021/04/21/989562341/minneapolis-mayor-says-he-welcomes-justice-department-policing-investigation

There have been many protests since May 2020, but despite these many opportunities for issues to occur there have been no allegations that the MPD acted in contravention of Plaintiffs' constitutional rights.

For injunctive relief to be warranted the harm must be imminent. *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013). Additionally, if a defendant has taken remedial action, that weighs against a finding of a need for injunctive relief. *Heather K. by Anita K. v. City of Mallard, Iowa*, 887 F. Supp. 1249, 1260 (N.D. Iowa 1995) (citing *Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 489–90 (8th Cir. 1993)). As there is no threat of imminent harm from the MPD and the City Defendants have voluntarily undertaken and continued to pursue remedial action, there is even less need now for an injunction against City Defendants than when the Court denied the TRO last year.

## II. As There is No Basis to Grant Plaintiffs Injunctive Relief Against the City Defendants, Plaintiffs Should Not Be Allowed to Procure an Injunction by a Back Door Procedural Maneuver.

The Federal Rules of Civil Procedure provide that an injunction only binds the parties, their officers, agents, servants, employees, attorneys, and "other persons who are in active concert or participation" with them. Fed. R. Civ. P. 65(d)(2). If granted, the requested preliminary injunction would be binding on the State Defendants, and Plaintiffs have requested that the Court explicitly include the member agencies of Operation Safety Net as automatically being deemed to be

in active concert or participation with the State Defendants. This request ignores the purpose of Fed. R. Civ. P. 65(d)(2).

"[A] nonparty may be enjoined under Rule 65(d) only when its interests closely 'identify with' those of the defendant, when the nonparty and defendant stand in "privity," or when the defendant "represents" or "controls" the nonparty." *Thompson v. Freeman*, 648 F.2d 1144, 1147 (8th Cir. 1981) (citing *Chase National Bank v. City of Norwalk*, 291 U.S. 431, 436-37 (1934); *Kean v. Hurley*, 179 F.2d 888, 890 (8th Cir. 1950)). The non-party to the injunction may also be bound where it "aids or abets a named party in a concerted violation of a court order." *Indep. Fed'n of Flight Attendants v. Cooper*, 134 F.3d 917, 920 (8th Cir. 1998)(citing *Rockwell Graphic Systems, Inc. v. DEV Indus., Inc.,* 91 F.3d 914, 919 (7th Cir. 1996); *Reliance Ins. Co. v. Mast Const. Co.,* 84 F.3d 372, 376–77 (10th Cir. 1996); *Gemco Latinoamerica, Inc. v. Seiko Time Corp.,* 61 F.3d 94, 98 (1st Cir. 1995)). Whether a non-party has aided and abetted or is legally identified with the bound party "ordinarily presents a question of fact requiring examination of the circumstances of each case as it arises.'" *Crane Boom Life Guard Co. v. Saf-T-Boom Corp.*, 362 F.2d 317, 322 (8th Cir. 1966).

The literal proposed language of Plaintiffs' preliminary injunction which enjoins State Defendants and those in active concert and participation with them, "including but not limited to all the agencies participating in Operation Safety

9

Net," would mean that every agency participating in OSN would be bound by the injunction, at all times, whether or not they were at that moment participating in an operation for OSN. But even were it to be limited to just agencies actively on mission for OSN, the proposed injunction reaches too far. Plaintiffs have the burden of showing they are entitled to their requested injunctive relief. *See Gelco Corp.*, 811 F.2d at 18. Plaintiffs have not presented facts to support that the injunction should automatically include every agency that is acting as a part of Operation Safety Net.

Firstly, there is no evidence that the OSN agencies are under the control of the State Defendants. Plaintiffs argue the language from the Operation Safety Net website shows that "OSN leadership has created a single plan for operations and directs the activities of all personnel, including State Defendants", but in reality the website says nothing of the kind. All the OSN website states is that the member agencies "will be operating under unified command in order to coordinate their services and resources. Unified command means multiple voices from involved agencies contribute to the operational decisions."[11] There is no indication that any agency has given up control of their officers to OSN leadership, on the contrary the evidence produced by State Defendants and uncontradicted by Plaintiffs

---

[11] *FAQs about Operation Safety Net*, Operation Safety Net, https://safetynet.mn.gov/Pages/frequently-asked-questions.aspx (last visited May 25, 2021).

shows the opposite. (ECF Doc. 145 ¶¶ 3-4 ("Harrington Decl."); ECF Doc. 147 ¶ 2 ("Dwyer Decl.")). Each OSN agency continues to operate under their own policies and impose their own discipline.[12] Collaboration between government agencies is insufficient by itself to subject other agencies to an injunction. *Vance v. Block*, 881 F.2d 1085 (9th Cir. 1989) (unpublished) ("[i]nteragency coordination and cooperation" insufficient for "active concert" for purposes of Rule 65(d)); *U.S. Commodity Futures Trading Comm'n v. Amaranth Advisors, LLC*, 523 F. Supp. 2d 328, 335 (S.D.N.Y. 2007) (Fed. R. Civ. P. 65(d) did not apply to collaboration between two federal agencies). If the other agencies are "exercising their own individual judgement and discretion when they act . . . as members" then there is not sufficient action in "concert or participation" for the purposes of Rule 65(d). *Thaxton v. Vaughan*, 321 F.2d 474, 478 (4th Cir. 1963) (city council members would not proactively be considered as acting in concert or participation with the mayor). Plaintiffs have not shown that any agencies forfeited their discretion or their own policies in participating in OSN.

