UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jared Goyette, Craig Lassig, The Communications Workers of America, Tannen Maury, Katie Nelson, Stephen Maturen, Edward Ou, Timothy Evans, and Chris Tuite,<br><br>      Plaintiffs,<br><br> v.<br><br>City of Minneapolis, Medaria Arradondo, Robert Kroll, John Harrington, Matthew Langer, John Does 1–2, David Hutchinson, and Joseph Dwyer,<br><br>      Defendants. | Case No. 20-cv-1302 (WMW/DTS)<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR MONITORED INJUNCTION** |

  This matter is before the Court on Plaintiffs' unopposed motion for a monitored injunction. (Dkt. 281.) The Court previously granted Plaintiffs' motion for a preliminary injunction on October 28, 2021. Plaintiffs have reached a mediated settlement agreement (Settlement Agreement) with Defendants Minnesota Department of Public Safety Commissioner John Harrington, Minnesota State Patrol Colonel Matthew Langer, and Minnesota State Patrol Major Joseph Dwyer (collectively, State Defendants). Plaintiffs now seek an order converting the preliminary injunction into a monitored six-year injunction on terms substantially similar to those previously ordered by this Court. State Defendants do not oppose the motion.

In cases implicating important public interests, the United States Court of Appeals for the Eighth Circuit has recognized that district courts have a role in approving settlement agreements. *See, e.g.*, *EEOC v. Prod. Fabricators, Inc.*, 666 F.3d 1170, 1172–74 (8th Cir. 2012) (reversing district court's rejection of consent decree involving alleged violation of Americans with Disabilities Act); *United States v. BP Amoco Oil PLC*, 277 F.3d 1012, 1018–21 (8th Cir. 2002) (affirming approval of consent decree involving environmental cleanup). "Public law settlements are often complicated documents designed to be carried out over a period of years, . . . so any purely out-of-court settlement would suffer the decisive [disadvantage] of not being subject to continuing oversight and interpretation by the court." *Prod. Fabricators*, 666 F.3d at 1173 (omission in original) (quoting *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 523 n.13 (1986)). The decision whether to approve such a settlement rests within the discretion of the district court. *Id.* at 1172.

Here, the parties' Settlement Agreement, including the proposed monitored six-year injunction, implicates significant public interests—namely, Plaintiffs' First Amendment and Fourth Amendment rights, the public's ability to learn about ongoing events of public importance, and public safety. In addition, the contemplated injunction includes obligations to be fulfilled over an extended period of time and may require continuing oversight and interpretation by a court. A district court "is more than a recorder of contracts from whom parties can purchase injunctions," however. *Id.* (internal quotation marks omitted). Accordingly, before entering an unopposed

2

injunction, this Court must find that the proposal is (1) procedurally fair, (2) substantively fair, (3) reasonable and (4) consistent with the governing law. *See United States v. Hercules, Inc.*, 961 F.2d 796, 800 (8th Cir. 1992); *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 85–93 (1st Cir. 1990).

## I. Procedural Fairness

"To measure procedural fairness, a court should ordinarily look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance." *Cannons*, 899 F.2d at 86; *accord BP Amoco*, 277 F.3d at 1020. The reviewing court should determine whether the government and the settling defendant were "negotiating in good faith and at arm's length" when crafting the proposal. *BP Amoco*, 277 F.3d at 1020.

Here, the record reflects that all the parties are represented by reputable counsel. And the parties participated in multiple settlement conferences and status conferences with United States Magistrate Judge David T. Schultz, over the course of several months, before finalizing the terms of the Settlement Agreement. Moreover, the Settlement Agreement is signed by the parties. Accordingly, the record establishes that the proposed six-year injunction is procedurally fair.

## II. Substantive Fairness

"Substantive fairness introduces into the equation concepts of corrective justice and accountability: a party should bear the cost of the harm for which it is legally responsible." *Id.* (quoting *Cannons*, 899 F.2d at 87). When evaluating substantive fairness, a district court does not examine "whether the settlement is one which the court

itself might have fashioned, or considers as ideal, but whether the proposed decree is fair, reasonable, and faithful to the objectives of the governing statute." *Cannons*, 899 F.2d at 84. Here, if the Court enters the proposed six-year injunction, State Defendants will be enjoined on terms substantially similar to those previously ordered by this Court. For the reasons addressed in this Court's preliminary injunction order, these terms are substantively fair.

### III.  Reasonableness

To determine whether a proposed injunction is reasonable, a district court should assess (1) the basic legality of the proposed injunction; (2) whether the terms of the proposed injunction, including its enforcement mechanism, are clear; (3) whether the proposed injunction reflects a resolution of the actual claims in the complaint; and (4) whether the proposed injunction is tainted by improper collusion or corruption of some kind. *See SEC v. Citigroup Glob. Mkts., Inc.*, 752 F.3d 285, 294–95 (2d Cir. 2014); *Angela R. ex rel. Hesselbein v. Clinton*, 999 F.2d 320, 325 (8th Cir. 1993) (concluding that district court abused its discretion by approving consent decree that did not properly define the enforcement mechanisms). Protection of the public interest is an important, overarching consideration. *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1435 (6th Cir. 1991) (addressing a consent decree involving environmental cleanup).

Here, the basic legality of the proposed six-year injunction is supported by the record and the relevant law, as reflected in this Court's preliminary injunction order. Injunctive relief is an appropriate form of relief in cases asserting violations of

constitutional rights, and this form of relief is consistent with the allegations in the operative complaint. Accordingly, the legality of the proposed six-year injunction is clear and its terms are appropriate, proportionate and reflect a resolution of the actual claims in the operative complaint.

