UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jared Goyette, Craig Lassig, Katie Nelson, Tannen Maury, Stephen Maturen, Edward Ou, Timothy Evans, Chris Tuite, and The Communications Workers of America, *On behalf of themselves and other similarly situated individuals,* <br><br> Plaintiffs, <br> v. <br><br> City of Minneapolis; Minneapolis Chief of Police Medaria Arradondo *in his individual and official capacity*; Minneapolis Police Lieutenant Robert Kroll, *in his individual and official capacity*; Minnesota Department of Public Safety Commissioner John Harrington, *in his individual and official capacity*, Minnesota State Patrol Colonel Matthew Langer, *in his individual and official capacity*; and John Does 1-10, *in their individual and official capacities,* <br><br> Defendants. | Court File No.: <br> 20-cv-01302 (WMW/DTS) <br><br><br> **REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

## INTRODUCTION

Plaintiffs make a simple request: certify a class of journalists so they can receive injunctive relief against the Minneapolis Police Department prohibiting the precise conduct this Court has already held unconstitutional.

In opposing Plaintiffs' motion, the City of Minneapolis trots out the same failed arguments it has made throughout this litigation. It claims that the dozens of documented unconstitutional acts against journalists, spanning decades, are not part of an ongoing and unlawful custom. It denies any role by the Minneapolis police in any incident that could even plausibly be blamed on other law enforcement agencies. It ignores the remedy Plaintiffs seek—an injunction—highlighting defenses, like qualified immunity, that don't apply to claims for injunctive relief. It steadfastly refuses to recognize journalists as journalists, engaging in the same semantic gamesmanship this Court has emphatically rejected. It operates from the mistaken premise that only journalists who have already been shot, gassed, pepper sprayed, beaten or arrested may stake a claim for *prospective relief* enjoining MPD's ongoing unconstitutional policy. And it casts aside the expert testimony offered by both sides—testimony confirming that MPD's unlawful policies toward journalists apply across the board.

Once the City's evasions and red herrings are put to the side, the central question driving this motion comes into focus: does the MPD have an unlawful custom of infringing the constitutional rights of journalists as a class warranting injunctive relief as a class? As in the stop-and-frisk cases, where courts have considered—and rejected—the same arguments the City makes here, the question of "whether Plaintiffs' constitutional deprivations were caused by an express policy, widespread custom, or deliberative act of a policymaking decision-maker causing the constitutional injuries" is a common question warranting classwide treatment. *Smith v. City of Chicago*, 240 F.R.D. 262, 283 (N.D. Ill. 2021); *Ligon v. City of New York*, 288 F.R.D. 72 (S.D.N.Y. 2013).

Plaintiffs' motion for class certification should be granted.

## ARGUMENT

Because the class meets all requirements for certification under Rule 23, the Court should grant Plaintiffs' motion for certification to ensure that all journalists are protected against ongoing and future constitutional violations.

**1.    THE CITY'S CLAIM THAT PLAINTIFFS PROVIDE MERE ALLEGATIONS IS BASELESS.**

The City criticizes Plaintiffs for relying, in part, on evidence referenced in Plaintiffs' Third Amended Complaint. ECF No. 378 at 24-26. The City's argument has no merit. Plaintiffs have supported their claims with copious evidence—some of which is incorporated by reference in the operative complaint, some of which is in the public record, some that was gathered through public records requests, and some that was introduced through expert testimony.

Plaintiffs' reliance on evidence cited in their complaint does transform that evidence into unsupported pleadings. Plaintiff's operative complaint spans 173 pages. ECF No. 227. It contains more than four times as much factual content as Plaintiffs' initial complaint— the sole basis for Plaintiffs' early motion for class certification. *Compare* ECF No. 1. And qualitatively, Plaintiffs' operative complaint is much more than a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It is instead an encyclopedic record, supported by unconverted video, photographic, and other record evidence, detailing dozens of specific instances of misconduct towards journalists. ECF No. 227.

