## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

| | |
|---|---|
| Jared Goyette, Craig Lassig, Katie Nelson, Tannen Maury, Stephen Maturen, Edward Ou, Timothy Evans, Chris Tuite and The Communications Workers of America, On behalf of themselves and other similarly situated individuals, | Court File No. 20-cv-01302 (WMW/DTS) |
| Plaintiffs, | |
| v. | **MEMORANDUM OF LAW IN SUPPORT OF HENNEPIN COUNTY SHERIFF DAVID HUTCHINSON'S MOTION FOR SUMMARY JUDGMENT** |
| City of Minneapolis; Minneapolis Chief of Police Medaria Arradondo, in his individual and official capacity; Minneapolis Police Lieutenant Robert Kroll, in his individual and official capacity; Hennepin County Sheriff David Hutchinson, in his individual and official capacity; John Does 1-10, in their individual and official capacities; | |
| Defendants. | |

## **INTRODUCTION**

Hennepin County Sheriff David Hutchinson ("Sheriff Hutchinson") did not

become a party to this litigation until September 28, 2021, when Plaintiffs named him as

a defendant in their Third Amended Complaint ("TAC"). By then, Plaintiffs had litigated

this matter as a putative class action for nearly 16 months against the City of Minneapolis

and Minneapolis Chief of Police Medaria Arradondo ("City Defendants"); Minneapolis

Police Lieutenant Robert Kroll ("Kroll"); and Minnesota Department of Public Safety

Commissioner John Harrington and Minnesota State Patrol Colonel Matthew Langer

("State Defendants").

Discovery has now closed. Plaintiffs have moved this Court to certify a class against the City Defendants, but Plaintiffs have stipulated that they are not seeking to certify a class against Sheriff Hutchinson. In addition, four of the named Plaintiffs have stipulated to dismiss their claims against Sheriff Hutchinson with the exception of their civil conspiracy claims. All that remains in this case with regard to Sheriff Hutchinson, therefore, are the Section 1983 claims brought by individual Plaintiffs Craig Lassig, Stephen Maturen, Tannen Maury, Timothy Evans, and Chris Tuite and conspiracy claims brought by each named Plaintiff. But Plaintiffs have no evidence that Sheriff Hutchinson had any involvement in their alleged constitutional deprivations, and Plaintiffs similarly lack evidence to support their official capacity claims under *Monell* or *City of Canton*. Likewise, Plaintiffs have no evidence that Sheriff Hutchinson was involved in a conspiracy with the other Defendants. Plaintiffs' claims also fail for lack of standing and mootness. Sheriff Hutchinson is entitled to summary judgment.

## FACTS

A. *Sheriff Hutchinson did not take, direct, or observe specific law enforcement action toward Plaintiffs.*

Sheriff Hutchinson was elected to the office of Hennepin County Sheriff in 2018 and took office in January 2019. (Declaration of David P. Hutchinson ("Hutchinson Decl.") ¶ 2.) In that role, he led the Hennepin County Sheriff's Office ("HCSO") during its response to the protests and civil unrest following the murder of George Floyd in 2020 and the death of Daunte Wright in 2021. (*Id.* ¶ 3.) Sheriff Hutchinson provided leadership

and high-level decision-making for HCSO's response to the protests and civil unrest. (*Id.* ¶ 4.) He did not engage in or direct others to take specific law enforcement actions toward particular individuals such as specific detentions, arrests, or use of force. (*Id.*)

Sheriff Hutchinson has never detained, arrested, used force on, or taken any law enforcement action toward any individual Plaintiff, or any member of Plaintiff Communications Workers of America ("CWA"). (*Id.* ¶ 5.) Sheriff Hutchinson similarly has never directed or observed any law enforcement officer take a specific law enforcement action toward any individual Plaintiff or member of Plaintiff CWA. (*Id.* ¶¶ 6-7.) Sheriff Hutchinson did not reach any agreement – orally, in writing, or otherwise –to violate the constitutional rights of any individual Plaintiff or any member of Plaintiff CWA. (*Id.* ¶ 8.)

> **B. Sheriff Hutchinson is not aware of any violations of journalists' rights by HCSO employees, and Hennepin County does not authorize or tolerate unconstitutional acts by its employees.**

As Hennepin County Sheriff, Sheriff Hutchinson has not been aware of any instances in which an HCSO employee violated the constitutional rights of a journalist or member of the news media. (*Id.* ¶ 9.) HCSO deputies are well-trained and discipline is appropriately imposed when a deputy violates HCSO policy or the law. (*Id.* ¶ 10.)

It is the official policy of HCSO and Hennepin County that complaints against deputies are vigorously and immediately investigated and, where misconduct is detected, disciplinary action is taken against the offending deputy if appropriate. (Declaration of Matthew Hollihan ("Hollihan Decl.") ¶ 2.) Hennepin County and HCSO have no custom, policy, or practice authorizing or tolerating unconstitutional

conduct by deputies. (*Id.* ¶ 3.) There is no pattern of unconstitutional actions or other misconduct by HCSO deputies. (*Id.*)

Neither HCSO nor Hennepin County have any official or unofficial policy, custom, or practice of hiring or retaining deputies who have a history of violence, harassment, or misconduct, unconstitutional or otherwise, against citizens or property. (*Id.* ¶ 2.) Hennepin County and HCSO hire as licensed deputies only individuals licensed by the Minnesota Police Officers Standards and Training Board ("POST"). (*Id.* ¶ 4.) All applicants for licensed deputy positions must undergo a thorough HCSO background check. (*Id.*)

In addition to the training required by POST, Hennepin County provides significant supplemental training. (*Id.* ¶ 5.) When HCSO hires licensed deputies, they are required to participate in at least 120 hours of training. (*Id.*) This consists of classroom and hands-on training on topics such as crisis intervention and de-escalation, scenario-based training, standards for detention and arrest, and the use of force. (*Id.*) The training further focuses on the HCSO Policies and Procedures Manual ("Manual"). (*Id.*) The entire Manual is covered during new deputy training. (*Id.*) All HCSO licensed deputies are required to have working knowledge of, and to comply with, the Manual's rules. (*Id.*) The new deputy training also covers state statutes governing the use of force. (*Id.*)

