UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Jared Goyette et al., | Case No. 20-cv-1302 (WMW/DTS) |
| Plaintiffs, | |
| v. | **ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| City of Minneapolis et al., | |
| Defendants. | |

---

Before the Court is Plaintiffs' motion for class certification. (Dkt. 368.) Defendants City of Minneapolis and Minneapolis Chief of Police Medaria Arradondo oppose Plaintiffs' motion. For the reasons addressed below, Plaintiffs' motion is denied.

## BACKGROUND

The Individual Plaintiffs are journalists, photographers and other members of the press who filed this action on behalf of themselves and other similarly situated individuals. Plaintiff Communications Workers of America (CWA) is an international labor union that represents news media workers. Defendant Medaria Arradondo is the former Chief of Police for Defendant City of Minneapolis (collectively, City Defendants). Defendant Robert Kroll was a Minneapolis Police Lieutenant and President of the Police Officers Federation of Minneapolis. Defendant David Hutchinson is the Hennepin County Sheriff.[1]

---

[1]     Defendants Minnesota Department of Public Safety (DPS), Commissioner of the Minnesota DPS John Harrington, Minnesota State Patrol Colonel Matthew Langer and Minnesota State Patrol Major Joseph Dwyer (collectively, State Defendants) reached a mediated settlement with Plaintiffs and were dismissed from this lawsuit in March 2022.

Several prior orders, including the October 28, 2021 Order granting Plaintiffs' motion for a preliminary injunction, describe the facts pertaining to Plaintiffs' allegations.

Plaintiffs commenced this putative class-action lawsuit against Defendants in June 2020. Plaintiffs allege violations of the First Amendment, Fourth Amendment and Fourteenth Amendment to the United States Constitution in connection with the law enforcement response to the protests that followed the murder of George Floyd in May 2020. On June 2, 2020, Plaintiff Jared Goyette moved for class certification and a temporary restraining order (TRO) to prevent Defendants from further violating the constitutional rights of the press. The Court denied the motion without prejudice. The Court concluded that preliminary injunctive relief was unwarranted because the protests had ceased and Goyette failed to demonstrate an imminent threat of harm. The Court observed that, although "Goyette's claims may ultimately be suitable for class-wide resolution," the class-certification issue was premature because "fact discovery is necessary to determine whether the Rule 23 requirements can be satisfied."

The magistrate judge's pretrial scheduling order required, as relevant here, all fact discovery to be completed by December 1, 2021. (Dkt. 364.) The parties exchanged initial disclosures in March 2021, including more than 6,000 pages of documents produced by City Defendants. Plaintiffs served discovery requests on State Defendants, Kroll and the Hennepin County Sheriff's Office in July and August 2021, but Plaintiffs did not serve discovery requests on City Defendants during this time. In September 2021, Plaintiffs filed the now-operative third amended complaint (TAC).

On November 5, 2021, Plaintiffs for the first time attempted to serve discovery requests on City Defendants, providing insufficient time for City Defendants to respond before the December 1, 2021 fact-discovery deadline. City Defendants notified Plaintiffs that City Defendants would not respond due to the untimeliness of the requests. Thereafter, Plaintiffs moved to modify the pretrial scheduling order. The magistrate judge denied the motion, and this Court affirmed, concluding that Plaintiffs had not acted diligently.

Plaintiffs now move for an order certifying the following class solely as to their claims for injunctive relief against City Defendants:

> All members of the news media, as the term is used in Emergency Executive Order 20-69, who are engaged in news gathering or reporting activities in Minnesota.

City Defendants oppose class certification, arguing that Plaintiffs cannot satisfy Rule 23, Fed. R. Civ. P.

## ANALYSIS

To be certified as a class, plaintiffs must first satisfy the four prerequisites of Federal Rule of Civil Procedure 23(a). *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005). Plaintiffs also must satisfy one of the three subsections of Federal Rule of Civil Procedure 23(b). *Id.* The Court addresses these Rule 23 requirements in turn.