Even considering Plaintiffs' unsupported contention that "OSN leadership . . . directs the activities of all personnel, including State Defendants" there would still be no basis to hold OSN, and every agency involved, to be bound by the

---

[12] *Accountability FAQs*, Operation Safety Net, https://safetynet.mn.gov/Pages/faq-accountability.aspx (last visited May 25, 2021).

11

preliminary injunction. In an unpublished case in this district, a Plaintiff, representing truck drivers, secured injunctive relief against the Minnesota State Patrol ("MSP") to prohibit it, during a commercial vehicle inspection, from declaring a driver unfit to continue due to tiredness or intoxication unless there was *probable cause* to believe the driver was unfit. *Owner-Operator Indep. Drivers Ass'n, Inc. v. Dunaski*, No. CIV. 09-1116 DWF/LIB, 2012 WL 4868036, at *1 (D. Minn. Oct. 15, 2012). The MSP was a member of a national organization called the Commercial Vehicle Safety Alliance ("CVSA"). *Id.* The purpose of the CVSA was to have uniformity among the member jurisdictions across North America to reduce commercial motor vehicle crashes. *Id.* The MSP and CVSA had entered into a memorandum of understanding in which the MSP agreed to implement the policies and procedures agreed on by CVSA members, except where they would conflict with local law. *Id.* After the injunction was entered against the MSP, the CVSA then adopted a policy that drivers should be found unfit during vehicle inspections if there was only *reasonable suspicion* that the driver was unfit. Plaintiffs brought a motion for an order to show cause alleging that not only MSP but that non-party CVSA had violated the injunction. *Id.* The court found that "Plaintiffs have not met their burden to demonstrate that the MSP and the CVSA were acting in concert. . . . Plaintiffs have asserted no facts to demonstrate that the CVSA acted together with the MSP to violate the Court's Order." *Id.* at *4. The

existence of the memorandum of understanding between CVSA and MSP was not sufficient as MSP still retained the ability to follow local laws, including the court's injunction, and MSP had done nothing to violate the injunction. *Id.* Therefore, CVSA could not have acted with MSP to violate the order. *Id.*

Similarly, in this case, the proposed preliminary injunction would be issued against the State Defendants, one member of OSN. To violate any injunction that may be issued in this case, OSN, or its members, would have to be acting together with the State Defendants to violate the Court's order. An agreement between organizations, or collaboration for a common purpose is not sufficient on its own to show acting in "active concert." Plaintiffs would need to show that the agencies were no longer following their own direction or policy and were instead acting at the direction of State Defendants. The website that Plaintiff relies on simply does not support that contention and is not enough to meet Plaintiffs' burden. Plaintiffs should not be able to secure the "extraordinary remedy" of injunctive relief against the MPD where it cannot allege anything more than what was already found insufficient to support injunctive relief nearly a year ago.

## CONCLUSION

Plaintiffs have alleged no basis to directly subject City Defendants to an injunction. The mere fact that the MPD is a member of Operation Safety Net is

not, by itself, sufficient to proactively subject it to any injunction that may issue in this case. There is no evidence that the MPD is subject to the control of State Defendants or that it has or will be acting on behalf of State Defendants in enforcing the law such that it can be considered to be automatically subject to any potential injunction. City Defendants respectfully request that the Court deny Plaintiffs' motion to specifically state that the preliminary injunction applies "to all OSN agencies and personnel."

| | |
|---|---|
| Dated: May 26, 2021 | JAMES R. ROWADER, JR.<br>Minneapolis City Attorney<br>By<br>*/s/ Heather P. Robertson*<br>Heather P. Robertson (#0390470)<br>Kristin R. Sarff (#388003)<br>Sharda Enslin (#0389370)<br>Assistant City Attorneys<br>Office of the Minneapolis City Attorney<br>City Hall, Room 210<br>350 S. Fifth Street<br>Minneapolis, MN 55415<br>Telephone: 612-673-3949<br>heather.robertson@minneapolismn.gov<br>kristin.sarff@minneapolismn.gov<br>sharda.enslin@minneapolismn.gov<br>*Attorneys for Defendants City of Minneapolis and Chief of Minneapolis Police Medaria Arradondo* |