To be reasonable, the terms of a settlement agreement, including its enforcement mechanisms, also must be clear. *See Hesselbein*, 999 F.2d at 325. The enforcement mechanism must clearly define who may bring an enforcement action and the bases and manner for doing so. *See id.* Here, the Settlement Agreement provides, among other things, that "[t]he Court shall oversee compliance with the Monitored Injunction and take appropriate action in the event it is violated." In addition, the Settlement Agreement provides that Plaintiffs retain the right to seek enforcement of the terms of the monitored injunction during its existence, which has a limited duration of six years and expires on a date-certain—namely, January 11, 2028. The Court finds that these terms clearly define who may bring an enforcement action and in what manner.

Finally, there is no evidence that the Settlement Agreement is tainted by improper collusion or corruption, nor does the Settlement Agreement disserve the public interest. The injunctive relief outlined in the Settlement Agreement appropriately and adequately serves the public interest.

For all the foregoing reasons, the proposed six-year injunction is reasonable.

### IV. Consistency with Governing Law

The proposed injunction also must be consistent with the overarching principles of the governing law. *See Cannons*, 899 F.2d at 90–93. This Court's preliminary injunction order addressed in detail the governing legal principles and constitutional rights implicated by this case. The proposed injunction is consistent with the Court's prior legal conclusions. Accordingly, the proposed six-year injunction is consistent with the laws that govern this dispute.

In summary, based on Plaintiffs' unopposed motion and the record in this case, the Court concludes that good cause exists to grant Plaintiffs' motion for a monitored six-year injunction.

### ORDER

Based on all of the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Plaintiffs' motion for a monitored injunction, (Dkt. 281), is **GRANTED**.

2. Defendants Minnesota Department of Public Safety Commissioner John Harrington, in his individual and official capacity; Minnesota State Patrol Colonel Matthew Langer, in his individual and official capacity; their agents, servants, employees and representatives (collectively, the State Defendants); and all other persons who are in active concert or participation with the State Defendants, are hereby enjoined from:

   a. arresting, threatening to arrest, or using physical force—including through use of flash bang grenades, non-lethal projectiles, riot batons, or

any other means—directed against any person whom they know or reasonably should know is a Journalist (as defined in Paragraph 4 below), *unless* the State Defendants have probable cause to believe that such individual has committed a crime. For purposes of this Order, those individuals identifiable as a Journalist as defined in Paragraph 4 shall not be required to disperse following the issuance of an order to disperse, and such persons shall not be subject to arrest for not dispersing following the issuance of an order to disperse. Such persons shall, however, remain bound by all other laws;

b.  using chemical agents directed against any person whom they know or reasonably should know is a Journalist, including but not limited to mace/oleoresin capsicum spray or mist/pepper spray/pepper gas, tear gas, skunk, inert smoke, pepper pellets, xylyl bromide, and similar substances, unless such Journalist presents an imminent threat of violence or bodily harm to persons or damage to property; and

c.  seizing or intentionally damaging any photographic equipment, audio-recording or video-recording equipment, or press passes in the possession of any person whom the State Defendants know or reasonably should know is a Journalist, or ordering such person to stop photographing, recording, or observing a protest, unless the State Defendants are lawfully seizing that person consistent with this Order. Except as expressly

provided in Paragraph 3 below, the State Defendants must return any seized equipment or press passes immediately upon release of a person from custody.

3. If any State Defendant, agent or employee of the State Defendants, or any person acting under the State Defendants' direction seizes property from a Journalist who is lawfully arrested consistent with this Order, such State Defendant shall, as soon thereafter as is reasonably possible, make a written list of seized property and shall provide a copy of that list to the Journalist. If property seized in connection with the lawful arrest of a Journalist is needed for evidentiary purposes, the State Defendants shall promptly seek a search warrant, subpoena, or other court order to authorize the continued seizure of such property. If such a search warrant, subpoena, or other court order is denied, or if property seized in connection with an arrest is not needed for evidentiary purposes, the State Defendants shall immediately return the seized property to its rightful possessor.

4. To facilitate the State Defendants' identification of Journalists protected under this Order, the following shall be considered indicia of being a Journalist: visible identification as a member of the press, such as by carrying a professional or authorized press pass or wearing a professional or authorized press badge or other official press credentials or distinctive clothing that identifies the wearer as a member of the press. These indicia are not exclusive, and a person need not exhibit every indicium to be considered a Journalist under this Order. The State Defendants shall not be liable for

unintentional violations of this Order in the case of an individual who does not carry or wear a press pass, badge, or other official press credential or distinctive clothing that identifies the wearer as a member of the press.

5. The State Defendants are not precluded by this Order from issuing otherwise lawful crowd-dispersal orders. The State Defendants shall not be liable for violating this injunction if a Journalist is incidentally exposed to crowd-control devices after remaining in the area where such devices were deployed in conjunction with the enforcement of an otherwise lawful dispersal order.

6. State Defendants' agents and employees responding to civil unrest or protests covered by Journalists shall prominently display their agency name and badge number readable from a distance of twenty feet.

7. State Defendants shall maintain a record of all agents or employees deployed to respond to civil unrest or protests.

8. To promote compliance with this Order, the State Defendants shall provide copies of this Order, in either electronic or paper form, within 48 hours, to: (a) all employees, officers, and agents of the State Defendants with any supervisory or command authority over any person who is engaged in the law enforcement response to civil unrest or protests covered by Journalists; and (b) all other persons who the State Defendants have reason to believe are in active concert or participation with the State Defendants in the law enforcement response to civil unrest or protests covered by Journalists.

9.     This Order supersedes the Court's October 28, 2021 Preliminary Injunction Order and shall expire on January 11, 2028.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  February 8, 2022                                              s/Wilhelmina M. Wright
                                                                                     Wilhelmina M. Wright
                                                                                     United States District Judge