Plaintiffs are entitled to rely on this evidence. And it is not a problem that some of the uncontroverted evidence cited in Plaintiffs' complaint would need to come from firsthand witnesses in order to overcome a hearsay or foundation objection at trial. Evidence need not be presented in a trial-ready admissible form at the class-certification stage. *See In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 611, 614 (8th Cir. 2011); *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004 (9th Cir. 2018). This Court may properly rely on the evidence exhaustively detailed in Plaintiffs' most recent complaint.

**2.      The City's Overbreadth, Standing, and Ascertainment Arguments Lack Merit.**

The City challenges Plaintiffs' proposed class as violating Rule 23's implicit overbreadth, standing, ascertainment requirements. The shared premise of the City's quarrel on these three points is the claim that only journalists who have already been shot, arrested, beaten, gassed or threatened by MPD may qualify as a class member to seek prospective injunctive relief against MPD's unlawful policy of targeting journalists. ECF No. 378 at 26-29. That premise is wrong.

*Any journalists* operating in Minneapolis are entitled to equitable relief if their "injury or threat of injury [is] 'real and immediate.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983) (citations omitted). The City's "assertion presupposes that a plaintiff must have suffered an injury in the past in order to challenge the future enforcement of an unconstitutional [policy or custom], and of course, that is not the law." *Richardson v. Texas Secretary of State*, --- F. Supp. 3d ----, No. SA-19-cv-00963, 2020 WL 5367216, at *27 n.33 (W.D. Tex. Sept. 8, 2020). Indeed, The City's position would make any pre-enforcement challenge to an unconstitutional statute, rule, or policy impossible. This, of

course, is not the law either. *See Minnesota RFL Republican Farmer Labor Caucus v. Freeman*, No. 19-cv-1949, --- F. Supp. 3d ----, 2020 WL 5512509, at *2 (D. Minn. Sept. 14, 2020) (standards for pre-enforcement challenges).

Properly framed, it is clear why the City's objections on this point fail. The class is not overbroad because all journalists operating in Minneapolis have standing to challenge the prospective application of MPD's policy. Their threat of injury "[is] real and immediate." *Lyons*, 461 U.S. at 101–02. As this Court held in its order granting a preliminary injunction, Plaintiffs have alleged numerous past instances of constitutional violations, these violations chill the rights of members of the press as a group, and "the threat of imminent future interactions between [law enforcement] and members of the press persists." ECF No. 243 at 20.

And contrary to the City's claim, the implied requirement of ascertainability does not affect the validity of the proposed class. As a preliminary matter, "courts that have rejected or applied a relaxed approach to ascertainability in the context of a Rule 23(b)(2) class." *Murphy v. Piper*, No. CV 16-2623 (DWF/BRT), 2017 WL 4355970, at *6 (D. Minn. Sept. 29, 2017) (citing *Shelton v. Bledsoe*, 775 F.3d 554, 561 (3d Cir. 2015). But even more, class members "may be identified by reference to objective criteria." *McKeage v. TMBC, LLC*, 847 F.3d 992, 998 (8th Cir. 2017). The City provides no sound reason why the objective standard adopted by this Court for identifying journalists would not also adequately determine membership in Plaintiffs' proposed class. ECF No. 243 at 34.

3.    **The First Written 23(a) Requirement, Numerosity, Is Met by the Proposed Plaintiff Class.**

The City's numerosity arguments, ECF No. 378 at 29-30, suffer from the exact same flaws. Plaintiffs are not limited to the "25 individuals" the City concedes "were injured by the MPD." *Id.* at 30. The class of journalists entitled to seek prospective injunctive relief is not limited to these individuals. *Richardson*, 2020 WL 5367216, at *27.

Ironically, by trying to pare this case down to "only" 25 people, the City highlights the extraordinary number of incidents of misconduct supporting Plaintiffs' central allegation that MPD engaged in a "continuing, widespread, and persistent pattern of misconduct." *Tirado v. City of Minneapolis*, 521 F. Supp. 3d 833, 841 (D. Minn. 2021) (holding that the character and quantity of MPD attacks on the press was sufficient to establish *Monell* liability). All journalists are threatened by that same pattern of misconduct. They are therefore entitled to seek injunctive relief in this class action. And the City concedes that this broader group easily satisfies Rule 23's numerosity requirement.