Licensed deputies must attend forty-eight hours of in-service training tri-annually to maintain their licenses. (*Id.* ¶ 6.) The Employee Development Unit of HCSO is certified by POST to provide this continuing peace officer education. (*Id.*)

HCSO requires licensed deputies to attend at least sixteen hours of in-service training annually. (*Id.*) Training topics that are covered include standards for detention and arrest, use of force, crisis intervention and mental illness crises, autism, conflict management and mediation, and recognizing and valuing community diversity and cultural differences to include implicit bias. (*Id.*)

HCSO maintains an Internal Affairs Unit ("IAU") responsible for investigating allegations of deputy misconduct. (*Id.* ¶ 7.) The IAU promptly takes steps to investigate complaints of deputy misconduct and excessive force. (*Id.*) HCSO has disciplined numerous deputies for violation of HCSO policies. (*Id.* ¶ 8.) HCSO has suspended deputies and terminated deputies who were determined to have violated HCSO policies. (*Id.*)

*C. No evidence of any wrongdoing by Sheriff Hutchinson*

Plaintiffs have no evidence of any wrongdoing by Sheriff Hutchinson. Only four plaintiffs – Craig Lassig, Stephen Maturen, Tannen Maury, and Timothy Evans – have even brought specific allegations against HCSO employees, and no plaintiff has any evidence that Sheriff Hutchinson had any involvement in their claimed constitutional deprivations.

1. <u>On May 30, 2020, Plaintiffs Lassig, Maturen, and Maury were arrested by another law enforcement agency and then transported to jail, cited and released by HCSO employees.</u>

Lassig submitted a declaration in this action (Doc. 31-6) in which he describes himself, along with Maturen and Maury, being arrested by unidentified law enforcement officers on May 30, 2020. Lassig states that he, Maturen, and Maury were

transported to the Hennepin County Jail, and that they were cited and released from custody after approximately two hours. (*Id.*) Lassig's declaration does not specify which law enforcement agencies he encountered that day, but the TAC states that he claims that he, Maturen, and Maury were arrested by either the Minneapolis Police Department or Minnesota State Patrol. (TAC ¶ 206.)

As described in Sheriff Hutchinson's Answers to Plaintiffs' Interrogatories, the Minnesota State Patrol arrested Lassig, Maturen, and Maury. (Hutchinson Decl., Ex. 1, p. 4.) Shortly thereafter, the Minnesota State Patrol transferred custody of Lassig, Maturen, and Maury to HCSO, and two HCSO deputies transported them to the Hennepin County Adult Detention Center ("ADC"). (*Id.*) Once at the ADC, Lassig, Maturen, and Maury were cited and released without being booked into jail. (*Id.*)

Given the uncertain, rapidly evolving, and dangerous circumstances in Minneapolis at the time that the Minnesota State Patrol made the arrest of Lassig, Maturen, and Maury, HCSO employees were not able to obtain arresting officer information from the Minnesota State Patrol either prior to or after the transport. (*Id.*) Therefore, the names of the two HCSO deputies that transported Lassig, Maturen, and Maury appear on the relevant authority to detain forms as "arresting officers" and "transport officers" despite the fact that HCSO employees did not arrest them. (*Id.*) Similarly, their citations were completed and signed by HCSO employees. (*Id.*)

As discussed above in Part A, Sheriff Hutchinson had no involvement in the arrest, transport, citation, or release of Lassig, Maturen, and Maury. He has no personal knowledge of the HCSO employees' actions with regard to Lassig, Maturen, and

Maury and obtained the information for his interrogatory answers based on information gathered after he was named as a defendant in this action. (Hutchinson Decl. ¶ 11.)

> 2. On April 16, 2021, Plaintiff Timothy Evans was photographed being detained by an HCSO deputy.

Plaintiff Timothy Evans has signed two conflicting declarations regarding his encounters with law enforcement on April 16, 2021. The first was signed on April 16, 2021, and alleges that the Minnesota State Patrol was the law enforcement agency that detained and used force on him. (*See* Declaration of Sarah McLaren ("McLaren Decl."), Ex. 1.) Evans did not file this declaration, but it contains the caption for this action and remains publicly available on the ACLU Minnesota website. (McLaren Decl. ¶ 3, Ex. 1.)

On May 3, 2021, Evans signed an amended declaration that, for the first time, alleged that he believed that "it now appears at least possible, if not likely, that the first officer that assaulted me was from [HCSO]." (Doc. 126, ¶ 11.) Evans further stated that he is "unsure of the agency of the other officers." (*Id.*) Evans's amended declaration was submitted in support of Plaintiffs' motion for a preliminary injunction motion against the State Defendants. (Doc. 120.)

In his most recent declaration, Evans alleges that that he was covering the protests outside the Brooklyn Center Police Department the evening of April 16, 2021, that he was carrying two cameras, and that he was wearing a press credential on a lanyard and had a press sticker on his backpack. (Doc. 126, ¶ 2.) Evans claims that, after an unlawful assembly was announced by law enforcement, unidentified law enforcement officers

"rushed the crowd" and indiscriminately tackled and pepper sprayed "everyone." (*Id.* ¶ 3.) At this time, Evans alleges he moved backward "to try and get away from the scrum while still taking pictures." (*Id.*) Evans next alleges that an officer approached rapidly and "bear sprayed" Evans while Evans was taking photographs. (*Id.* ¶ 4.) Evans then claims that another officer ordered Evans to the ground and "tackled" him. (*Id.*)

Evans alleges that an unidentified officer pinned Evans to the ground, struck Evans in the face, forced Evans onto his stomach, ripped Evans's press credential from his neck, and threw the credential on the ground. (*Id.* ¶ 5.) Evans then claims that he had another encounter with an unidentified officer in which the officer hit Evans on the back of the head and "smashed" the left side of Evans's face into the ground. (*Id.* ¶ 6.) Evans alleges that he was then zip-tied by unidentified officers. (*Id.*) Evans further alleges that an unnamed officer began to walk away with Evans's press credential but returned it at Evans's request. (*Id.* ¶ 7.) This unnamed officer and "the other officer" then sat Evans on the curb in zip ties. (*Id.*) Evans was then released by a female officer from an unknown law enforcement agency and Evans went home. (*Id.* ¶¶ 8-9.)