### I.     Rule 23(a) Prerequisites

The four prerequisites to class certification require plaintiffs to demonstrate that (1) the class is so numerous that joinder of each member is impracticable, (2) there are issues of law or fact common to the entire class, (3) the claims of the representative plaintiffs are typical of claims of the entire class, and (4) the representative plaintiffs will fairly and

adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  Some circuits also evaluate "ascertainability as a separate, preliminary requirement" implicit to Rule 23(a). *See Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016).  The United States Court of Appeals for the Eighth Circuit does not evaluate ascertainability as a distinct requirement but instead adheres rigorously to Rule 23, which requires a class to be "adequately defined and clearly ascertainable." *Id.* (internal quotation marks omitted).

The propriety of class-action status seldom can be determined on the pleadings. *Walker v. World Tire Corp.*, 563 F.2d 918, 921 (8th Cir. 1977).  Because "Rule 23 does not set forth a mere pleading standard," plaintiffs seeking class certification "must be prepared to prove" that the Rule 23(a) prerequisites are satisfied.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011).  A class action may be certified only if the district court concludes that the party seeking certification has satisfied the prerequisites of Rule 23(a).  *Id.*  "Frequently that rigorous analysis will entail some overlap with the merits of the plaintiff's underlying claim, and the district court may resolve disputes going to the factual setting of the case if necessary."  *Bennett v. Nucor Corp.*, 656 F.3d 802, 814 (8th Cir. 2011) (internal quotation marks and citation omitted).

### A.      Numerosity

The first prerequisite for class certification is that the class must be "so numerous" that joining all of its members in a single action would be "impracticable."  Fed. R. Civ. P. 23(a)(1).  "Generally, a putative class size of forty will support a finding of numerosity, and much smaller classes have been certified by courts in the Eighth Circuit." *Portz v. St.*

*Cloud State Univ.*, 297 F. Supp. 3d 929, 944 (D. Minn. 2018) (internal quotation marks and brackets omitted); *see, e.g.*, *Ark. Educ. Ass'n v. Bd. of Educ. of Portland, Ark. Sch. Dist.*, 446 F.2d 763, 765–66 (8th Cir. 1971) (concluding that 20-member class satisfied numerosity requirement).

Here, Plaintiffs' proposed class includes all members of the news media who engage in news gathering throughout the state of Minnesota.  Plaintiffs contend that this proposed class "contains hundreds—if not thousands—of members."  Although Plaintiffs cite no evidence to support this quantification, City Defendants do not meaningfully dispute that Plaintiffs' proposed class, *as defined*, likely would satisfy the numerosity requirement.[2] Indeed, the number of journalists engaged in newsgathering throughout Minnesota likely includes, at a minimum, hundreds of individuals.

Accordingly, the numerosity prerequisite to class certification has been satisfied.

## B.    Commonality

The second prerequisite for class certification is the presence of "questions of law or fact" that are "common to the class."  Fed. R. Civ. P. 23(a)(2).  "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury."  *Dukes*, 564 U.S. at 349–50 (internal quotation marks omitted).  "This does not mean merely that they have all suffered a violation of the same provision of law," because a single provision

---

[2]    City Defendants contend that Plaintiffs' proposed class definition is overbroad and that a "properly-defined class of journalists" would not meet the numerosity requirement. Although the Eighth Circuit has stated that a district court can "redefine the class or create subclasses, on its own initiative, or on a motion of any party," *U.S. Fid. & Guar. Co. v. Lord*, 585 F.2d 860, 865 (8th Cir. 1978), the Court declines to redefine Plaintiffs' proposed class *sua sponte*, as it is Plaintiffs' burden to define an appropriate class.

of the law "can be violated in many ways." *Id.* at 350. Instead, to satisfy the commonality prerequisite, the class members' "claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor." *Id.* And that common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Plaintiffs contend that members of the proposed class commonly share "multitudes of questions." Plaintiffs identify two general categories of purported commonality across the injuries of purported class members: first, that City Defendants targeted journalists using "common methods" of unconstitutional conduct, and second, that City Defendants' unconstitutional conduct arises from a common unlawful municipal custom or failure to train. The Court addresses each alleged commonality in turn.

### 1.    Common Methods

Plaintiffs first contend that all class members share a common injury arising from City Defendants' "arrests and targeting of journalists through a series of common methods that violate the First, Fourth, and Fourteenth Amendment."

Because "any competently crafted class complaint literally raises common questions," a court must look beyond "artfully" articulated claims. *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 478 (8th Cir. 2016) (internal quotation marks omitted). As such, "merely advancing a question stated broadly enough to cover all class members is not sufficient under Rule 23(a)(2)." *Id.* Instead, each class member must "have suffered the

same injury" arising from "a common contention." *Dukes*, 564 U.S. at 350 (internal quotation marks omitted).