4.    **The Proposed Plaintiff Class Meets the 23(a)(2) Requirement of Commonality.**

The gravamen of the City's response is its claim that Plaintiffs cannot seek classwide injunctive relief because their claims for damages vary from Plaintiff to Plaintiff. ECF No. 378 at 30. But the City's objection here misses the mark.

First, the City simply operates from the premise that it does not have a "continuing, widespread, and persistent pattern of misconduct" towards journalists. *Tirado*, 521 F. Supp. 3d at 841. But that is the central fighting issue in this case. And more, it is the central common, classwide issue warranting class certification: "[W]hether Plaintiffs'

constitutional deprivations were caused by an express policy, widespread custom, or deliberative act of a policymaking decision-maker causing the constitutional injuries" is a common question warranting classwide treatment. *Smith*, 240 F.R.D. at 283; *Ligon*, 288 F.R.D. at 72.

Second, and relatedly, the City focusses on the experiences of the named Plaintiffs, claiming that they are too heterogeneous to support class certification. This argument would have some force if Plaintiffs were seeking a damages class under Rule 23(b)(3). But what happened to each individual Plaintiff—indeed whether a Plaintiff suffered a past injury at all—is irrelevant to Plaintiffs' claim for injunctive relief. All that matters is that (1) Plaintiffs and class members wish to continue practicing journalism in Minneapolis and (2) MPD maintains an unlawful policy targeting journalists as a group. These are classwide question demanding classwide answers.

The City's discussion of *Dukes* is also misplaced. In *Dukes*, "[t]he Court found that the plaintiffs provided no evidence of a corporate policy or practice causing the discrimination other than a general policy of allowing supervisors to exercise discretion over pay and promotions." *Smith*, 240 F.R.D. at 282 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 355-56 (2011). *Dukes* contrasted that deficient showing with "proof of a defendant's 'general policy' of unlawful action [which] can justify class certification." Id. at 283 (citing *Dukes*, 564 U.S. at 353).

It is that latter kind of proof—proof of a defendant's general policy of unlawful action—that Plaintiffs present here. Better analogs for this case than *Dukes* are the decisions certifying classes to enjoin New York and Chicago's stop and frisk policies.

*Smith*, 240 F.R.D. at 283; *Ligon*, 288 F.R.D. at 72. Those case considered, and rejected, the precise argument the City presents here. For example, in *Smith*, the defendant claimed class certification was improper because of "highly individualized questions regarding whether any given stop violated the Fourth Amendment." *Smith*, 240 F.R.D. at 284. The Court correctly rejected this argument because the critical question was whether "continuing deliberate indifference to Fourth Amendment violations places Plaintiffs at risk of future injury." *Id.* at 285. That's equally true in this case.

Plaintiffs have shown that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2)..

**5.      The Proposed Plaintiff Class Additionally Meets the 23(a)(3) Requirement of Typicality.**

Defendant's objections to typicality are mostly a rehash on its commonality arguments. These points fare no better under the typicality rubric. Plaintiffs are typical of the class because they would benefit from injunctive relief in precisely the same way absent class members would benefit.

The only distinct attack on Plaintiffs' typicality is the City's claim that qualified immunity issues would preclude a finding of typicality. That claim is wrong.

"Qualified immunity does not apply to a claim for injunctive relief." *Hamner v. Burls*, 937 F.3d 1171, 1175 (8th Cir. 2019). It applies only to claims for damages. With respect to their claims to injunctive relief, then, Plaintiffs are perfectly typical of the class.

**6.      Adequacy Is Met by the Proposed Plaintiff Class.**

The City overplays its hand in claiming that a single discovery dispute in this case precludes the appointment of class counsel. The vast majority of relevant evidence in this case lies in the public record. Plaintiffs' counsel have also secured numerous records through public records requests, discovery from additional defendants, and experts. Moreover, Plaintiffs' counsel have spent thousands of hours litigating this case over a period of years. The City cannot plausibly claim that the conduct of counsel militates in favor of litigating each class members' claim individually.