As discussed above in Part A, Sheriff Hutchinson had no involvement in any encounter between law enforcement and Evans. Based on information gathered after Sheriff Hutchinson was named as a defendant in this action, in response to Plaintiffs' interrogatories, Sheriff Hutchinson identified two HCSO employees who appear in a photograph that Plaintiffs allege depicts Evans being detained. (Hutchinson Decl. ¶ 11.) A similar photograph appears at paragraph 242 of the TAC. (Doc. 228.) Sheriff Hutchinson has no personal knowledge of any HCSO employees' actions with regard to

Evans. (Hutchinson Decl. ¶ 11.)

*D. Procedural history.*

Plaintiff Goyette commenced this purported class action on June 2, 2020, against the City Defendants, Kroll, and the State Defendants. (Doc. 1.) Goyette moved for a TRO and class certification, and his motions were denied without prejudice. (Doc. 35.)

Plaintiffs filed a second motion for a TRO against the State Defendants on April 14, 2021. (Doc. 94.) This Court granted the motion and subsequently held an evidentiary hearing on Plaintiffs' motion for a preliminary injunction. (Docs. 105, 189.)

While Plaintiffs' motion for a preliminary injunction was pending, on September 28, 2021, Plaintiffs filed their TAC, which, for the first time, included Sheriff Hutchinson as a defendant. (Doc. 228.) In the TAC, Plaintiffs bring six claims under Section 1983 against Sheriff Hutchinson in his individual and official capacity: (1) First Amendment – free speech, free press, free assembly; (2) First Amendment – retaliation; (3) Fourth Amendment, unlawful seizure and excessive force; (4) Fourteenth Amendment – due process; (5) civil conspiracy; and (6) failure to intervene. (*Id.*)

On October 28, 2021, this Court granted Plaintiffs' motion for a preliminary injunction against the State Defendants. (Doc. 243.) Plaintiffs have never sought a preliminary injunction against Sheriff Hutchinson or Hennepin County. Plaintiffs later reached a settlement with the State Defendants, which includes a monitored injunction. (Docs. 316, 329.)

The magistrate judge denied Plaintiffs' motion to extend the deadlines in the governing scheduling order, which this Court affirmed. (Docs. 317, 358.) While

Plaintiffs' motion to extend was pending, Plaintiffs and Sheriff Hutchinson served discovery requests on each other. Sheriff Hutchinson responded to Plaintiffs' discovery requests the day before the magistrate judge denied the Plaintiffs' motion. (Doc. 359, p.4.) Plaintiffs did not respond to Sheriff Hutchinson's discovery requests. (*Id*.) Plaintiffs have taken no fact depositions nor have they conducted expert discovery related to their claims against Sheriff Hutchinson.

Plaintiffs again moved to amend the scheduling order to file a Fourth Amended Complaint. (*Id.*, p.5.) In their proposed Fourth Amended Complaint, Plaintiffs sought to join as individual defendants the two HCSO employees pictured in the photo appearing at paragraph 242 of the TAC. (*Id.*, p.4.) Plaintiffs argued that "[a]bsent joinder . . . Plaintiff Evans will be forced to bring a separate lawsuit against the two proposed defendants." (*Id.*, p.11.) The magistrate judge denied Plaintiffs' motion, finding that Plaintiffs had not shown sufficient diligence to meet the good cause standard required to permit the amendment of the scheduling order. (*Id.*, p.11-12.) Plaintiffs did not appeal the magistrate judge's decision. Plaintiff Evans has not sought a voluntary dismissal to pursue a separate action against any individual HCSO employee.

Plaintiffs have moved this Court to certify a class against the City Defendants (Doc. 368), but Plaintiffs stipulated that they are not seeking to certify a class against Sheriff Hutchinson. (Doc. 367.) In moving for class certification, Plaintiffs stated that "effective injunctive relief must extend beyond the Plaintiffs." (Doc. 370 at 21). Plaintiffs emphasized that the prospective relief they seek is for "a *group*"—not individual—injury. (*Id.* at 39) (emphasis in original). Plaintiffs also asserted that

injunctions for individual plaintiffs would be "unworkable and unrealistic for law enforcement to identify *specific persons*—like named Plaintiffs—and treat them, and only them, according to the terms of individual injunctions." (*Id.* at 35) (emphasis in original). At oral argument, Plaintiffs' counsel further cautioned against individual injunctions, stating that "absent class certification it's going to get messy." (McLaren Decl., Ex. 2 at 17).

Given Plaintiffs' lack of evidence, Sheriff Hutchinson met and conferred with Plaintiffs in an effort to narrow the number of issues and parties before the Court. (McLaren Decl. ¶ 5.) Plaintiffs were not willing to dismiss their claims for injunctive relief. (*Id.* ¶ 6.) Plaintiffs Goyette, Nelson, Ou, and CWA were unwilling to dismiss their claims for civil conspiracy, despite the fact that they have no evidence of any involvement by HCSO or Sheriff Hutchinson in their claimed constitutional deprivations. (*Id.*) Plaintiff Tuite was unwilling to dismiss any of his claims against Sheriff Hutchinson, despite the fact that he has repeatedly represented to this Court that his injuries were caused by the Minnesota State Patrol. (*Id.*; *see* Docs. 127, 172.) Plaintiffs stipulated to dismiss claims by Goyette, Nelson, Ou, and CWA with the exception of their civil conspiracy claims. (Doc. 361.)

Sheriff Hutchinson now moves for summary judgment.