In support of class certification, Plaintiffs rely primarily on the allegations in the operative TAC. Even construing the TAC in the light most favorable to Plaintiffs, however, the allegations demonstrate disparate constitutional violations suffered by each individual journalist. Some journalists allegedly were denied their right of access, in violation of the First Amendment. Some journalists allegedly suffered retaliation for engaging in protected First Amendment activity. Some journalists allegedly were subjected to excessive force, the unlawful seizure or destruction of property, or unlawful arrest, each of which is a distinct violation of the Fourth Amendment. And some journalists allegedly were deprived of procedural or substantive due process, in violation of the Fourteenth Amendment. Plaintiffs neither allege nor offer proof that every named plaintiff, let alone each of the hundreds or thousands of members of the proposed class, suffered a *common* constitutional injury.

"'Commonality is not required on every question raised in a class action' so long as the legal question 'linking the class members is substantially related to the resolution of the litigation.'" *Portz*, 297 F. Supp. 3d at 945 (quoting *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)). But because a provision of law "can be violated in many ways" assuming that Plaintiffs could establish that every class member shared at least one of the several alleged constitutional injuries, that common injury also "must depend upon a common contention." *Dukes*, 564 U.S. at 350. Here, the Minneapolis Police Department

(MPD) allegedly arrested only *one* journalist.[3]  The TAC alleges numerous law-enforcement methods other than arrests that were used to target journalists, including verbal threats and intimidation; aggressive and threatening behavior; the use of chemical agents, projectiles and other crowd-control devices; the destruction or confiscation of journalists' property; and numerous methods of obstructing journalists' access to locations or freedom of movement.  These allegations, therefore, do not indicate that City Defendants employed "common methods" to violate the proposed class members' constitutional rights, as Plaintiffs argue.  Instead, these allegations suggest that distinct individuals, including but not limited to MPD officers, employed a *wide variety* of methods in their response to journalists documenting the protests.  In addition, this conduct occurred on separate dates and times, in multiple locations and under a variety of circumstances.  In short, because Plaintiffs allege distinct constitutional injuries arising from distinct conduct, Plaintiffs cannot establish commonality as to City Defendant's alleged use of "common methods" to violate the constitutional rights of the proposed class members.

For these reasons, Plaintiffs have not demonstrated commonality on the basis alleged in the TAC.

### 2.    Municipal Custom or Failure to Train

Plaintiffs also argue that their theory of municipal liability involves common questions as to whether City Defendants implemented an unlawful custom or failed to

---

[3]    Although the TAC alleges that other journalist arrests occurred, those arrests did not arise from the actions of City Defendants.

properly train their employees.[4]  If the answer to these common questions is "yes," Plaintiffs contend, a central issue common to the entire class will be resolved.

When a plaintiff alleges commonality based on a pattern or practice of unlawful conduct, "proof of commonality necessarily overlaps" with the merits of the plaintiff's claims.  *Dukes*, 564 U.S. at 352 (evaluating commonality in lawsuit alleging pattern or practice of employment discrimination).   Here, Plaintiffs essentially maintain that, although the class members suffered distinct constitutional injuries inflicted through distinct methods, these injuries arise from a common unlawful pattern or practice—namely, City Defendants' unlawful custom or improper training and supervision.  In evaluating Plaintiffs' argument, the *Dukes* decision is instructive.

In *Dukes*, the plaintiffs alleged a pattern or practice of employment discrimination. *Id.*  The Supreme Court of the United States observed that the plaintiffs wished "to sue about literally millions of employment decisions at once," and that "[w]ithout some glue holding the alleged *reasons* for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored.*"  *Id.*  Such circumstances present "a wide gap" between an individual's claim of being harmed by a defendant's general unlawful practice and "the existence of a class of persons who have suffered the same injury as that individual." *Id.* at 352–53 (internal quotation marks omitted).  Bridging this gap "requires

---

[4]     Plaintiffs also reference an unlawful municipal policy, but they neither allege nor present evidence identifying a particular unlawful municipal policy.  Plaintiffs appear to improperly conflate "policy" and "custom."  *See Corwin v. City of Independence*, 829 F.3d 695, 699–700 (8th Cir. 2016) ("Policy and custom are not the same thing.").

significant proof" that the defendant operated under a general unlawful practice and the defendant's unlawful conduct "manifested itself . . . in the same general fashion." *Id.* at 353 (internal quotation marks and brackets omitted).