**7.      Class Certification Is Appropriate Under Rule 23(b)(1).**

Although the City fails to mount much of a defense to certification under 23(b)(1) and (b)(2), class certification under these provisions is also warranted. Class certification is proper under Rule 23(b)(1) because the relief sought, if granted, must necessarily be applied collectively. Maintaining individual actions would result in "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct" for the City Defendants. Fed. R. Civ. P. 23(b)(1)(A). Similarly, because the members of the proposed class are bound together by their common identity as journalists, separate actions by individual journalists would, "as a practical matter," be "dispositive of the interests of the other [journalists] not parties" to the actions. Fed. R. Civ. P. 23(b)(1)(B). *See Gray v. County of Riverside*, EDCV 13–00444–VAP (OPx), 2014 WL 5304915 at *37 (C.D. Cal. Sep. 2, 2014) ("A 'core example' of an action under 23(b)(1)(A) is the 'situation in which many individuals, all challenging a single

government policy, bring separate suits for injunctive relief'") (quoting William B. Rubenstein, 2 *Newberg on Class Actions* § 4:11 (5th ed.)).

Here, class certification is appropriate because separate actions by individual class members would create a risk of individual adjudications "that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications." Fed. R. Civ. P. 23(b)(1)(B). Because any individual adjudication of Plaintiffs' claims would affect the rights of absent journalists, class certification is proper under Rule 23(b)(1)(B). *See Hilton v. Wright*, 235 F.R.D. 40, 53 (N.D.N.Y. 2006).

## 8.      Class Certification Is Appropriate Under Rule 23(b)(2).

Class certification is also appropriate under Rule 23(b)(2). When, as here, defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief…is appropriate respecting the class as a whole," class certification is warranted. Fed. R. Civ. P. 23(b)(2). And cases alleging pattern-and-practice civil rights violations entitling a group of people to injunctive relief are particularly appropriate for 23(b)(2) certification. *See, e.g.*, *Amchem Products*, 521 U.S. at 614 (noting that "[c]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of class actions permissible under Rule 23(b)(2)); *Ingles v. City of New York*, No. 01 Civ. 8279 (DC), 2003 WL 402565, at *8 (S.D.N.Y. Feb. 20, 2003) (emphasizing that Rule 23(b)(2) was *intended* to assist litigants in seeking "wide-spread institutional reform through injunctive…relief"); *Raymond v. Rowland*, 220 F.R.D. 173, 181 (D. Conn. 2004) (finding that class certification was appropriate in a case challenging a state agency's "broad, system-wide policies"); *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d

894, 897 (7th Cir. 1999) (noting that there is no doubt "Rule 23(b)(2) is well suited to pattern-or-practice suits"); *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1175 (8th Cir 1995) (finding that since a class sought injunctive relief against a set of the defendant's practices, "certification under section (b)(2) was appropriate").

This is precisely such a case. Class certification is appropriate under Rule 23(b)(2).

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for class certification should be granted.

Dated: September 8, 2022

s/Adam W. Hansen
Adam W. Hansen (#0391704)
Colin Reeves*
APOLLO LAW LLC
333 Washington Avenue North
Suite 300
Minneapolis, MN 55401
Telephone: (612) 927-2969
Fax: (419) 793-1804
adam@apollo-law.com

Karen G. Schanfield (#0096350)
Pari I. McGarraugh (#0395524)
FREDRIKSON & BYRON, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402-1425
Telephone: (612) 492-7000
kschanfield@fredlaw.com
pmcgarraugh@fredlaw.com

Kevin C. Riach (#0389277)
THE LAW OFFICE OF KEVIN C.
RIACH, PLLC

P.O. Box 270815
Vadnais Heights, MN 55127
Telephone: (612) 203-8555
kevin@riachdefense.com


Teresa Nelson (#269736)
AMERICAN CIVIL LIBERTIES UNION OF
MINNESOTA
P.O. Box 14720
Minneapolis, MN 55414
Telephone: (651) 529-1692
tnelson@aclu-mn.org

*\* admitted pro hac vice*
*Attorney for Plaintiffs*
*and the Proposed Classes*

12