## **ARGUMENT**

### I.  **Summary Judgment Standard**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a). In addition, Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A sufficient showing is not made by the "mere existence of a scintilla of evidence in support of the plaintiff's position . . .; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "At the summary judgment stage, the facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). A dispute of fact is "genuine" if a factfinder could reasonably determine the issue in the non-moving party's favor. *Zayed v. Associated Bank, N.A.*, 913 F.3d 709, 714 (8th Cir. 2019). A party opposing summary judgment cannot rest upon their allegation but "must set forth specific facts showing that there is a genuine issue for trial and must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Ingrassia v. Schafer*, 825 F.3d 891, 896 (8th Cir. 2016) (citation omitted). Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

**II.    Plaintiffs' Individual Capacity Claims Fail.**

**A.  Sheriff Hutchinson is entitled to summary judgment on Plaintiffs' First, Fourth, and Fourteenth Amendment claims.**

"[N]either municipalities nor government officials may be held liable for unconstitutional conduct under a theory of respondeat superior." *Rogers v. King*, 885 F.3d 1118, 1122 (8th Cir. 2018). "Government officials are personally liable only for their own misconduct; thus, the doctrine of qualified immunity requires an individualized analysis of each officer's alleged conduct." *S.M. v. Krigbaum*, 808 F.3d 335 (8th Cir. 2015). A supervisor may be held liable "if he directly participated in the constitutional violation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). Absent direct participation, "[a] supervising officer may be liable for the actions of his subordinates when he (1) had notice of a pattern of unconstitutional acts committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing injury to the plaintiffs." *Sturgeon v. Faughn*, 36 F.4th 804, 809 (8th Cir. 2022) (internal quotation marks omitted). Allegations of generalized notice are insufficient and the prior misconduct must be very similar to the conduct giving rise to liability. *S.M.*, 808 F.3d at 340 (holding that a supervisor's knowledge that a subordinate officer had previously violated jail policy by taking drug court participants out for smoking breaks was not sufficient for supervisory liability to attach for subordinate's subsequent sexual assaults of participants). A supervisory role is itself an insufficient basis on which to rest Section 1983 individual liability. *See Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987) (noting that "a

warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement" for purposes of individual capacity Section 1983 claim).

The Eighth Circuit routinely grants summary judgment in favor of supervisors on Section 1983 claims, where, like here, the plaintiff cannot prove a connection between the supervising officer and the alleged misconduct. For example, in *Sturgeon*, the Eighth Circuit reversed the denial of summary judgment against a police chief and mayor stemming from a subordinate officer's allegedly unlawful traffic stops. 36 F.4th at 809-10. Even though prior complaints had been lodged against the subordinate officer, the police chief and mayor believed, based on internal investigations, that the prior complaints were unfounded. *Id.* Consequently, the panel held that plaintiff had no evidence of deliberate indifference and remanded for entry of summary judgment in the police chief's and mayor's favor. *Id.* Similarly, in *Ripson v. Alles*, the Eighth Circuit reversed the denial of summary judgment on an unlawful arrest claim against a police chief where the unlawful arrest was performed by a subordinate officer. 21 F.3d 805, 808-09 (8th Cir. 1994). The panel observed that the police chief had not personally investigated the offenses leading to the plaintiff's arrest, was not present at the arrest, and was not aware that the arrest had occurred until after the fact. *Id.* The police chief's act of signing and notarizing the complaint after the arrest was insufficient to establish a connection between the police chief and the alleged deprivation of the plaintiff's constitutional rights. *Id.*; *see also Weed v. Jenkins*, 873 F.3d 1023, 1029 (8th Cir. 2017) (affirming grant of summary judgment to state highway patrol superintendent where superintendent was not personally involved in plaintiff's arrest at protest).

Here, Plaintiffs Tuite, Lassig, Maturen, Maury and Evans bring Section 1983 claims alleging violations of the First, Fourth, and Fourteenth Amendments. No Plaintiff has any evidence that Sheriff Hutchinson directly participated in the alleged violations. Plaintiff Tuite has no evidence that any HCSO employee, let alone Sheriff Hutchinson, was involved in his claimed injuries. Lassig, Maturen, and Maury have no evidence that Sheriff Hutchinson had personal involvement with their transport to the ADC and subsequent citation and release. Evans has no evidence that Sheriff Hutchinson was even aware of Evans's encounter with law enforcement. In fact, Sheriff Hutchinson did not participate, direct, or observe any law enforcement action toward Plaintiffs. (Hutchinson Decl. ¶¶ 5-7.)

Similarly, no Plaintiff has any evidence that Sheriff Hutchinson was deliberately indifferent or tacitly authorized wrongful acts after receiving notice of a pattern of misconduct. The record evidence shows that Sheriff Hutchinson has no notice of any prior pattern of misconduct and HCSO Deputies are well-trained and disciplined appropriately. (*Id.* ¶¶ 9-10; *see generally* Hollihan Decl.) Given the utter lack of evidence that Sheriff Hutchinson either directly participated in the alleged constitutional violations or chose to ignore a past pattern of misconduct, Sheriff Hutchinson is entitled to summary judgment on Plaintiffs' First, Fourth, and Fourteenth Amendment claims.

### B.  Each Plaintiff's conspiracy claim fails.

"To prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the

conspiracy; and (3) that the overt act injured the plaintiff." *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008). Evidence of specific facts showing a "meeting of minds" among alleged conspirators is required. *See Barstad v. Murray Cnty.*, 420 F.3d 880, 887 (8th Cir. 2005) (citation omitted). At summary judgment, a plaintiff cannot rest on their "allegations of a conspiracy to get to a jury without any significant probative evidence tending to support the complaint." *Anderson*, 477 U.S. at 249 (citation omitted). Here, because the record cannot support a genuine, material issue of fact, Plaintiffs' conspiracy claims must be dismissed. *See In re Scott Cnty. Master Docket*, 672 F. Supp. 1152, 1190-91 (D. Minn. 1987) (concluding that lack of substantive evidence of conspiracy necessitated summary judgment for defendants).

Plaintiffs have put forth no evidence that would show how it is they believe Sheriff Hutchinson conspired with other Defendants. Plaintiffs lack the requisite evidence of a "meeting of minds" among the alleged conspirators. *See Samuelson v. City of New Ulm*, No. 03-2865 (JRT/FLN), 2007 WL 1576115, at *2 (D. Minn. May 31, 2007) (granting summary judgment where no evidence of meeting of minds). Plaintiffs have not pointed to a specific conversation or document or any evidence (including any declaration submitted by Plaintiffs in this action) that would allow a reasonable jury to find that Sheriff Hutchinson entered into an agreement with multiple other Defendants for the purpose of depriving the individual Plaintiffs of their constitutional rights. In fact, the only record evidence relating to Plaintiffs' conspiracy claims is Sheriff Hutchinson's sworn declaration affirming that he did not make any agreement whatsoever with Defendants to violate the constitutional rights of Plaintiffs. (Hutchinson Decl. ¶ 8.)