Here, like the circumstances in *Dukes*, the alleged commonality between the individual class members' claimed injuries is City Defendants' general pattern or practice of unlawful conduct. As such, evaluating whether Plaintiffs have produced "significant proof" of commonality necessarily requires evaluating the merits of Plaintiffs' municipal-liability claims. *See id.* at 351–52 (observing that a class-certification decision "generally involves considerations that are enmeshed in the factual and legal issued comprising the plaintiff's cause of action"). In these circumstances, the merits "may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). The Court addresses, in turn, whether Plaintiffs have proved an unlawful municipal custom or inadequate training.

### a.   Municipal Custom

Plaintiffs allege that their injuries, and the injuries of all proposed class members, arise from a common unlawful municipal custom.

A municipality may be subject to Section 1983 liability if an unofficial municipal custom causes a constitutional injury. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To establish the existence of an unlawful municipal custom, a plaintiff must prove (1) "the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct" committed by the municipality's employees; (2) "deliberate indifference to or

tacit authorization" of the misconduct by policymaking officials after those officials have received notice of the misconduct; and (3) that the plaintiff was injured by acts pursuant to the custom such that "the custom was a moving force behind the constitutional violation." *Corwin v. City of Independence*, 829 F.3d 695, 700 (8th Cir. 2016). "The pattern of unconstitutional conduct must be so pervasive and widespread so as to have the effect and force of law." *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018).

To demonstrate the existence of an unlawful municipal custom, Plaintiffs primarily rely on the allegations advanced in their TAC of a history of misconduct by MPD officers in 2002, 2008, 2012 and 2015. Although fact discovery has ended, Plaintiffs cite little, if any, evidence to support these allegations,[5] however. This lack of evidence falls short of the "significant proof" necessary to establish commonality based on an alleged pattern of unlawful conduct. *Dukes*, 564 U.S. at 353.

Even if Plaintiffs could prove the facts alleged in their complaint regarding MPD's history of misconduct against journalists, those allegations include only vague details about four incidents prior to 2020 that occurred years apart. When the record includes express

---

[5] Plaintiffs contend that the allegations in the TAC are not unsupported because those allegations rely "on evidence cited in [the] complaint." Most of the "evidence" cited in Plaintiffs' TAC, however, consists of hyperlinks to internet news reports, which are hearsay. *See Nooner v. Norris*, 594 F.3d 592, 603 (8th Cir. 2010) ("Newspaper articles are rank hearsay." (internal quotation marks omitted)). Plaintiffs have not identified an exception to the hearsay rule with respect to any of the news reports they have cited.

Although Plaintiffs contend that they need not rely on admissible evidence to obtain class certification, the Supreme Court has suggested otherwise. *See Dukes*, 564 U.S. at 350, 354 (observing that a party seeking class certification "must be prepared to prove" the prerequisites to certification and expressing "doubt" that a district court may rely on inadmissible evidence when determining class-certification issues).

municipal policies prohibiting the alleged unlawful conduct, the existence of several isolated violations of those policies cannot establish a pattern of widespread and pervasive unconstitutional conduct. *See Brewington*, 902 F.3d at 802 (holding that two prior incidents of excessive force in violation of a municipal policy could not establish a municipal custom and collecting cases reaching same holding based on as many as eleven prior incidents of misconduct). Here, Plaintiffs concede, and public records demonstrate, that MPD has written policies pertaining to the use of force and interactions with the media. In light of such evidence, allegations involving discrete incidents of prior misconduct in 2002, 2008, 2012 and 2015, even if true, cannot establish a pattern of widespread and pervasive unconstitutional conduct such that the existence of a municipal custom could be proven. *Brewington*, 902 F.3d at 802.

Moreover, the "mere existence of previous citizens' complaints does not suffice to show a municipal custom of permitting or encouraging" misconduct. *Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999). Rather, to prove an unlawful custom based on past complaints filed against law-enforcement officers, a plaintiff must produce "detailed evidence" about the circumstances of the prior incidents of misconduct, the investigations into those incidents, the results of those investigations and the factual similarities between the past misconduct and the present allegations. *See id.* at 1204–05 (observing that plaintiff's evidence of fifteen prior citizens' complaints of police misconduct failed to prove a custom because they provided insufficient factual detail).