**C.  Plaintiffs cannot maintain their failure to intervene claims.**

A law enforcement officer who fails to intervene to prevent excessive force by another officer may be held individually liable for violating the Fourth Amendment. *Hollingsworth v. City of St. Ann*, 800 F.3d 985, 991 (8th Cir. 2015). To establish a failure to intervene claim, the plaintiff must show that the officer "observed or had reason to know that excessive force would be or was being used." *Id.* (internal quotation marks omitted). A plaintiff must also show that the officer had an opportunity to intervene and failed to do so. *See Krout v. Goemmer*, 583 F.3d 557, 565-66 (8th Cir. 2009) (setting forth case law establishing duty to intervene only where law enforcement officer has "opportunity to do so").

In addition, the Eighth Circuit has only recognized a failure to intervene claim within the context of an underlying instance of excessive force. *See Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012) ("A law enforcement officer who knows another officer is using excessive force has a duty to intervene . . . . We have not recognized a duty to intervene to prevent other constitutional violations."); *Tillis v. City of Minneapolis*, Civil No. 12–324 ADM/TNL, 2013 WL 6062187, at * 7 (D. Minn. Nov. 18, 2013) ("The Eighth Circuit has not recognized a duty to intervene to prevent constitutional violations other than in cases of excessive force.").

Here, Plaintiffs Lassig, Maturen, and Maury make no claims that excessive force was used against them and therefore cannot maintain any failure to intervene claim. *See Livers*, 700 F.3d at 360. Plaintiffs Evans and Tuite have made no allegation and also have no evidence that Sheriff Hutchinson had an opportunity to intervene in any force used on them. Sheriff Hutchinson did not use force on Plaintiffs, and he did not direct or observe

any force used on Plaintiffs. (Hutchinson Decl. ¶¶ 5-7.) Plaintiffs' failure to intervene claims against Sheriff Hutchinson fail.

**D.  At a minimum, Sheriff Hutchinson is entitled to qualified immunity.**

The doctrine of qualified immunity "ensures that government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Faulk v. City of St. Louis*, 30 F.4th 739, 744 (8th Cir. 2022) (internal quotation marks omitted). Public officials are, therefore, "entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, __U.S.__, 138 S.Ct. 577, 589 (2018) (internal quotation marks omitted).

The conduct of a public official violates clearly established law only when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The Supreme Court has concluded that

> '[c]learly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful. In other words, existing law must have placed the constitutionality of the officer's conduct 'beyond debate.' This demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'

*Wesby*, 138 S.Ct. at 589-590 (internal citations omitted); *see also Hunter v. Bryant*, 502

U.S. 224, 229 (1991) (observing that qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law") (internal quotation marks and citation omitted). "As an immunity from suit rather than a mere defense to liability ... [qualified immunity] is effectively lost if a case is erroneously permitted to go to trial." *Faulk*, 30 F.4th at 744 (internal quotation marks omitted).

As discussed above, Plaintiffs have no evidence that Sheriff Hutchinson violated their constitutional rights. The evidence shows that Sheriff Hutchinson provided leadership and high-level decision-making for HCSO during the agency's response to the protests and civil unrest following George Floyd's murder and Daunte Wright's death. (Hutchinson Decl. ¶¶ 3-4.) Sheriff Hutchinson did not engage in or direct others to take specific law enforcement actions toward particular individuals such as specific detentions, arrests, or use of force. (*Id.*) These actions do not violate any Plaintiff's constitutional rights, let alone a clearly-established right. At a minimum, Sheriff Hutchinson is entitled to qualified immunity.

## III.    Plaintiffs' Official Capacity Claims Fail.

A suit against Sheriff Hutchinson in his official capacity is in essence a suit against Hennepin County. When a plaintiff sues a government actor in his official capacity, it "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166.

There is no *respondeat superior* liability under Section 1983, and a municipality like Hennepin County may not be held liable for a constitutional violation unless "the violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Jackson v. Stair*, 944 F.3d 704, 709 (8th Cir. 2019) (internal quotation marks omitted); *see also City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Even assuming, *arguendo*, that Plaintiffs had otherwise stated a constitutional violation against Sheriff Hutchinson in this action, which they have not, Plaintiffs have no evidence to support their claims for municipal liability against Hennepin County.

### A.    Plaintiffs have no evidence that their alleged injuries were caused by the application of a specific Hennepin County policy, custom, or practice.

Under *Monell*, a plaintiff must offer evidence to support the conclusion that Hennepin County had an unconstitutional policy or custom that caused the alleged injuries. "A 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999) (citations omitted). A governmental custom may also be the basis for liability, but a plaintiff must ultimately prove: (1) the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees"; (2) "[d]eliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct"; and (3) that plaintiff was injured "by acts pursuant to the governmental entity's custom", *i.e.*, proof

"that the custom was the moving force behind the constitutional violation." *Id.* To prove an unconstitutional custom, a plaintiff must show that "officials had notice of prior incidents of . . . misconduct and had deliberately failed to act on this knowledge." *Harris v. City of Pagedale*, 821 F.2d 499, 504 (8th Cir. 1987).

Here, Plaintiffs allege in a conclusory manner, that Hennepin County, along with the City of Minneapolis and State of Minnesota, had "a policy, practice or custom" of using unlawful force, failing to provide warnings prior to using force, and unlawfully arresting and detaining members of the news media. (TAC ¶¶ 269-71.) Plaintiffs have not, and cannot, identify any official policy of Hennepin County that permits violations of constitutional rights. On the contrary, no such policy exists. (Hollihan Decl. at ¶¶ 2-3.) Hennepin County policy does not permit deputies to engage in unlawful or unconstitutional conduct; in contrast, it prohibits such conduct. (*Id.*) In addition, all complaints of alleged misconduct are vigorously investigated. (*Id.* at ¶ 2.) When allegations are substantiated, HCSO takes appropriate action toward the offending deputy, including suspension and termination. (*Id.* at ¶ 8.) In light of the County's commitment to the protections of individuals' constitutional rights, Plaintiffs cannot identify any improper municipal policy, much less prove that any purported policy was the moving force behind any constitutional violation.