Here, Plaintiffs' vague allegations about prior incidents involving MPD officers provide little or no factual detail about the nature and circumstances of the alleged prior

misconduct, the investigations into those incidents or the results of those investigations.[6] Notably, because some of these prior incidents involved multiple law-enforcement agencies, the precise role of MPD officers in these incidents is unclear. These sparse and ambiguous allegations, even if true, cannot establish that City Defendants' policymaking authorities had notice of unconstitutional police misconduct or were deliberately indifferent to or tacitly authorized such behavior. Nor can these allegations, even if true, establish that any such tacit authorization was a moving force behind the alleged violations of Plaintiffs' constitutional rights in 2020.[7] Accordingly, Plaintiffs' evidence pertaining to prior MPD misconduct falls short of proving an unlawful municipal custom.

In summary, Plaintiffs have produced insufficient evidence to establish that City Defendants engaged in a pattern of unconstitutional conduct "so pervasive and widespread so as to have the effect and force of law." *Brewington*, 902 F.3d at 801. Accordingly, Plaintiffs have not established the commonality prerequisite to class certification based on the alleged existence of an unlawful municipal custom.

---

[6]     Moreover, the few sparse details provided by Plaintiffs about these incidents contain inconsistencies. For example, Plaintiffs allege in the TAC that "the Minnesota State Patrol arrested KMSP-TV reporter Jack Highberger" in 2015. Contrary to this allegation, in support of class-certification Plaintiffs assert that *MPD officers* arrested Highberger in 2015. Although Plaintiffs expressly seek class certification solely as to their claims against City Defendants, they repeatedly conflate the conduct of MPD officers with the conduct of officers from other law-enforcement agencies.

[7]     Plaintiffs' reliance on *Smith v. City of Chicago* and *Ligon v. City of New York* is misplaced because the plaintiffs in those cases presented substantial evidence to support their commonality arguments. *See Smith v. City of Chicago*, 340 F.R.D. 262, 273–80, 283 (N.D. Ill. 2021); *Ligon v. City of New York*, 288 F.R.D. 72, 77, 82 (S.D.N.Y. 2013). Here, in contrast, Plaintiffs rely primarily on sparse, ambiguous and unsubstantiated allegations even though discovery has concluded. As such, *Smith* and *Ligon* are inapposite.

### b.    Inadequate Training

Plaintiffs also allege that their injuries, and the injuries of all proposed class members, arise in common from the inadequacy of City Defendants' training.

A municipality may be subject to Section 1983 liability if the inadequate training of its employees causes a constitutional injury.  *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  When "an official policy is lawful on its face, a plaintiff nevertheless may establish liability by showing that a municipality caused the constitutional violation by providing inadequate training for its employees."  *Graham v. Barnette*, 5 F.4th 872, 891 (8th Cir. 2021) (internal quotation marks omitted) (identifying failure-to-train theory of municipal liability).  To establish municipal liability for failure to train, "a plaintiff must show that (1) the municipality's training practices were inadequate, (2) the municipality was deliberately indifferent to the plaintiff's rights when adopting the training practices such that the failure to train reflects a deliberate or conscious choice, and (3) the plaintiff's injury was actually caused by the alleged deficiency in the training practices."  *Id.* (internal quotation marks and brackets omitted).

To demonstrate inadequate training, Plaintiffs again rely primarily on vague and unproven allegations in their TAC but provide little or no evidence to support these allegations.  See *Dukes*, 564 U.S. at 350‑51 (stating that class-certification plaintiffs must demonstrate that the class members have suffered the same injury).  In addition to these allegations, Plaintiffs cite a written "After-Action Review," dated March 7, 2022, which provides that MPD's actions during the 2020 protests "were not consistent with the recognized best practice of respecting individuals' First Amendment rights."  According

to the After-Action Review, MPD "does not have a specific policy that provides detailed guidance for crowd control efforts" and MPD's civil disturbance policy "falls short of best practice policies that clearly describe the preservation of the First Amendment as the primary objective." Plaintiffs also rely on the opinions of their law-enforcement expert, Colonel Shaun Santos, who opines that MPD officers violated several of MPD's policies during the 2020 protests. And Plaintiffs cite public statements by City Defendants' law-enforcement expert, Captain Spencer Fomby, which suggest that although MPD's policies were consistent with industry standards, some of those policies were not followed.