Plaintiffs similarly cannot show that an unofficial custom caused their injuries. Plaintiffs have no evidence of a "continuing, widespread, persistent pattern of unconstitutional misconduct" by Hennepin County employees. *See Mettler*, 165 F.3d at 1204. Plaintiffs also cannot show that "[County] officials had notice of prior incidents of .

. . misconduct and had deliberately failed to act on this knowledge." *See Harris*, 821 F.2d at 504. The County has no custom or practice of authorizing or tolerating unconstitutional conduct. (Hollihan Decl. at ¶ 3.) Plaintiffs cannot prevail against the County under *Monell*.

**B.    Plaintiffs' failure to train claims fail.**

Likewise, Plaintiffs have no evidence to support their failure-to-train-and-supervise claims against Hennepin County under Section 1983 and *City of Canton*. In some "limited" circumstances, a municipality's "decision not to train employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). But to prevail on a claim based on a failure to train and supervise, a plaintiff must show: (1) the municipality's training practices were inadequate; (2) the municipality was deliberately indifferent to the rights of others in adopting those training practices "such that the failure to train reflects a deliberate or conscious choice" by the municipality; and (3) the inadequate training caused a constitutional deprivation. *Parrish*, 594 F.3d at 997 (citations omitted).

"A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (internal quotation marks and citation omitted); *see also Ulrich v. Pope County*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming dismissal of inadequate supervision and training practices claim where plaintiff supported claim only with own arrest and detention). However, the Supreme Court has left open the possibility,

"however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a [municipality] could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick*, 563 U.S. at 64.

Plaintiffs have no evidence that Hennepin County violated the Constitution by failing to train and supervise its employees. Plaintiffs have not identified any training or supervision practices that Hennepin County employed or failed to employ, no pattern of similar constitutional violations by untrained or unsupervised employees, and no facts suggesting a patently obvious constitutional violation that was caused by a failure to train or supervise employees. In fact, the County regularly and competently trains each deputy in federal and state law and law enforcement matters. Required County training includes sixteen hours of annual in-service training on various topics, including the standards for detention and arrest, proper use of force, conflict management, and implicit bias. (Hollihan Decl. at ¶ 6.) Plaintiffs' claims for failure to train must be dismissed.

## IV.   Plaintiffs' Claims Should Be Dismissed For Lack of Standing and Mootness.

Plaintiffs cannot invoke federal jurisdiction because they lack standing and their claims for injunctive relief are moot.

### A. Plaintiffs' claims should be dismissed for lack of standing.

Standing is a jurisdictional requirement that a plaintiff must establish as an "indispensable part of the plaintiff's case." *Lujan v. Def. of Wildlife*, 504 U.S. 555, 561 (1992). Standing exists only where there is an actual case or controversy. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). To have standing, a plaintiff must (1) have suffered an injury in fact, (2) establish a causal relationship between the challenged conduct and

the alleged injury, and (3) show that a favorable decision would "likely" redress the alleged injury. *Lujan*, 504 U.S. at 560-61. More than plausibility is required to survive a motion for summary judgment for lack of standing. *See Fair Isaac Corp. v. Experian Info. Sols. Inc.*, 645 F. Supp. 2d 734, 748-49 (D. Minn. 2009) (citing *United States v. SCRAP*, 412 U.S. 669, 689, n.15 (1973) (holding that summary judgment would be warranted on standing if allegations in pleadings were without support and raised no genuine issue of fact)). At the summary judgment stage, the party invoking federal jurisdiction bears the burden of setting forth evidence to establish the elements of standing. *Lujan*, 504 U.S. at 561. Finally, because "standing is not dispensed in gross . . . a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates*, *Inc.* __ U.S. __, 137 S. Ct. 1645, 1650 (2017) (citations omitted).

Plaintiffs cannot establish the elements for standing on four sets of claims: (1) civil conspiracy brought against Sheriff Hutchinson by each individual Plaintiff; (2) the remaining claims brought by Plaintiffs Tuite, Lassig, Maury, Maturen, and Evans against Sheriff Hutchinson in his individual and official capacity; (3) injunctive relief; and (4) declaratory relief.

### 1.  *Civil conspiracy*

Plaintiffs cannot satisfy the injury in fact, causation, or redressability elements on their civil conspiracy claims because they rely on bare allegations without the requisite specific support to establish an injury in fact, that any injury was caused by Sheriff Hutchinson's conduct, or that a favorable ruling would redress each Plaintiff's claimed

injury. *See Park v. Forest Serv.*, 205 F.3d 1034, 1036-37 (8th Cir. 2000).

Plaintiffs' claims of conspiracy are too speculative to satisfy the injury in fact requirement. Plaintiffs have set forth no evidence to show that Sheriff Hutchinson came to an agreement with other Defendants to personally deprive them of their constitutional rights. As the Eighth Circuit has held, an "injury-in-fact is a harm that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000) (citation omitted). Without more, Plaintiffs cannot satisfy the injury-in-fact requirement.

By bringing individual claims of conspiracy, rather than seeking to certify a class against Sheriff Hutchinson, each Plaintiff must show that their injury was "fairly traceable" to Sheriff Hutchinson's conduct. The individual Plaintiffs cannot make this showing. For instance, Plaintiff Goyette's declarations speak only to in-the-field conduct by the Minneapolis Police Department and the Minnesota State Patrol with zero mention of HCSO employees, let alone Sheriff Hutchinson. (*See* Docs. 9, 97.) Additionally, no other Plaintiff points to specific facts that would show conspiratorial conduct by Sheriff Hutchinson that is connected to the injury claimed. Nor can Plaintiffs show that a favorable outcome would redress their injury.