Even assuming that the foregoing evidence could establish that City Defendants' training practices were inadequate, Plaintiffs also must establish that City Defendants exhibited deliberate indifference to Plaintiffs' rights when adopting their training practices. *Graham*, 5 F.4th at 891 (internal quotation marks omitted). Evidence of "a pattern of similar constitutional violations is ordinarily necessary to establish municipal liability" based on inadequate training unless the misconduct is "so obviously the consequence of a systemic lack of training, as opposed to the decisions of individual officers, that the need for different or additional training was plain." *Id.* (internal quotation marks omitted).

Here, as addressed above, Plaintiffs have produced insufficient evidence to demonstrate a pattern of similar constitutional violations. Nor does Plaintiffs' evidence demonstrate that the alleged misconduct of MPD officers during the 2020 protests so obviously resulted from inadequate training that the need for different or additional training was plain. *See id.* Indeed, Plaintiffs' own expert opines that MPD officers repeatedly violated MPD policies, which suggests that any violation of Plaintiffs' constitutional rights

resulted from "the decisions of individual officers" as opposed to City Defendants' deliberate indifference to "a systemic lack of training." *Id.* Evidence indicating that some MPD officers intentionally disregarded instructions or violated MPD policies, as opposed to acting out of ignorance, suggests that inadequate training may not have been the actual cause of Plaintiffs' injuries. *See Andrews v. Fowler*, 98 F.2d 1069, 1077 (8th Cir. 1996) (observing that "even if the training was in some manner deficient, the identified deficiency in a city's training program must be closely related to the ultimate injury such that the deficiency in training actually caused the police officers' offending conduct" (internal quotation marks omitted)). Even if Plaintiffs could prove that City Defendants provided inadequate training, Plaintiffs have not produced sufficient evidence to establish that City Defendants were deliberately indifferent to Plaintiffs' rights when adopting their training practices or that the inadequate training caused Plaintiffs' injuries. As such, Plaintiffs' evidence is insufficient to establish commonality among class members based on a failure-to-train theory.

In summary, to establish the commonality prerequisite to class certification based on a pattern or practice of unlawful conduct, Plaintiffs must produce "significant proof" that City Defendants operated under a general policy of violating journalists' constitutional rights and that these violations "manifested . . . in the same general fashion." *Dukes*, 564 U.S. at 353 (internal quotation marks and brackets omitted). Here, Plaintiffs' insufficient evidence of either an unlawful municipal custom or inadequate training practices falls short of this "significant proof" requirement. Plaintiffs have not identified evidence that establishes either a common method by which MPD officers violated journalists'

constitutional rights or a common cause linking disparate violations of journalists' constitutional rights.   For these reasons, Plaintiffs fail to satisfy the commonality prerequisite to class certification.

### C.    Typicality

Even if Plaintiffs could establish commonality, they also must establish the third prerequisite to class certification, namely, that "the claims . . . of the representative parties" must be "typical of the claims . . . of the class."  Fed. R. Civ. P. 23(a)(3).

The typicality prerequisite "requires a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff."  *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562 (8th Cir. 1982) (internal quotation marks omitted).  "The burden is fairly easily met so long as other class members have claims similar to the named plaintiff."  *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (internal quotation marks omitted).  "Factual variation in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory."  *Id.*  "The presence of a common legal theory does not establish typicality when proof of a violation requires individualized inquiry."  *Elizabeth M. v. Montenez*, 458 F.3d 779, 787 (8th Cir. 2006).

Here, Plaintiffs' claims do not arise from a single event or course of conduct. Despite some overlap, Plaintiffs' claims arose in separate locations, involved different law-enforcement officers and law-enforcement agencies, occurred at different times and on separate dates and involved a variety of circumstances.  In addition, as addressed above, each Plaintiff's claims involve distinct types of alleged police misconduct, distinct alleged

constitutional violations and distinct potential defenses.   In light of these numerous differences, resolving most, if not each, of the Plaintiffs' claims will require an individualized inquiry, which precludes a finding of typicality.  *Id.*  As such, Plaintiffs have not demonstrated that their claims are typical of the hundreds or thousands of other members of the proposed class.