At an earlier stage in this matter, this court found that plaintiffs had standing to bring a civil conspiracy claim against the State Defendants. *See Goyette v. City of Minneapolis*, No. 20-cv-1302 (WMW/DTS), 2021 WL 3222495, at *5 (D. Minn. July 29, 2021). But that finding was made before Sheriff Hutchinson was a party and analyzed the plausibility of Plaintiffs' allegations at the pleading stage, not at summary judgment,

where each Plaintiff must set forth evidence to establish the elements of standing. *Lujan*, 504 U.S. at 561. Plaintiffs cannot do so here.

> 2. *Remaining claims brought by Plaintiffs Tuite, Lassig, Maury, Maturen, and Evans*

Plaintiffs Tuite, Lassig, Maury, Maturen, and Evans cannot satisfy the elements of standing for their remaining claims against Sheriff Hutchinson. None can show an injury in fact, that Sheriff Hutchinson caused their alleged injury, or that a favorable outcome would redress their alleged injury.

First, Plaintiffs Tuite, Lassig, Maury, Maturen, and Evans cannot show that they were themselves injured by Sheriff Hutchinson, or even that they interacted in any fashion with Sheriff Hutchinson. In this court's earlier finding that Plaintiffs had standing to bring claims against the State Defendants, the court credited "ongoing" documented incidents as alleging concrete, not speculative, injury in fact. *Goyette*, 2021 WL 3222495, at *5. The opposite is true here where not only must Plaintiffs show evidence, not just allegations, but where the individual plaintiffs cannot establish ongoing conduct by Sheriff Hutchinson.

Further, even if Plaintiffs Tuite, Lassig, Maury, Maturen, and Evans could point to an actual injury, they cannot show that the alleged injury was traceable to a specific act by Sheriff Hutchinson in his individual or official capacity, which is fatal to standing.[1]

---

[1] Although Plaintiffs Lassig, Maury, Maturen, and Evans make vague and unsubstantiated allegations against HCSO employees, Tuite makes no allegations against HCSO or Sheriff Hutchinson, and, instead, blames the Minnesota State Patrol for his claimed injuries. (*See* Docs. 127, 172.)

Therefore, Plaintiffs Tuite, Lassig, Maury, Maturen, and Evans cannot show a causal connection to Sheriff Hutchinson. Without more, there is also nothing for the court to redress. Plaintiffs lack standing and their claims should be dismissed.

### 3. Injunctive relief.

As the Eighth Circuit has noted, "a federal court is not the proper forum to press" claims for an injunction unless "the prerequisites for injunctive relief are satisfied." *Smook v. Minnehaha Cnty.*, 457 F.3d 806, 816 (8th Cir. 2006) (citation omitted). A plaintiff seeking injunctive relief satisfies the injury-in-fact element by showing that the plaintiff faces a threat of ongoing or future harm. *Park*, 205 F.3d at 1037. An injury in fact must be concrete, particularized, and actual or imminent. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting Lujan, 540 U.S. at 560). The possibility of injury is not sufficient to confer standing. *Minn. Auto Dealers Ass'n v. Minn. by & through Minn. Pollution Control Agency*, 520 F. Supp. 3d 1126, 1136 (D. Minn. 2021) (stating purpose of imminence requirement is to ensure "alleged injury is not too speculative for Article III purposes—that the injury is *certainly impending*") (emphasis in original) (citation omitted). "[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Smook*, 457 F.3d at 816 (citation omitted).

Because the Plaintiffs have failed to show specific facts suggesting that they personally face a threat of ongoing harm or likelihood of future injury from Sheriff Hutchinson or Hennepin County, the Plaintiffs lack standing. *See Spokeo, Inc.*, 578 U.S. at 339 (stating that plaintiff must show they personally suffered actual or threatened

injury to establish standing) (citations omitted). Moreover, Plaintiffs have put forth no evidence related to any conduct of Sheriff Hutchinson or the HCSO after April 2021—more than 19 months ago—which on its face reveals that Plaintiffs cannot show actual or threatened injury. Even if Plaintiffs attempted to leverage alleged past conduct of Sheriff Hutchinson or employees of the HCSO, such evidence also would not suggest the requisite "real and immediate threat" to Plaintiffs of a future injury. *See O'Shea*, 414 U.S. at 495-96 (noting past exposure to illegal conduct not sufficient to confer standing for prospective relief). Therefore, Plaintiffs cannot show that they face a real and immediate threat of future injury.

In addition, Plaintiffs cannot show a causal connection between the injuries that they allege and the conduct of Sheriff Hutchinson or anyone at the HCSO, which is required. Finally, the injunctive relief sought would not redress Plaintiffs' alleged injuries. Plaintiffs freely admitted when seeking class certification against the City Defendants (which they have not sought against Sheriff Hutchinson) that the injury for which prospective relief was sought was a "*group* injury." (Doc. 370 at 39) (emphasis in original). Plaintiffs have failed to show why what was a collective injury in August 2022 is now an individual injury in need of individual injunctions. Plaintiffs further stated that individual injunctions would be "unworkable and unrealistic" because law enforcement could not possibly treat each named individual Plaintiff according to the terms of individual injunctions. (*Id.* at 35). Therefore, the multiple individual injunctions sought by Plaintiffs cannot satisfy redressability.

*4. Declaratory relief*

Plaintiff must show specific facts to meet the same Article III standing elements

when seeking declaratory relief as they do in their request for injunctive relief; Sheriff

Hutchinson and Hennepin County therefore incorporate their arguments in Part IV.A.3,

*supra*, as to Plaintiffs' requests for declaratory relief. In addition, Plaintiffs must seek

more than a retrospective opinion that Plaintiffs were harmed by the defendant. *See Dean*

*v. Minn. Dep't of Human Servs.*, No. 16-cv-478 (PJS/LIB), 2016 WL 6821127, at *4 (D.

Minn. Oct. 26, 2016).