The breadth of Plaintiffs' proposed class definition also impacts the typicality analysis.  "It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."  *Sandusky*, 821 F.3d at 996 (internal quotation marks omitted).  Because "a class cannot be certified if it contains members who lack standing," a class must be "defined in such a way that anyone within it would have standing."  *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010) (internal quotation marks omitted).  If "a class is defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct, the class is defined too broadly to permit certification."  *J.S.X. Through Next Friend D.S.X. v. Foxhoven*, 330 F.R.D. 197, 205 (S.D. Iowa 2019) (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 824 (7th Cir. 2012)).

Here, Plaintiffs seek certification of a class comprising "[a]ll members of the news media . . . who are engaged in news gathering or reporting activities in Minnesota."  This definition appears to be overbroad.  Notably, the proposed class definition has no temporal limitation and, therefore, includes members of the news media who currently engage in news gathering or reporting in Minnesota but were not doing so at the time of Plaintiffs' alleged harm.  Similarly, the statewide breadth of the proposed class includes many

individuals who were not physically present in Minneapolis during the 2020 protests and, thus, could not have been harmed by City Defendants' allegedly unlawful conduct. Plaintiffs provide neither allegations nor proof that City Defendants violated the constitutional rights of all—or even most—of the hundreds (if not thousands) of journalists in Minnesota, let alone that the harm inflicted on the named Plaintiffs is typical of the harm inflicted on all other class members.[8]

If a "plaintiff's definition of the class is found to be unacceptable, the court may construe the complaint or redefine the class to bring it within the scope of [Rule 23]." *Portz*, 297 F. Supp. 3d at 942 (internal quotation marks omitted). Plaintiffs have not proposed a narrower definition. To avoid the temporal and geographic overbreadth addressed above, the Court could narrow the proposed class definition to "all members of the news media who *were* engaged in news gathering or reporting activities *in Minneapolis between May 25, 2020, and June 2, 2020*." But this narrower definition would not solve the other typicality defects addressed above—namely, the fact that each Plaintiff's claims involve distinct types of alleged police misconduct, distinct alleged constitutional violations and distinct potential defenses, which will require individualized factual and legal inquiries.

---

[8]     Plaintiffs allege that City Defendants' conduct has caused a "chilling" effect on the class members' First Amendment rights. Although it is conceivable that certain constitutional violations could have chilled Minnesota journalists beyond those present during the 2020 protests, Plaintiffs present no evidence that City Defendants' conduct in Minneapolis actually chilled all or even most of the proposed class members throughout Minnesota. To the contrary, the record reflects that most Minnesota journalists have continued to engage in news gathering and reporting activities in the months following May and June of 2020.

For these reasons, Plaintiffs have failed to satisfy the typicality prerequisite to class certification.

### D.      Adequacy of Representation

The fourth prerequisite to class certification requires Plaintiffs to establish that "the representative parties will fairly and adequately protect the interest of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement includes adequacy of the representative plaintiffs *and* proposed class counsel's ability to represent the proposed class fairly and adequately. *Rattray v. Woodbury County*, 614 F. 3d 831, 835–37 (8th Cir. 2010).  Here, although Plaintiffs have provided no evidence as to the qualifications, experience or resources of their counsel, the Court could ascertain this information from publicly available information.  However, because Plaintiffs have not satisfied the commonality or typicality prerequisites to class certification, the Court need not address the adequacy-of-representation prerequisite.

### II.      Rule 23(b) Requirements

To be certified as a class, a plaintiff must satisfy the four prerequisites of Federal Rule of Civil Procedure 23(a) *and* one of the three subsections of Federal Rule of Civil Procedure 23(b).  *St. Jude Med.*, 425 F.3d at 1119.  Here, Plaintiffs contend that class certification is proper under Rule 23(b)(1)(A), Rule 23(b)(1)(B) or Rule 23(b)(2). However, because Plaintiffs have failed to satisfy the commonality and typicality prerequisites to class certification under Rule 23(a), the Court need not address any of the Rule 23(b) requirements.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' motion for class certification, (Dkt. 368), is **DENIED**.


Dated:  February 15, 2023                                  s/Wilhelmina M. Wright
                                                           Wilhelmina M. Wright
                                                           United States District Judge