Here, Plaintiffs ask the Court to declare that Sheriff Hutchinson "violated the First,

Fourth, and Fourteenth Amendments." (Doc. 228, Prayer for Relief, at C.) As laid out

above, Plaintiffs have put forth no evidence that Sheriff Hutchinson or anyone from the

HCSO will in the future engage in any of the conduct for which Plaintiffs seek

declaratory relief. A declaration without a showing of concrete, imminent injury would

result in "a quintessential advisory opinion." *Missouri v. Yellen*, 39 F.4th 1063, 1070 (8th

Cir. 2022); *see also Godfrey v. State Farm Fire & Casualty Co.*, No. 18-cv-524

(JNE/TNL), 2019 WL 586675, at *3 (D. Minn. Feb. 13, 2019) ("Article III prohibits this

Court from issuing opinions that advise what the law would be based on hypothetical

statements of facts.").

In addition, as noted above, none of the Plaintiffs can show a causal connection

between the injury they allege and the alleged conduct of Sheriff Hutchinson or anyone

from the HCSO. Finally, for redressability to be satisfied, Plaintiff must show that there

is "some likelihood that the allegedly unlawful past conduct will recur." *Manos v. Fed.*

*Bureau of Prisons*, No. 18-cv-0427 (PJS/HB), 2020 WL 589441, at *4 (D. Minn. Jan. 14, 2020). Plaintiffs have failed to show any, let alone some, likelihood that Sheriff Hutchinson or the HCSO would now or in the future infringe on the First, Fourth, or Fourteenth Amendment rights of Plaintiffs. With no showing of likely future conduct by Sheriff Hutchinson to be addressed by the court via declaration, there is nothing to redress. Therefore, Plaintiffs' declaratory relief claims should be dismissed. *See United States v. Thomason*, No. 19-cr-05 (ECT/SER), 2020 WL 7041754, at *5 (D. Minn. Dec. 1, 2020) (holding redressability not satisfied where plaintiff sought "broad legal pronouncements that would settle no controversy between the Parties or remedy any harm" claimed).

### B. Each Plaintiff's injunctive relief claim is also moot.

Plaintiffs' injunctive relief claims are moot because a realistic threat of injury from Sheriff Hutchinson does not exist. "When, during the course of litigation, the issues presented in a case lose their life because of the passage of time or a change in circumstances .... and a federal court can no longer grant effective relief, the case is considered moot." *Haden v. Pelofsky*, 212 F.3d 466, 469 (8th Cir. 2000) (internal citation omitted). When a case is moot, courts "must refrain from reaching the merits because any opinion issued would be merely 'advisory' and rest on hypothetical underpinnings." *Missouri ex rel. Nixon v. Craig*, 163 F.3d 482, 484 (8th Cir. 1998).

The same set of circumstances that existed when Plaintiffs filed their complaint do not exist today. Plaintiffs cannot show that in the last 19 months any employee of HCSO, let alone Sheriff Hutchinson, has issued a dispersal order or used excessive force against

any journalist, including Plaintiffs. A recent district court opinion on claims brought by journalists and protest observers who asserted law enforcement violated their constitutional rights is instructive. Like the circumstances here, the district court noted that the injury that plaintiffs asserted could occur only if a protest were to happen that was then declared an unlawful assembly, that the unlawful assembly then resulted in enforcement action by law enforcement officers, that the enforcement action then resulted in excessive force or dispersal, and that excessive force or dispersal was directed at or near the plaintiffs. *Index Newspapers LLC v. City of Portland*, No. 3:20-CV-1035, 2022 WL 4466881, at *6 (D. Or. Sept. 26, 2022). "All these steps must occur despite the currently reduced crowd size and protest circumstances . . .", which "takes us into the area of speculation and conjecture." *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974)). Because the alleged injury was too speculative, the claims were mooted. *Id.* at *6-8. The same speculative series of events would need to play out here, where Plaintiffs have not alleged a single protest responded to by HCSO in more than 19 months. As in *Index Newspapers LLC*, injuries claimed by the individual Plaintiffs here are too speculative and, therefore, their injunctive relief claims should be dismissed as moot. For the same reasons, Plaintiffs' declaratory relief claims are moot. *See Hickman v. State of Missouri*, 144 F.3d 1141, 1142 (8th Cir. 1998) (stating that mootness requirements apply "with equal force to actions for declaratory judgment") (citations omitted).

In addition, by not seeking class certification against Sheriff Hutchinson, Plaintiffs appear to admit that their individual allegations of future injury are too speculative to provide each individual plaintiff with the legally cognizable interest necessary to support

ongoing claims for future injunctive relief. Plaintiffs asserted in moving for class certification against the City Defendants that "effective injunctive relief must extend beyond the Plaintiffs" and emphasized that the prospective relief they seek is for "a *group*"—not individual—injury. (Doc. 370 at 21, 39.) (emphasis in original). Plaintiffs also have specifically addressed how truly nonsensical injunctions for individual plaintiffs would be by describing such a notion as "unworkable and unrealistic for law enforcement to identify *specific persons*—like named Plaintiffs—and treat them, and only them, according to the terms of individual injunctions." (*Id.* at 35) (emphasis in original). Plaintiffs' counsel further cautioned the court against individual injunctions, stating that "absent class certification it's going to get messy." (McLaren Decl., Ex. 2 at 17). Yet, Plaintiffs declined to seek class certification against Sheriff Hutchinson, underscoring the lack of a legally cognizable interest capable of being remedied by individual injunctions where the claimed injury is collective, not individual.

## CONCLUSION

For all of the foregoing reasons, Sheriff Hutchinson respectfully requests that the Court grant his motion for summary judgment in its entirety.

Respectfully submitted,

Dated: December 1, 2022

**MICHAEL O. FREEMAN**
**Hennepin County Attorney**

By:/s/  *Sarah McLaren*
JAMES W. KEELER, JR.
(#0176199)
Sr. Assistant County Attorney
SARAH McLAREN (#0345878)
Assistant County Attorney
DEVONA L. WELLS (#0392052)
Assistant County Attorney
2000A Government Center, MC200
300 South Sixth Street
Minneapolis, MN 55487
Telephone: (612) 348-5532
FAX No: (612) 348-8299
Jim.Keeler@hennepin.us
Sarah.McLaren@hennepin.us
Devona.Wells@hennepin.us

***Attorneys for Defendant Hennepin***
***County Sheriff David Hutchinson***